## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF COMMISSIONS
IMPORT-EXPORT S.A. FOR JUDICIAL
ASSISTANCE PURSUANT TO
28 U.S.C. § 1782

CASE NO. 25-mc-00463

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR
## JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

**Table of Contents**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

  A.  Origins of the TotalEnergies Defendants' Liability............................................. 3

  B.  The Republic of the Congo Acknowledges the Debt.......................................... 5

  C.  Renewed Arbitration and litigation against the Republic of the Congo confirm the validity of the Guaranty ....................................................................................................... 6

  D.  Commisimpex initiates litigation against the TotalEnergies Defendants. ........................... 7

  E.  The Versailles Court of Appeals finds that the TotalEnergies Defendants' debt to Commisimpex is "real and serious." ...................................................................................... 9

  F.  TotalEnergies SE fails to disclose its potential liability in its public SEC filings............. 10

  G.  The NYSE and underwriters for a TotalEnergies Note offering may have information about the Commisimpex litigation. ................................................................................... 12

  H.  The utility of the discoverable information in Commisimpex's litigation against the TotalEnergies Defendants in France. ................................................................................ 14

III. ARGUMENT ................................................................................................... 17

  A.  Respondents reside or are found in the Southern District of New York. ......................... 17

  B.  The requested discovery is for use in a pending "foreign" proceeding in France. ............ 19

  C.  Applicant, as a party to the foreign litigation, is an "interested person". ......................... 20

  D.  The discretionary factors weigh in favor of granting this application. .............................. 20

    1.  The discovery sought is beyond the reach of French courts. ......................................... 20

    2.  There is no evidence that French courts would reject discovery obtained from the application. ....................................................................................................................... 22

    3.  The Application does not circumvent French rules of evidence. .................................... 23

    4.  The discovery requests relate to discrete and recent actions over a short period.......... 24

IV. CONCLUSION ................................................................................................. 25

### Table of Authorities

*In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017) ………………………….….…18

*Ap-Fonden v. Goldman Sachs Grp., Inc.*, 545 F.Supp.3d 120 (S.D.N.Y. 2021) ……….……. 11

*In re Ex Parte Application of Blue Skye Fin. Partners S.A.R.L.*,
     No. 22 MISC. 171 (KPF), 2022 U.S. Dist. LEXIS 117996 (S.D.N.Y. July 5, 2022) …..19

*In re Auto-Guadeloupe Investissement S.A.*,
     No. 12-MC-221 (RPP), 2012 U.S. Dist. LEXIS 147379 (S.D.N.Y. Oct. 10, 2012)..21, 24

*Brandi-Dohrn v. IKB Deutsche Industriebank A*G, 673 F.3d 76 (2d Cir. 2012) …………..…….17

*Comm'ns Imp. Exp. S.A. v. Congo*, 118 F.Supp.3d 220 (D.D.C. 2015) ……...………………5

*Comm'ns Imp. Exp. S.A. v. Congo*, 757 F.3d 321 (D.D.C. 2014) …………….………………..2

*Comm'ns Imp. Exp. S.A. v. Congo*,
     No. 13-00713 (RJL), 2015 U.S. Dist. LEXIS 192785 (D.D.C. July 6, 2015) ………........6

*In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) …………….………………… 17, 18

*In re Dynex Cap., Inc.*,
     No. 05 Civ. 1897, 2009 U.S. Dist. LEXIS 96527 (S.D.N.Y. Oct. 19, 2009………....12, 13

*Hanwei Guo v. Deutsche Bank Sec.*, 965 F.3d 96 (2d Cir. 2020) ...……………………….…22

*Huang v. iTV Media, Inc.*, 13 F.Supp.3d 246 (E.D.N.Y. 2014)...……………..………...…18

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004)………........1, 19, 21, 22

*In re JSC BTA Bank*, 577 F.Supp.3d 262 (S.D.N.Y. 2021) ………..……..……….....……..19

*In re Ex parte Klein*,
     No. 23 Misc. 211, 2023 U.S. Dist. LEXIS 227152 (S.D.N.Y. Dec. 21, 2023) ………..20

*Leasco Data Processing Equip. Corp.*, 332 F.Supp. 544, 582 (E.D.N.Y. 1971)………………13

*In re Letter of Request from Gov't of France*, 139 F.R.D. 588 (S.D.N.Y. 1991) ..……...…..…..22

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ……..…………..………..………..…... 17, 20, 24

*In re Microsoft Corp.*, 428 F.Supp.2d 188 (S.D.N.Y. 2006)..… ………..………..…......…23

*In re Pidwell*, No. 1:21-MC-0166 (ALC)(KHP),
        2022 U.S. Dist. LEXIS 11484 (S.D.N.Y. Jan. 21, 2022) …..……..……..………..….23

*In re Porsche Automobil Holding SE*,
        No. 15-mc-417 (LAK), 2016 U.S. Dist. LEXIS 20012 (S.D.N.Y. Feb. 18, 2016)………21

*Ex parte SBK Art LLC*,
        No. 24 Misc. 147, 2025 U.S. Dist. LEXIS 102566 (S.D.N.Y. May 30, 2025) …..……..24

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004)……………..…..17, 20

*Sharma v. Rent the Runway, Inc.*, 751 F.Supp.3d 82 (E.D.N.Y. 2024) …….……………..…..12

*In re Ex parte Tiberius Grp. AG*,
        No. 19-mc-467 (VSB), 2020 U.S. Dist. LEXIS 40471 (S.D.N.Y. Mar. 6, 2020) ……....23

*In re Turkcell Iletisim Hizmetler*, 209 F.R.D. 353 (S.D.N.Y. 2002) …….……....……..…..….13

*Tsc Indus. v. Northway*, 426 U.S. 438 (1976) ….…….…..…………….…..………....…..….13

*In re Valitus, Ltd.*,
        No. 20-mc-91133-FDS, 2020 U.S. Dist. LEXIS 203522 (D. Mass. Nov. 2, 2020) ..…...22

*In re Vivendi Universal, S.A. Sec. Litig.*, 765 F.Supp.2d 512 (S.D.N.Y. 2011) ……...…...10, 11

*In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ….……………….…………...…..10

*In re WorldCom, Inc. Sec. Litig.*, 346 F.Supp.2d 628 (S.D.N.Y. 2004). ……………….....…..13

*In re XPO Logistics, Inc.*,
        No. 15 Misc. 205, 2017 U.S. Dist. LEXIS 203577 (S.D.N.Y. Dec. 11, 2017)……….. 23

*In re Zouzar Bouka; Vision Indian Ocean S.A.*,
        No. 22MISC92RAGWG, 2022 WL 15527657 (S.D.N.Y. Oct. 28, 2022)………...…....18

## **Statute Cited**

28 U.S.C. § 1782 ….……………………………………………………………………….*passim*

## I.      **INTRODUCTION**

Commissions Import-Export S.A. ("Commisimpex") applies to this Court for an order of judicial assistance, pursuant to 28 U.S.C. § 1782 appointing Tara J. Plochocki, Esq. as a Commissioner of the Court to facilitate subpoenas seeking documentary evidence from Respondents New York Stock Exchange LLC, BOFA Securities Inc., MUFG Securities Americas, Inc., Morgan Stanley & Co. LLC, Natixis Securities Americas LLC, SMBC Nikko Securities America, Inc., and Deutsche Bank Securities Inc.

This Application meets § 1782's statutory requirements. Commisimpex is seeking information to use in a proceeding in a foreign tribunal: Commisimpex's currently ongoing lawsuit against TotalEnergies SE, TotalEnergies Holdings SAS, and TotalEnergies EP Congo (collectively, the "TotalEnergies Defendants") pending before the Commercial Court of Nanterre in France. That litigation is proceeding to the merits phase of the litigation after the Versailles Court of Appeals rejected the TotalEnergies Defendants' motion to dismiss on jurisdictional grounds last October, observing that Commisimpex's claim was or a "real and serious character." As plaintiff, Commisimpex is an interested party. It is suing the TotalEnergies Defendants for approximately $2.1 billion USD owed under a 1986 guaranty (the "Guaranty") issued by the Republic of the Congo (the "ROC"), which assigned to Commisimpex the right to require that the TotalEnergies Defendants to pay ROC's mining royalties and similar payments directly to Commisimpex to satisfy debts owed by ROC.

The Respondents have information that will be used in the Guaranty litigation: TotalEnergies SE was required to disclose to Respondents information about this massive liability in connection listing its American Depositary Receipts on the New York Stock Exchange (the "NYSE"), and such information was also highly relevant to securing underwriters for the issuance of U.S. dollar-denominated Notes by TotalEnergies Capital S.A., guaranteed by

1

TotalEnergies SE. And Respondents or their agents would have conducted their own due diligence regarding the same. Each Respondent resides or can be found in the Southern District of New York within the meaning of § 1782 and Applicant seeks what information they have about the TotalEnergies Defendants' liability under the Guaranty.

This case satisfies the discretionary factors prescribed by the U.S. Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). None of the Respondents is a party or anticipated to become a party to the French proceeding, as they have no relation to the Guaranty, and none is itself a French entity. As such, they are beyond the reach of the French courts. There is no indication that the French court would be unreceptive to § 1782 discovery as it adjudicates the merits of Commisimpex's claim. The Application does not seek information in circumvention of any foreign proof-gathering restrictions or public policies of France. The requests themselves are modest, targeting limited, critical discovery to support Applicant's ongoing litigation against the TotalEnergies Defendants in France.

## II.   **BACKGROUND**

Commisimpex is a Congolese company that has been engaged in a long-running legal battle concerning debts owed to it by the ROC which are guaranteed by the TotalEnergies Defendants, the successors-in-interest to the original guarantors. Declaration of Nathalie Makowski ("Makowski Decl.") ¶¶ 7–16; *see also Comm'ns Imp. Exp. S.A. v. Congo*, 757 F.3d 321, 323 (D.D.C. 2014). What started as contractual obligations of approximately $66 million USD grew to a debt of approximately $194 million USD by September 1992. Makowski Decl. ¶ 20. By the time Commisimpex obtained two ICC arbitral awards recognizing the liability – one in 2000 and a second in 2013 – the debt had grown to approximately €956,971,876. *Id*. ¶ 31. Both arbitral awards have been confirmed in the United States. *See Comm'ns Imp. Exp. S.A*, 757 F.3d at 323; *Comm'ns Imp. Exp. S.A. v. Congo*, Case No. 1:13-cv-00713 (filed October 9, 2013)

(Dkt. 18). The TotalEnergies Defendants are now facing possible entry of judgment for those liabilities – plus 12 years of interest – in a case initiated by Commisimpex in the French Commercial Court of Nanterre.

### A. Origins of the TotalEnergies Defendants' Liability

The arbitral awards are now worth approximately $2.1 billion USD. *Id.* ¶ 34. This massive liability arises from non-payment of contracts entered four decades ago. From 1984 to 1986, Commisimpex contracted with the ROC for infrastructure and public works construction projects (the "Contracts"). *Id.* ¶ 9; *see also Comm'ns Imp.*, 757 F.3d at 324. The Contracts were initially funded by supplier credits issued by Commisimpex. Those credits were formalized into promissory notes issued by a Congolese public institution known as the *Caisse Congolaise d'Amortissement* ("CCA"), to be guaranteed by the ROC. Makowski Decl. ¶ 10.

On December 22, 1986, the ROC, represented by its Ministry of Finance and the CCA, issued a payment guaranty to Commisimpex. *Id.* ¶ 11. In the Guaranty, the ROC and the CCA undertook "without conditions and irrevocably, to guarantee Commisimpex payment of the full amounts of the contracts and amendments for work and supplies awarded to Commisimpex," which the Guaranty acknowledges were "financed exclusively with the loans granted by COMMISIMPEX." *Id.* ¶ 12; Ex. 2[1] at ¶¶ A, B. The Guaranty identifies the eleven Contracts, entered into from 1984 to 1986, of an approximate aggregate value of $66 million USD. *See* Makowski Decl. ¶ 13; Ex. 2.

The only obligation Commisimpex had under the Guaranty was to satisfy its obligations under the Contracts. *Id.* ¶ 14; Ex. 2 § 3, ¶ F. The ROC determined that Commisimpex did so and issued certificates of completion. *Id.* ¶ 15.

---

[1] Certain exhibits are accompanied by English translations. The memorandum of law cites to the translations for the court's convenience.

In the Guaranty, the ROC assigned "all revenues, and in particular all receivables, royalties, taxes, duties, and other rights" from certain oil and gas fields in the ROC, specifically referencing the payments owed under a convention entered in October 1968, between the ROC and several energy companies, including predecessors-in-interest to the TotalEnergies Defendants, La Société Nationale ELF Aquitaine and La Société Nationale ELF Congo (collectively "ELF"), which operated oil and gas fields in the ROC. *Id.* ¶ 16; Ex. 2, Article 2, ¶¶ F, L. The 1968 Convention gave ELF rights to utilize certain oil and gas fields within the ROC, and in return, required them to make certain payments, including mining royalties and taxes. *Id.*

The Guaranty specifies that it "is enforceable at the demand of COMMISIMPEX" and is a "permanent instruction of irrevocable and unconditional payment to … ELF and ELF Congo up to the amount of the sums of the contracts, amendments and work mentioned above, including principal and interest, costs, accessories, and compensation for all prejudices of delay." *Id.* ¶¶ 16, 17; Ex. 2 ¶ I.

It does not matter that the ELF companies may not have known that the ROC was pinning their IOU on them by pledging their payments as surety; the payments were due regardless, and ROC was well within its rights to require that ELF's payments go elsewhere. *Id.* ¶ 52; Ex 20, at 23-24. The Guaranty is governed by Swiss law. *Id.* ¶ 11, 18; Ex. 2 at 7. And this structure is legal under Swiss law, which permits parties to pledge incoming payments as debt securities. *Id.* ¶ 18; Ex. 4 ¶ 19. Swiss law does not require the consent of the party from whom the pledged payments are due. *Id.* ¶ 79. A Justice of the Supreme Court of Congo also certified that the Guaranty was valid under Congolese law. *Id.* ¶ 19; Ex. 6. Thus, the ROC could, and did, assign the incoming payments from ELF Aquitaine and ELF Congo to Commisimpex in the event of its own default.

### B.  The Republic of the Congo Acknowledges the Debt

The ROC did not meet its obligations under the Contracts; when the promissory notes came due, the ROC failed to pay. Commisimpex compromised, and in an October 14, 1992 Agreement, allowed the ROC to pay a portion of the existing debt according to a ten-year payment plan that was scheduled to begin on January 30, 1998, effectively delaying the repayment by an additional six years.[2] *Id*. ¶¶ 20-22. In the 1992 Agreement, ROC agreed to resolve all disputes under it through binding arbitration and waived sovereign immunity. *Id*.; Ex. 7 at 3; *see also Comm'ns Imp. Exp., S.A. v. Congo*, 118 F.Supp.3d 220, 222 (D.D.C. 2015).

The extended payment plan served Commisimpex no better. The first payment became due on January 30, 1998 and the ROC failed to pay it. Makowski Decl. ¶ 24. Commisimpex initiated arbitration under the auspices of the International Chamber of Commerce (ICC) in 1998, which the ROC unsuccessfully opposed. *Id*. ¶ 25. The resulting December 3, 2000 arbitral award ("2000 Award") recognized that Commisimpex had satisfied its obligations under the Contracts and ordered the Republic of the Congo and CCA to pay the amounts set forth in the 1992 Agreement, as well as interest, penalty interest on the various promissory notes, and costs. *Id*. ¶ 26; Ex. 7. Rather than simply pay any portion of the Award – now approximately $107 million with interest and costs – the ROC has tried to annul the Award, and later its recognition and confirmation in courts worldwide, ever since. *Id*. ¶ 27. None of these efforts has been successful. The 2000 Award was confirmed by the Tribunal de Grande Instance of Paris and the Paris Court of Appeals, as well as courts in France, Belgium, Sweden, the UK and the United States. *Id*. ¶ 28; *see also Comm'ns Imp.*, 118 F.Supp.3d at 222-25.

---

[2] That portion, at the time, was valued at $86,832,448.52. Makowski Decl. ¶ 22.

### C. Renewed Arbitration and litigation against the Republic of the Congo confirm the validity of the Guaranty.

The validity of the Guaranty was reaffirmed repeatedly as Commisimpex sought repayment. When Commisimpex, the ROC, and the CCA entered into yet another agreement confirming the debt – this time covering the entirety of the ROC's debt under the Contracts in the 1986 Guaranty – and adopting a repayment plan on August 23, 2003, it specified that the 1986 Guaranty remained active in force and was not novated by the 2003 Agreement. Makowski Decl. ¶¶ 28-29; Ex. 9. Moreover, it preserved *all* of Commisimpex's legal rights against the debt "until full settlement of the commitments made by the State of CONGO." *Id*. ¶ 29; Ex. 9, ¶ 7.

When the ROC failed to make payments under the 2003 Agreement, Commisimpex initiated another arbitration, this time seeking recognition of all the amounts owed. An arbitral tribunal constituted under the auspices of the International Chamber of Commerce issued a partial award on August 20, 2010, and a final award on January 21, 2013 (the "2013 Award") ordering the ROC to pay a total of €956,971,876 in principal, interest, penalty interest, costs, and incidental expenses. Makowski Decl. ¶¶ 31-32; Ex. 11 ¶¶ 316-21. In determining the amount owed, the arbitral tribunal specifically cited the ROC's 1986 Guaranty and quoted from several ROC communications discussing the Guaranty, noting that the ROC had apparently entered into the 2003 Agreement so that Commisimpex would not exercise its rights under the Guaranty. Makowski Ex. 11 ¶¶ 2, 239, 300.

The 2013 Award was confirmed by the French Court of Cassation on May 25, 2016. It has continued to accumulate interest, and the debt currently stands at approximately €1.8 billion, or $2.1 billion USD. *Id*. ¶¶ 33-34. The Congolese government has attempted to negate the Awards through various means, including forcibly liquidating Commisimpex in Congolese courts and obtaining a sham judgment against it for the same amount as the Awards, but to no

avail. U.S. and French courts have refused to accord any legitimacy to those "highly questionable, and perhaps even fraudulent, proceedings." *Comm'ns Imp. Exp. S.A. v. Congo*, No. 13-00713 (RJL), 2015 U.S. Dist. LEXIS 192785, at *6 (D.D.C. July 6, 2015) (denying the ROC's motion to vacate default judgment). The Paris Court of Appeals similarly found the Congolese liquidation proceedings to "violat[e] the principles of good faith so that the judgment of liquidation had to be regarded as without effect." Makowski Decl. ¶ 35; Ex. 13.

### D.  Commisimpex initiates litigation against the TotalEnergies Defendants.

TotalEnergies SE (then Total SA) acquired ELF pursuant to a merger initiated in 1999. It also acquired ELF's obligations and rights under the 1968 Convention. ELF Aquitaine became TotalEnergies Holdings SAS, and ELF Congo became TotalEnergies EP Congo, both subsidiaries of TotalEnergies SE. *Id.* ¶ 36. Although the 1968 Convention has been amended several times, including to recognize TotalEnergies SE's acquisition of ELF, neither the TotalEnergies Defendants nor ELF were retroactively released from their obligations under the Guaranty or the 1968 Convention. *Id.* ¶¶ 37, 38. And they have never made payments to Commisimpex under the Guaranty. *Id.* ¶ 40.

In October 2011, following an interim ruling from the second ICC arbitration, Commisimpex served copies of the Guaranty and the 2000 Award on TotalEnergies SE to formally notify TotalEnergies SE of the obligation that it had inherited from ELF, which required it to direct payments that it would have owed to ROC to Commisimpex instead. *Id.* ¶ 39. TotalEnergies SE did not respond. On October 2016, Commisimpex served the Guaranty on TotalEnergies EP Congo, and re-served Total Energies SE in 2016 and 2017. *Id.* ¶ 41. These service efforts included demands for the amount due under the 2013 Award, which had since been confirmed by the French Court of Cassation. *Id.*

To force TotalEnergies EP Congo to satisfy the debts, Commisimpex served it and ELF

Aquitaine (now TotalEnergies Holdings SAS) with a summons for proceedings in the Commercial Court of Nanterre, under Case No. 2016 F 02380, demanding that they pay the amounts owed under the 2000 Award and the 2013 Award. *Id*. ¶ 42. Commisimpex, invoking the Guaranty, specifically requested that payments be made through the sums owed by TotalEnergies EP Congo to the ROC. *Id*. The lawsuit sought the principal debt, interest, and late interest penalties, all of which are covered by the Guaranty. *Id*. ¶ 43. On February 16, 2018, Commisimpex forcibly joined TotalEnergies SE to the lawsuit. *Id*. ¶ 44.

The TotalEnergies Defendants asserted that the Commercial Court of Nanterre lacked jurisdiction over them. *Id*. ¶ 46. They also challenged the validity and authenticity of the Guaranty, and the quantum of debt owed under the Guaranty – the amount the TotalEnergies Defendants would owe. *Id*. The TotalEnergies Defendants calculated a much smaller amount, in part by alleging non-performance or partial performance, supported by a December 24, 2020 report by PricewaterhouseCoopers France ("PWC-FR"), acting as consultant to the TotalEnergies Defendants; in so doing, it neglected to disclose a conflict of interest to the court. *Id*. ¶¶ 47-49; Ex. 15. The calculation is of no value. Between the time the report was commissioned and issued, TotalEnergies SE's board of directors nominated PWC-FR for a six-year engagement as its auditor. *Id*. ¶ 49; Ex. 15 at 27-28. The PWC-FR issued its report two months later, concluding that only €234 million, limited to a portion of the first 2000 Award could be attributed to the Contracts covered by the Guaranty. *Id*. ¶ 49. And, of course, PWC-FR was hired for the next six years. *Id*. ¶ 50.

The undisclosed conflict of interest is not only a deception to the French courts, but a violation of the code of ethics for auditors in France. *Id*. ¶ 49; Ex. 17. That code requires auditors to identify instances in which they may be asked to review their own work, to which end

candidate auditors must disclose tasks that they have carried out concerning the company to shareholders before being appointed. *Id*.; Ex. 17 at 27-28. PWC-FR doubled down on the assessment that won it its job as auditor, and in audits for the years 2020, 2021, 2022, and 2023, it completely omitted the TotalEnergies Defendants' liability to Commisimpex, even at the discounted value that it had presented to the French courts. *Id*.

That discounted value was also wrong. The PWC-FR report asserted that the 2000 Award incorporated additional debt not derived from Contracts covered by the Guaranty, and the 2013 award was entirely unrelated to the Contracts covered by the Guaranty. *Id*.; Ex. 17 at 21-26. This was inconsistent with the assertions of the parties in the 1992 and 2003 Agreements, was inconsistent with the decisions by the arbitral tribunals, which discussed the underlying Contracts, and with the ROC's own invocation of the Guaranty in the arbitration that resulted in the 2013 Award. *Id*. To the contrary, the 2013 Arbitral Award specifically explained that it was based on the debt owed under the Contracts subject to the Guaranty, as incorporated into the 2003 Agreement. Makowski Ex. 11 ¶¶ 301-30. And the 2013 Arbitral award explained that it addressed a separate portion of the debt from the 2000 Arbitral Award. *Id*. at ¶ 310.

### E. The Versailles Court of Appeals finds that the TotalEnergies Defendants' debt to Commisimpex is "real and serious."

On March 18, 2022, the Commercial Court of Nanterre dismissed Commisimpex's lawsuit on jurisdictional grounds, concluding that the debt was largely a foreign matter that lacked serious ties to the TotalEnergies Defendants. Makowski Decl. ¶ 51 Ex. 19.

On October 10, 2024, the Versailles Court of Appeals reversed the Commercial Court of Nanterre's jurisdictional dismissal. *Id*. ¶ 52; Ex. 21. The Court of Appeals specifically found that the Commercial Court of Nanterre had jurisdiction over the TotalEnergies Defendants. *Id*. The Court of Appeals also found that Commisimpex's claims against the TotalEnergies Defendants

were "real" and of "a serious character," citing the 1968 Convention, its amendments, and the 1986 Guaranty. *Id.* ¶ 53, Ex. 21 at 22, 25. In doing so, the Court of Appeals was sharply skeptical of the TotalEnergies Defendants' challenge to the authenticity of the Guaranty and the assertion that the Guaranty would have been overridden by the 1992 Agreement; it noted that the ROC had repeatedly invoked and relied upon the Guaranty in arbitral and judicial proceedings well after 1992, and that the Guaranty itself had been noticed to TotalEnergies in 2011, 2016, and 2017 in accordance with French law. *Id.*

The case is currently pending before the Commercial Court of Nanterre and will proceed to the merits if not stayed. *Id.* ¶¶ 54-55. TotalEnergies has appealed to the Cour de Cassation – France's highest court – and moved for a stay of the case in the meantime. *Id.* ¶¶ 45, 54-55. A decision on the stay is expected in January of 2026. *Id.* ¶ 55.

**F. TotalEnergies SE fails to disclose its potential liability in its public SEC filings.**

At no point during the French litigation has TotalEnergies SE specifically disclosed its potential liability to Commisimpex to United States shareholders. Every year, TotalEnergies SE files, as it must, an annual report known as a Form 20-F which is meant to disclose information material to the financial health of a company, and, more recently, it has prepared a prospectus in connection with a planned offering of shares to the United States market.

TotalEnergies SE is required to file Form 20-F reports disclosing material information about its financial health because it has American Depositary Receipts ("ADRs") listed on the NYSE, and private foreign issuers of stock must file those reports annually with the Securities and Exchange Commission. ADRs work by having a bank hold shares of a foreign stock in a trust and then issuing receipts for that trust. *See generally In re Vivendi Universal, S.A. Sec. Litig.*, 765 F.Supp.2d 512, 521 n.2 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). ADRs represent stocks in the non-American company and can be

traded on a stock exchange in the United States by American stock traders, and TotalEnergies SE has had its ADRs listed since 2021.

This means that TotalEnergies SE, like any company issuing a form of security for trading in the U.S., is governed by the strict disclosure requirements in SEC regulations. The purpose of these disclosure requirements is to ensure that companies inform potential investors of risks. TotalEnergies SE was thus required to disclose information material to the price of the security. *See In re Vivendi*, 765 F.Supp.2d at 538 (discussing failure to disclose information relating to cash reserves in the context of ADRs). This includes lawsuits or investigations that may result in significant liability to a defendant. *See, e.g., Ap-Fonden v. Goldman Sachs Grp., Inc.*, 545 F.Supp.3d 120, 148 (S.D.N.Y. 2021) (denying motion to dismiss complaint asserting damages for defendant's failure to fully disclose that a criminal investigation could result in approximately $2.7 billion in liability).

TotalEnergies SE's Form 20-F reports do not reference the Commisimpex litigation. This omission is particularly striking because TotalEnergies SE's Form 20-F reports do disclose substantially smaller litigations including one addressing approximately $5 million in liability, and other proceedings against TotalEnergies SE or its subsidiaries that TotalEnergies SE described as meritless or "unfounded." Declaration of David A. Short ("Short Decl.") Ex. 8 at 153. It is not as if TotalEnergies is unaware of the potential liability it faces in litigation that it is participating in, or the contents of the PWC-FR report that it commissioned.

TotalEnergies SE might have argued that this omission was reasonable in its 2023 report, following the 2022 jurisdictional decision in its favor that temporarily threw Commisimpex's claim against it into doubt. But after October 2024, when Commisimpex's claim was restored by the Versailles Court of Appeals as "real and serious," that rationalization falls apart. Despite this,

11

TotalEnergies SE most recent Form 20-F report with the SEC, purportedly updated to December 31, 2024, claims that "TotalEnergies is not currently aware of any exceptional event, dispute, risks or contingent liabilities that could have a material impact on the assets and liabilities, results, financial position, or operations of the TotalEnergies company, other than those mentioned below." Short Ex. 8 at 151. The following section lists several lawsuits that TotalEnergies SE considers "unfounded" across a variety of jurisdictions, including one before the Commercial Court of Nanterre, in France, but continues to omit the Commisimpex litigation. *Id*. at 151-154. Nor is the liability to Commisimpex reflected in the bundled liability section (12.1), which appears to total litigation risk at approximately $384 million, and "non-current provisions and liabilities" of approximately $7.5 billion – attributing most of the latter to "debts whose maturity is more than one year." *Id*. at 150.

### G. The NYSE and underwriters for a TotalEnergies Note offering may have information about the Commisimpex litigation.

In 2024, TotalEnergies Capital S.A. (together with TotalEnergies SE, the "Total Note Issuers") issued a supplemental prospectus for a $4.25 billion note offering (the "Prospectus"), which was underwritten Respondents Morgan Stanley & Co. LLC, BOFA Securities, Inc., Deutsche Bank Securities, MUFG Securities America, Natixis Securities Americas LLC, and SMBC Nikko Securities America (collectively, the "Underwriters") and guaranteed by TotalEnergies SE. Short Decl. ¶ 11; Ex. 9. It, too, omits reference to the Commisimpex liability. *Id*. Like a Form 20-F report, a prospectus has significant disclosure requirements so that potential purchasers of a security can be informed of material information about the company's financial health and value, and the 2024 supplemental prospectus incorporates TotalEnergies SE's Form 20-F reports by reference. *Id*. at 1; *see In re Dynex Capital, Inc*., No. 05 Civ. 1897, 2009 U.S. Dist. LEXIS 96527, at *14 (S.D.N.Y. Oct. 19, 2009) (denying motion to dismiss complaint

alleging material omissions from underwriting statements in connection with bond prospectus). If a prospectus contains a material misstatement or omission when it is finalized, the issuer can face significant liability. *Id*. Materiality looks at whether there is a substantial likelihood that a reasonable shareholder would consider the information important in deciding how to act. *See Sharma v. Rent the Runway, Inc*., 751 F.Supp.3d 82, 102 (E.D.N.Y. 2024) (discussing general definition of materiality under the Securities Act); *see also TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976) (a fact is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available"). Pending litigation can be material if it is sufficiently significant, and issuers are expected to disclose the existence of litigation from which they could face substantial liability, especially if that litigation is other than "routine." *In re Dynex*, 2009 U.S. Dist. Lexis 96527, at *24-25.

Underwriters can also face significant liability if a registration contains material misstatements or omissions relating to information that the underwriters knew or should have known about – which can include material litigation against the issuer. *Id*. To avoid liability, underwriters are expected to conduct a reasonable investigation and exercise reasonable care to help ensure that a prospectus and registration statement are not misleading. *See generally In re Turkcell Iletisim Hizmetler*, 209 F.R.D. 353, 356 (S.D.N.Y. 2002) (granting class certification motion in action against issuer and underwriters of American Depositary Receipts). An underwriter cannot simply rely on the company's submissions; they must "exercise a high degree of care in investigation and independent verification of the company's representations." *In re WorldCom, Inc. Sec. Litig*., 346 F.Supp.2d 628, 662 (S.D.N.Y. 2004). "Tacit reliance on management is unacceptable; the underwriters must play devil's advocate." *Leasco Data*

*Processing Equip. Corp*., 332 F.Supp. 544, 582 (E.D.N.Y. 1971).

The 2024 prospectus (Short Decl. Ex. 9), like the Form 20-F it incorporates (Short Decl. Ex. 14), does not discuss the Commisimpex liability. This is a striking omission. If the Commisimpex litigation is material, then it should have been disclosed – and it was not. And if it was not material, there should have been a determination as to why approximately $2.1 billion USD in potential liability is not material. Either way, it should have been discovered and discussed by the Underwriters as part of their due diligence investigation and independent verification of the Total Note Issuers' representations. Short Decl. Ex. 9 at 17.

Finally, TotalEnergies SE recently informed the SEC via a Form 6-K that it intends to convert its ADRs to listed stock on the NYSE. *Id*. ¶ 15; Ex. 13. The NYSE requires prospective listing companies to provide a wealth of information, including draft listing applications, as set out in a NYSE Listing checklist provides for listing applications. *Id*. ¶ 13; Ex. 11. It also requires a draft prospectus. *Id*. ¶ 14 Ex. 12 at 14-16. But it starts with a request for a confidential review of eligibility, which, as laid out by NYSE Listed Company Manual Section 104.02, requires identifying material litigation to the NYSE. *Id*. ¶ 12; Ex. 10. Final applications may not be submitted unless the NYSE first clears the company *Id*. Ex. 10, 11. In short, TotalEnergies SE's listing process must have begun with a confidential disclosure, and that disclosure should have included pending material litigation against TotalEnergies SE – including Commisimpex's French litigation against the TotalEnergies Defendants.

### H.  The utility of the discoverable information in Commisimpex's litigation against the TotalEnergies Defendants in France.

In the French proceedings, the TotalEnergies Defendants have been challenging the authenticity of the Guaranty as well as the theoretical amounts owed under the Guaranty, and has been engaged in tactical bluster to this effect. That bluster is reflected in the TotalEnergies

Defendants' communications with US counsel for Commisimpex, in which they dismiss the Commisimpex litigation as a "fraud." Makowski Decl. ¶ 58; Ex. 22. But TotalEnergies SE has a different relationship with its underwriters and the NYSE that would encourage candor in, at least, the non-public communications.

Likewise, this information, as well as the Underwriters' own assessments of that liability, will be valuable in undermining the TotalEnergies Defendants' asserted defenses in the litigation. *Id*. ¶ 57. The TotalEnergies Defendants specifically asserted several non-jurisdictional defenses intended to reduce the quantum of the amount owed, both through misattributing the sources of the debt in the arbitration proceedings and by asserting defenses of partial performance or non-performance. *Id*. ¶¶ 46-47, 57. While it is extremely likely that the Total Note Issuers assured the Underwriters that the assertion of debt is meritless, it is equally likely that the Underwriters will have their own assessments as to the likely amount of the debt, as their due-diligence obligations require an independent investigation.

Commisimpex also intends to use that discovery to support its argument that the debt is not limited to TotalEnergies EP Congo. This is necessary because the TotalEnergies Defendants communications with counsel for Commisimpex indicate an intent to limit exposure to TotalEnergies EP Congo, even though TotalEnergies SE is also liable under the Guaranty. By showing how the Total Note Issuers portrayed the relationship between TotalEnergies SE and TotalEnergies EP Congo to the Underwriters, and how they counted TotalEnergies EP Congo's assets and liabilities in their disclosures, Commisimpex will have information it can use to overcome this defense in France.

Commisimpex reasonably believes that the NYSE will have non-privileged documents, communications, and information relating to Commisimpex's claim against the TotalEnergies

Defendants. TotalEnergies SE's initial application and related communications with the NYSE are non-public, but because the NYSE relies on the information provided to it by TotalEnergies SE, and is entitled to request public and non-public information as part of the application process, TotalEnergies SE is very likely to have provided non-public documents to the NYSE that are not otherwise available. This may include TotalEnergies SE's non-public, internal assessments of its Commisimpex liability to the NYSE; not the simple omissions it has presented to the public. TotalEnergies SE's listing efforts will require a close review of the current status of TotalEnergies SE's potential liabilities from ongoing litigation. The information and documents that TotalEnergies SE provided to the NYSE will make it clear whether TotalEnergies SE's presentation to the NYSE is consistent with the TotalEnergies Defendants' representations to its shareholders in France, or the different representations TotalEnergies SE made to the Commercial Court of Nanterre.

Commisimpex also reasonably believes that the Underwriters will have non-privileged documents, communications, and information relating to the TotalEnergies Defendants. The Total Note Issuers were required to disclose material information to the Underwriters. It is near-certain that the Commisimpex liability and Guaranty were discussed, if only to justify non-disclosure to the public. The TotalEnergies Defendants are potentially liable to Commisimpex for approximately €1.8 billion, or approximately $2.1 billion USD. It defies belief that TotalEnergies SE would disclose comparatively small lawsuits that it considered meritless, but not the Commisimpex litigation. The Underwriters are also likely to have independently discovered Commisimpex's litigation against TotalEnergies SE in satisfaction of their own, independent duty to investigate.

Those communications will show how the Total Note Issuers discussed the Guaranty or

16

the Commisimpex litigation with the Underwriters, what admissions they made, and the evidence relied upon. And the Underwriters are themselves likely to have their own independent analysis of the Guaranty and Commisimpex litigation, through their due-diligence investigation. Commisimpex should be given the opportunity to discover those discussions and the disclosure of that information for use in the currently pending litigation in France.

## III.  <u>ARGUMENT</u>

"In ruling on an application made pursuant to section 1782, a district court must first consider the statutory requirements and then use its discretion in balancing a number of factors." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

Section 1782 has three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (quoting *Brandi-Dohrn*, 673 F.3d at 80). Courts also consider four discretionary factors, bearing in mind Section 1782's twin aims of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 297-98 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)). The Application satisfies each statutory requirement and discretionary factor.

### A. **Respondents reside or are found in the Southern District of New York.**

The first statutory requirement is that the respondents "reside" or can be "found within" the district in which the application is made. In *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019), the Second Circuit held that the "resides or is found" language of § 1782 "extends to the limits of personal jurisdiction consistent with due process."

Each respondent is unquestionably located within this District. Each maintains an office in Manhattan that serves as that respondent's headquarters.

- The New York Stock Exchange famously has its offices at 1 Wall St, New York, NY 10005. Short Decl. ¶ 3, Ex. 1.

- BOFA Securities, Inc. has its headquarters at its office at 1 Bryant Park, New York, NY 10036. *Id*. ¶ 4, Ex. 2.

- MUFG Securities America has its headquarters at its office at 1221 6th Ave, 6th Floor, 1001, New York, NY 10020. *Id*. ¶ 5, Ex. 3.

- Morgan Stanley & Co. LLC has its headquarters at its office at 1585 Broadway New York, NY 10036. *Id*. ¶ 6, Ex. 4.

- Natixis Securities Americas LLC has its headquarters at its office at 1251 6th Ave, New York, NY 10020. *Id*. ¶ 7, Ex. 5.

- SMBC Nikko Securities America has its headquarters at its New York office at 277 Park Ave 5th Floor, New York, NY 10172. *Id*. ¶ 8, Ex. 6.

- Deutsche Bank Securities has its headquarters at its office at 1 Columbus Circle, New York, NY 10019. *Id*. ¶ 9, Ex. 7.

An entity is deemed to be found in New York where it maintains its principal place of business. *See, e.g., In re Zouzar Bouka; Vision Indian Ocean S.A.*, No. 22MISC92RAGWG, 2022 WL 15527657, at *3 (S.D.N.Y. Oct. 28, 2022). And, in the context of § 1782 applications, employees and officers of an entity based in New York have minimum contacts sufficient to establish specific personal jurisdiction for the purpose of seeking discovery arising out of that employment. *Tianbo Huang v. iTV Media*, Inc., 13 F.Supp.3d 246, 256-57 (E.D.N.Y. 2014) (specific personal jurisdiction existed over CEO who did not live in New York); *In re del Valle*

*Ruiz*, 939 F.3d at 528 (importing specific personal jurisdiction constitutional due process analysis to § 1782 context). And an entity is also "found within" a state if their contacts with the forum are sufficiently related to the information being sought, as is the case here, where the information being sought is about TotalEnergies SE's efforts to be listed on the NYSE and the Total Note Issuers' communications with the Underwriters related to the issuance of US-dollar denominated Notes. Each of these points alone is sufficient to satisfy § 1782's found within requirement. *In re JSC BTA Bank*, 577 F.Supp.3d 262, 266 (S.D.N.Y. 2021).

　　The Application satisfies the first statutory requirement of § 1782.

**B. The requested discovery is for use in a pending "foreign" proceeding in France.**

　　The second statutory requirement is that the requested discovery must be for use in a pending foreign or international proceeding. Discovery is "for use" if the discovery sought "will be employed with some advantage or serve some use in the [foreign] proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). It is satisfied by the existence of adversarial actions in a foreign court for which the discovery may serve some advantage. *See In re JSC BTA Bank*, 577 F.Supp.3d 262, 266 (S.D.N.Y. 2021); *In re Blue Skye Fin. Partners S.A.R.L.*, No. 22 MISC. 171 (KPF), 2022 WL 2441074, at *3 (S.D.N.Y. July 5, 2022) ("for use" requirement met where adversarial actions pending before District Court of Luxembourg).

　　Commisimpex is currently involved in litigation with the TotalEnergies Defendants in the Commercial Court of Nanterre, France, in case RG n°2016F02380, and would be able to use the discovery sought to address the defenses being raised by the TotalEnergies Defendants. TotalEnergies Capital or TotalEnergies SE's communications with Respondents are anticipated to discuss the Guaranty and potential liability to Commisimpex. Either way, the Underwriters would have assessed the potential liability through their due diligence efforts and will have collected information useful to Commisimpex in its litigation.

The Application satisfies the second statutory requirement of § 1782.

**C. Applicant, as a party to the foreign litigation, is an "interested person".**

Finally, § 1782 requires that the applicant be an "interested person" to the foreign litigation. The statutory term "interested person" encompasses parties to the foreign litigation. *Intel*, 542 U.S. at 256. Commisimpex is a party to the litigation in France and is therefore an "interested person" within the meaning of § 1782.

The Application satisfies the third statutory requirement of § 1782.

**D. The discretionary factors weigh in favor of granting this application.**

Once the statutory requirements are satisfied, courts should evaluate *Intel*'s four discretionary factors before deciding to grant an application, keeping in mind § 1782's twin aims of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees*, 793 F.3d at 297-98 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)). The four factors are:

> whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome.

*Id.* (citation modified).

1. The discovery sought is beyond the reach of French courts.

The first discretionary factor asks whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the foreign tribunal's power over that person reduces – but does not eliminate – the need for assistance under § 1782. "[T]he relevant inquiry

is whether the foreign tribunal has the ability to control the evidence sought and order production." *In re Ex parte Klein*, No. 23 Misc. 211, 2023 U.S. Dist. LEXIS 227152, at *28 (S.D.N.Y. Dec. 21, 2023).

None of the Respondents is a party to the foreign litigation or anticipated to be a party to the foreign litigation, which has been ongoing for approximately seven years. They are also not members of the TotalEnergies corporate family. A significant portion of the discovery sought would be internal communications and documents regarding the Total Note Issuers's representations; those internal documents are unlikely to be in the possession of any TotalEnergies entities.

The communications between the Respondents and TotalEnergies SE or TotalEnergies Capital S.A. are also not obtainable in the French proceeding. For one, France does not have disclosure procedures that can force adversaries to turn over a category of evidence. Makowski Decl. ¶¶ 60-61. As this Court has observed, "[a] cursory examination of France's Code of Civil Procedure reveals that a party seeking discovery is required to identify the precise document that it seeks produced." *In re Auto-Guadeloupe Investissement S.A*., No. 12 MC 221 (RPP), 2012 U.S. Dist. LEXIS 147379, at *15 (S.D.N.Y. Oct. 10, 2012). It is not sufficient to request that a French court order the production of documents related to a specific subject matter; "[t]he actual documents must be specifically identified to the Court before the French Court will consider ordering its production." *Id*. *see also* Makowski Decl. ¶ 60. Commisimpex knows that there were communications between the Respondents and TotalEnergies SE or TotalEnergies Capital S.A, and it even knows the probable content of those communications. *Id*. But it is unable to identify the precise communications, rendering them unobtainable in France for the purpose of *Intel*. *Id*.

Second, TotalEnergies SE, a defendant in the French proceedings, will not have any of

the Underwriters' internal documents, and may not have the communications, either. TotalEnergies Capital S.A. is the issuer of the $4.25 billion Guaranteed Notes addressed in the 2024 supplemental prospectus, but TotalEnergies SE is the guarantor. *Id*. The identity of which TotalEnergies entity or personnel that communicated with the Underwriters is unknown.

This factor favors granting the § 1782 application.

2. There is no evidence that French courts would reject discovery obtained from the application.

Under the second discretionary factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Courts tread lightly here and "heed only clear statements by foreign tribunals that they would reject Section 1782 assistance." *In re Porsche Automobil Holding SE*, No. 15-mc-417 (LAK), 2016 U.S. Dist. LEXIS 20012, at *8 (S.D.N.Y. Feb. 18, 2016). In this Court, the party opposing the application bears the burden of demonstrating that a foreign court would not be receptive to assistance from a U.S. court.

There is no indication that French courts would reject § 1782 assistance. Makowski Decl. ¶ 65. To the contrary, "French courts appear to be receptive to U.S. assistance." *In re Valitus, Ltd.*, No. 20-mc-91133-FDS, 2020 U.S. Dist. LEXIS 203522, at *17-18 (D. Mass. Nov. 2, 2020) ("Furthermore … [t]he French court concluded that neither the Hague Convention nor the French rules of civil procedure prevented discovery in [the U.S.]"). In fact, the French Government itself has previously sought assistance under § 1782. *In re Letter of Request from Gov't of France*, 139 F.R.D. 588, 589 (S.D.N.Y. 1991).

This factor weighs in favor of granting the § 1782 application.

### 3. The Application does not circumvent French rules of evidence.

The third discretionary factor allows a district court to consider whether the § 1782(a) request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. This is a permissive inquiry; it does not require that the type of evidence sought would be admissible or even discoverable in the foreign proceeding. The Second Circuit has consistently rejected the existence of a "foreign-discoverability requirement," holding that such a requirement would be inconsistent with the Supreme Court's decision in *Intel. Hanwei Guo v. Deutsche Bank Sec*., 965 F.3d 96 (2d Cir. 2020) (citing *Intel*, 542 U.S. at 253). "A foreign nation may limit discovery within its domain for reasons particular to its own legal practices, culture, or traditions – reasons that do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261. Instead, the "circumvention" inquiry boils down to whether the discovery is being sought in bad faith – whether there is a legitimate reason for obtaining documents, or whether an applicant is attempting to circumvent an adverse foreign discovery order barring disclosure of specific documents. *In re Application XPO Logistics, Inc.*, No. 15 Misc. 205, 2017 U.S. Dist. LEXIS 203577, at *18 (S.D.N.Y. Dec. 11, 2017) (upholding determination that there was no basis to conclude that the applicant "sought to replace a French decision with one by a U.S. court.") (citation modified) (quoting *In re Microsoft Corp.*, 428 F.Supp.2d 188, 194 (S.D.N.Y. 2006)).

That the discovery available via § 1782 may be broader than what is obtainable in the foreign court is a feature, not a bug, of the statute, and courts routinely grant applications where the evidence is not obtainable in a foreign court, under that jurisdiction's law. *In re Pidwell*, No. 1:21-MC-0166 (ALC)(KHP), 2022 U.S. Dist. LEXIS 11484, at *14 (S.D.N.Y. Jan. 21, 2022). "Only where the materials being sought are privileged or otherwise prohibited from being discovered or used is the third Intel factor implicated.…" *In re Ex parte Tiberius Grp. AG*, No.

23

19-mc-467 (VSB), 2020 U.S. Dist. LEXIS 40471, at *12–13 (S.D.N.Y. Mar. 6, 2020).

The discovery here is being sought because the litigation before the Commercial Court of Nanterre in France will soon enter the merits stage, making it an appropriate juncture for obtaining evidence to rebut the TotalEnergies Defendants' asserted defenses. Moreover, all of the evidence sought will be extremely useful because it will be of recent vintage; TotalEnergies SE intends to list on the NYSE this year, and the Commisimpex has not been barred from seeking this sort of discovery by the French courts. It is simply unable to obtain it due to the relatively limited scope of discovery afforded by the French legal system and its lack of jurisdiction over Respondents. *In re Auto-Guadeloupe Investissement*, 2012 U.S. Dist. LEXIS 147379, at *15; Makowski Decl. ¶¶ 62-63. That is no bar to granting – or to French courts accepting – § 1782 assistance.

### 4.  The discovery requests relate to discrete and recent actions over a short period.

The last discretionary factor asks whether the discovery sought is unduly intrusive or burdensome. This factor borrows the proportionality inquiry from the Federal Rules of Civil Procedure. *Mees*, 793 F.3d at 302. "[W]hether a request is intrusive or burdensome should not be assessed based on the 'discovery scope' available in the foreign proceeding." *Id*. Instead, the inquiry is whether the relevant material is "proportional to the needs of the case … and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Ex parte SBK Art LLC*, No. 24 Misc. 147, 2025 U.S. Dist. LEXIS 102566, at *39 n.8 (S.D.N.Y. May 30, 2025) (citation and quotation omitted).

Under those standards, the discovery sought is neither burdensome nor unreasonable. In the proposed subpoenas, Commisimpex is seeking documents and communications relating to TotalEnergies SE's listing efforts and TotalEnergies SE and TotalEnergies Capital S.A.'s

24

disclosures for their note offering, specifically limited to those relevant to the 1986 Guaranty, the Nanterre litigation, and the related debt owed by the Republic of the Congo and the TotalEnergies Defendants. Short Decl. Ex. 15. These are discrete topics, and Commisimpex's discovery requests are not burdensome, as they are limited to a period of approximately five years and seek easily searchable electronic materials. Commisimpex's requests do not require any substantive or complex searches. They can be satisfied by searching TotalEnergies-related files and communications for materials in which Commisimpex, the Nanterre litigation, the Republic of Congo, and the 1986 Guaranty are specifically mentioned. Given the scope of the underlying litigation, which involves roughly $2 billion USD of liability resulting from the Guaranty, the discovery sought is entirely proportionate.

The last discretionary factor also supports granting the § 1782 Application.

## IV.    **CONCLUSION**

For the foregoing reasons, the Application for Judicial Assistance should be granted.


Dated: October 22, 2025.                    Respectfully submitted,

By:    /s/ Tara J. Plochocki
Tara J. Plochocki (NY Bar No. 5359054)
David A. Short (NY Bar No. 5780804)
650 Massachusetts Avenue, N.W.,
Suite 600
Washington, D.C., 20001
Tel: (202) 900-8740
tplochocki@sequorlaw.com
dshort@sequorlaw.com

*Counsel for Commissions Import-Export S.A.*