# Exhibit 3

Prof. Dr PASCAL PICHONNAZ
Université de Fribourg

mobile: +41 79 323 5309
office: +41 26 300 8029
home-office: +41 26 401 0756
pascal.pichonnaz@unifr.ch
www.unifr.ch/ius/pichonnaz

# Avis de droit

**sur la validité de la Garantie**
selon le droit suisse

## Prof. Dr. Pascal PICHONNAZ

Professeur ordinaire, Université de Fribourg (Suisse)
LL.M. (UC Berkeley), avocat

**COMMISSIONS IMPORT EXPORT**
**(« Commisimpex »)**

**c.**

**TOTAL E&P Congo, ELF**
**AQUITAINE, TOTAL S.A.**

Tribunal de commerce de Nanterre
(France)

Délivré le 20 août 2020

# SOMMAIRE

§ 1 INTRODUCTION ........................................................................................................... 3

§ 2 UN BREF RÉSUMÉ DES FAITS ................................................................................. 4

§ 3 LES QUESTIONS À RÉSOUDRE ............................................................................... 4

§ 4 L'ANALYSE JURIDIQUE ........................................................................................... 5

I.   INTRODUCTION ...................................................................................................... 5

II.  LES CONDITIONS DE VALIDITÉ ET DE MISE EN ŒUVRE DU
     « NANTISSEMENT » DES CRÉANCES ................................................................ 6
     1.   Les conditions matérielles de la constitution ................................................... 7
          1° La spécialité de la garantie par rapport à la créance garantie .................... 7
          2° La détermination de l'objet du gage ............................................................ 8
     2.   LES MODALITÉS DE LA CONSTITUTION ................................................... 9

III. LES EFFETS ET LA RÉALISATION DU GAGE ..................................................... 9
     1.   LES EFFETS AVANT LA RÉALISATION FORCÉE ...................................... 9
     2.   LES EFFETS SUR LE DÉBITEUR DU DROIT MIS EN GAGE DES L'AVIS DU
          GAGE ............................................................................................................. 10
     3.   LA RÉALISATION DU DROIT MIS EN GAGE ........................................... 11

IV.  L'ANALYSE DANS LE CAS CONCRET ............................................................... 11
     1.   LA QUALIFICATION DE « GAGE SUR CRÉANCES » ............................... 11
     2.   LES CONDITIONS DE VALIDITÉ ET MODALITÉS DE CONSTITUTION ............. 12
     3.   LES CONDITIONS DE LA RÉALISATION DE LA GARANTIE ................................. 14
          1° Une réalisation privée unilatérale .............................................................. 15
          2° Le renforcement accru de la position du créancier gagiste ........................ 16
          3° Un résumé du système mis en place par l'avis et l'exécution forcée .......... 17

§ 5 CONCLUSIONS ......................................................................................................... 19

ANNEXE – LES DISPOSITIONS LÉGALES CITÉES ...................................................... 21

I.   Code civil suisse ...................................................................................................... 21

II.  Code des obligations ............................................................................................... 23

III. Loi sur le droit international privé ......................................................................... 24

# § 1 INTRODUCTION

1   Le soussigné est Professeur ordinaire de droit privé et de droit romain à l'Université de Fribourg, ancien Doyen de la Faculté de droit. Il enseigne en particulier le droit des obligations et le droit des contrats. Un *curriculum vitae* et une liste de publications de l'auteur de l'avis peuvent être téléchargés sur www.unifr.ch/ius/pichonnaz.

2   Le soussigné déclare qu'il n'a pas de conflit d'intérêts en lien avec les parties à la présente procédure.

3   Le présent avis est établi à la demande de Commisimpex.

4   Pour la préparation du présent avis, j'ai eu accès aux documents suivants :

- La Garantie du 22 décembre 1986
- Le Procès-verbal de la Commission interministérielle (pièce 3)
- Le Protocole d'accord du 14 octobre 1992 (pièce 6)
- Le Protocole d'accord du 23 août 2003 (pièce 8)
- La Sentence arbitrale du 3 décembre 2000 (pièce 9)
- La Sentence arbitrale du 21 janvier 2013 (pièce 10)
- La Sentence arbitrale partielle du 20 août 2010
- Le recours en annulation de la Sentence Partielle (Pièce 88)
- Les significations de la Garantie (pièces 39 à 44)
- Les marchés et avenants signalés dans la Garantie (pièces 1-10), ainsi que la liste des marchés et attestations
- Les Conclusions récapitulatives de Commisimpex du 18 février 2020
- Les Conclusions récapitulatives de Total E&P Congo du 3 septembre 2019
- Les conclusions récapitulatives de TOTAL SA ET TOTAL Holdings
- Les Conventions d'établissement et avenants entre le Groupe Total et le Congo (pièces 22 à 26 ; Avenants 12,13,18, 19)
- Les Attestations de Messieurs Miokono, Lekoundzou et Poungui (pièces 27-29)
- Les Consultations du Professeur Carbonnier (pièce 37) et du Professeur Delebecque (pièce 89)
- L'avis du Président de la Cour Suprême du Congo (pièce 60)
- Le rapport Mazars du 28 mars 2019

## § 2 UN BREF RÉSUMÉ DES FAITS

5   Commisimpex est une société de droit congolais spécialisée dans la réalisation de travaux publics. De 1984 à 1986, Commisimpex et le Congo ont conclu des marchés de travaux publics et de fourniture de matériels.

6   Le 22 décembre 1986, l'État congolais, représenté par le Ministère des Finances et du Budget et la Caisse Congolaise d'Amortissement (la « **CCA** »), a émis, au bénéfice de Commisimpex, **une garantie de paiement du prix des marchés de travaux**, sous réserve de leur parfaite exécution (ci-après, la « **Garantie** »).

7   En relation avec Total SA, Total E&P Congo et ELF Aquitaine (ci-après : **les sociétés du Groupe TOTAL** »), la Garantie établit notamment un droit de gage en faveur de Commisimpex sur les créances, définies par la Garantie.

8   Suite à une sentence arbitrale du 3 décembre 2000, aujourd'hui exécutoire, d'une décision du 9 novembre 2001 devant le Tribunal de commerce de Brazzaville, aujourd'hui exécutoire, et d'une sentence arbitrale du 21 janvier 2013, elle aussi exécutoire, le principe de la créance de Commisimpex a été définitivement reconnu. Le *quantum* a bien sûr évolué au fur-et-à mesure des procédures. Le rapport Mazars du 23 octobre 2017, puis sa mise à jour au 28 mars 2019 ont établi le montant actuel des sommes dues par le Congo.

9   Le 11 et 12 octobre 2011, le 7 et 10 octobre 2016, et le 26 décembre 2017, Commisimpex a signifié la Garantie à chacun de ces débiteurs, à savoir aux sociétés du Groupe TOTAL (*Pièces n°39 à 44*).

10  Malgré ces significations/notifications (« **avis** »), les débiteurs nantis ont refusé de se libérer entre les mains de Commisimpex du montant des sommes dues par l'État congolais et, adoptant la position du Congo, se sont opposées à l'exécution de la Garantie.

11  C'est dans ces conditions que Commisimpex a assigné les sociétés du Groupe Total devant le Tribunal de commerce de Nanterre.

## § 3 LES QUESTIONS À RÉSOUDRE

12  Ma mission consiste à :

13  -   Déterminer la validité de l'acte (condition de forme et de fond) et sa qualification sous l'appellation « garantie de paiement du prix des marchés de travaux » (ci-après : la **Garantie**) au regard du droit suisse ;

14  -   Déterminer les conditions de mise en œuvre du nantissement ;

15  -   Déterminer l'opposabilité du nantissement aux débiteur nantis.

# § 4 L'ANALYSE JURIDIQUE

## I. INTRODUCTION

16 Le 22 décembre 1986, l'Etat du Congo, représenté par le Ministère des Finances et du budget, et la Caisse Congolaise d'Amortissement (la « **CCA** »), ci-après aussi « les **Garants** », ont accordé à Commisimpex le bénéfice d'une « **Garantie** » dont la validité est soumise au **droit suisse** (*cf. Garantie, Paragraphe I 2ᵉ paragraphe*).

17 Cet engagement est libellé ainsi :

> (B)*Les Garants s'engagent par les présentes, sans conditions et irrévocablement, à garantir à COMMISIMPEX, le paiement des montants intégraux des marchés et avenants de travaux et fournitures attribués à COMMISIMPEX, dont le détail figure ci-dessus.*

18 Il s'agit d'un **engagement irrévocable et inconditionnel** des Garants à garantir le paiement de sommes désignés aux Articles 2 et 3 de la Garantie. Cet engagement est qualifié par le paragraphe C de la Garantie de la manière suivante :

> *(C) La présente garantie constitue un engagement* **irrévocable, inconditionnel, indépendant et permanent** *qui lie chaque Garant, et est* **exécutoire** *à son encontre,* **sans tenir compte d'aucune irrégularité** *ou du caractère non exécutoire du paiement, et, chaque Garant ne sera libéré que par son paiement de toutes les sommes dues à COMMISIMPEX au titre des marchés de travaux, avenants et fournitures, y inclus intérêts, intérêts de retard, frais et accessoires rattachés aux contrats dont le détail figure ci-dessus.* (la mise en évidence est de mon fait)

19 **Dans le même temps**, le paragraphe F de la Garantie souligne que la République Populaire du Congo **nantit et met en garantie tous les revenus**, et notamment toutes les créances etc. de l'exploitation sous quelque forme que ce soit des gisements d'hydrocarbure dont le détail figure ci-après :

> *(F) En garantie du paiement intégral, irrévocable et inconditionnel des montants des marchés et avenants de travaux et fournitures dont le détail figure ci-dessus, la R.P.C. nantit et met en garantie* **tous les revenus**, *et notamment toutes les créances, royalties, taxes, droits, etc., qu'ils soient* **présents, futurs ou éventuels**, *provenant ou à provenir, directement ou indirectement, de l'exploitation sous quelque forme que ce soit des gisements d'hydrocarbure dont le détail figure ci-après: Likouala, Loango, Tchibouela, Emeraude, Yanga, Sendji et Sendji Compl. situés sur le territoire de la République Populaire du Congo.* (la mise en évidence est de mon fait)

20    Ce nantissement sur des créances et autres droits peut ainsi être invoqué directement à l'encontre des sociétés du Groupe Total.

21    Avant d'examiner la question de la validité de la « garantie », il importe de rappeler la nature des relations entre les parties :

22    - **Le créancier originaire** est l'Etat du Congo, qui a agi par l'intermédiaire du Ministère des Finances et du Budget et de la CCA. Toujours par l'intermédiaire du Ministère et de la CCA, il a mis en gage les créances désignées par la Garantie en faveur de Commisimpex ; l'Etat du Congo est donc aussi **constituant du gage**. Comme il y a identité de personne, j'utiliserai indistinctement le terme de constituant et de créancier originaire pour désigner l'Etat du Congo ; le terme de Garants peut aussi désigner directement le Ministère et la CCA, qui ont agi pour l'Etat du Congo.

23    - **Le créancier gagiste** est Commisimpex. Il dispose d'un droit irrévocable à obtenir le paiement des créances désignées par la Garantie à l'égard des débiteurs de celles-ci, à savoir le Groupe Total. Le mécanisme de paiement sera présenté plus loin (cf. *infra* ¶ 62 ss).

24    - **Les débiteurs nantis** sont les sociétés du Groupe Total. A ce titre, celles-ci doivent respecter un certain nombre de règles dès l'avis qui leur est donné de l'existence de la Garantie (cf. *infra* ¶ 45). Elles doivent ensuite payer les dettes dues à l'Etat du Congo directement au créancier gagiste, aux conditions présentées dans le présent avis.

25    Je vais donc examiner les conditions de validité du « nantissement » des créances en vertu du droit suisse (II.), les effets et la réalisation du gage (III.), avant d'analyser leur mise en œuvre dans le cas concret (IV.).

## II.    LES CONDITIONS DE VALIDITÉ ET DE MISE EN ŒUVRE DU « NANTISSEMENT » DES CRÉANCES

26    Pour déterminer les conditions de validité et de mise en œuvre du « nantissement » prévu par le **paragraphe F** de la Garantie, il convient, en droit suisse, de commencer par qualifier l'acte en question. Le droit suisse désigne ce type de « nantissement » comme étant un « gage sur les créances » au sens des art. 899 ss Code civil suisse (ci- après : « **CC** »).

27    **L'art. 899 al. 1 CC** dispose ainsi que « *[l]es créances et autres droits aliénables peuvent être constitués en gage* ». Pour établir les conditions de validité d'un tel gage sur les créances, il importe de fixer d'abord les conditions matérielles de la constitution (1.), puis les modalités de sa constitution (2.).

# 1. LES CONDITIONS MATÉRIELLES DE LA CONSTITUTION

**28** Il convient d'observer que la constitution du gage est dépendante du régime de spécialité de la garantie par rapport à la créance garantie (1°), avant d'analyser l'objet du gage (2°).

## 1° La spécialité de la garantie par rapport à la créance garantie

**29** La spécialité de la garantie envisagée par l'art. 899 CC est de même nature que celle qui prévaut de manière générale en matière de nantissement, raison pour laquelle le renvoi de l'art. 899 al. 2 CC s'applique[1]. Ainsi, comme pour tout droit de gage, le droit de gage sur les créances et autres droits est un **droit accessoire**, qui dépend du droit principal, qu'est la créance garantie[2]. Il n'existe donc que pour autant que la créance garantie existe (art. 889 al. 1 CC et art. 114 al. 1 CO). La ou les créance(s) garantie(s) doivent donc être déterminées par le contrat.

**30** **a) La nature de la créance garantie**. Les règles sur le nantissement, et partant celles sur les droits de gage sur des créances, ne contiennent *pas de restrictions sur le type de créances qui peuvent bénéficier de la garantie*[3] ; la cause de la créance garantie est également sans importance[4]. Il n'est donc *pas nécessaire* que, lors de la constitution du droit de gage, la créance soit déterminée dans son montant sous la forme d'une *somme fixe ou d'une somme maximale garantie*[5].

**31** La créance ou le droit à grever *doit être « aliénable »*, à savoir susceptible d'être cédé/e ou transféré/e[6]. Une limitation de la cessibilité ne rend pas le droit « inaliénable » au sens de l'art. 899 CC, ni d'ailleurs le fait que la créance ou le droit soit protégé par un secret (professionnel ou bancaire, p. ex.)[7]. Une créance ou un droit peut être inaliénable par la loi, la convention des parties ou la nature de la créance ; en droit suisse, l'appréciation se fait en conformité avec l'article 164 CO relatif à la cession de créance. Outre l'existence d'une règle expresse dans la loi ou d'un accord entre les parties au contrat générateur d'obligations, on peut envisager des créances incessibles par leur nature[8].

---

[1] P.-H. STEINAUER, Les droits réels, Tome III, 4e éd., Berne 2012, n. 3207 ; . DE GOTTRAU/B. FOËX, in : Pichonnaz/Foëx/Piotet (édit.), Commentaire romand du Code civil, vol. II, Art. 457-977 CC, Art. 1-61 Tit.fin. CC, Bâle 2016 (CR CC II-DE GOTTRAU/FOËX), Art. 899 CC n. 21.

[2] STEINAUER, Droits réels III (n. 1), n. 3130 ; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 899 CC n. 12.

[3] STEINAUER, Droits réels III (n. 1), n. 3131 ; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 899 CC n. 15.

[4] B. FOËX, Le contrat de gage mobilier, Bâle/Francfort-sur-le Main 1997, p. 215 ss.

[5] STEINAUER, Droits réels III (n. 1), n. 3131a ; FOËX, Le contrat (n. 4), p. 222 ss ; déjà ATF 47/*1921* III 97, JdT 1922 I 79.

[6] BSK-ZGB II-BAUER (5e éd.), Art. 899 CC n. 21; cf. ZK-OFTINGER/BÄR, Art. 899 CC n. 71; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 899 CC n. 14 ; BK-ZOBL, Art. 899 CC n. 32, 61 ss.

[7] CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 899 CC n. 14-

[8] ZK-SPIRIG, Art. 164 CO, n. 160 ss; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 899 CC n. 14 ; BK-ZOBL, Art. 899 CC n. 62 ss.

32    En revanche, selon la doctrine, **même une créance inaliénable peut faire l'objet d'un gage valable** lorsque les conditions de l'art. 164 al. 2 CO sont remplies[9]. L'art. 164 al. 2 CO dispose en effet ceci : « *Le débiteur ne peut exciper de ce que la créance avait été stipulée incessible, si le tiers est devenu créancier sur la foi d'une reconnaissance écrite ne mentionnant pas l'incessibilité.* ». Ainsi, le créancier gagiste est protégé même si un *pactum de non cedendo* a été conclu entre le créancier et le débiteur cédé (ou ici, gagé) si le contrat de constitution du gage[10] ne mentionne pas l'incessibilité et que le créancier gagiste s'y est fié de bonne foi au moment de la constitution du gage (ou de la cession de créance)[11].

33    Le droit de gage peut garantir une *dette du constituant* ou la *dette d'un tiers ;* toutefois, cette dette doit être valable, même si elle peut être *actuelle* (exigible ou non), *conditionnelle, future ou simplement éventuelle*[12]. Une créance prescrite n'empêche d'ailleurs pas de faire valoir son gage[13].

34    **b) La détermination de la créance garantie.** La créance garantie doit être *suffisamment déterminée*[14]. Lorsque le contenu de la créance n'est pas d'emblée fixé, il faut à tout le moins que la cause de la créance ou la prestation qui en est l'objet soit décrite avec une précision telle que l'objet de la garantie soit au moins *déterminable*[15]. On peut notamment préciser que le gage portant sur toutes les créances résultant des relations d'affaires entre une banque et l'un de ses clients a été jugé comme licite et suffisamment déterminable[16].

## 2° La détermination de l'objet du gage

35    L'objet du gage au sens de l'art. 899 al. 1 CC peut porter sur toute créance[17] ou autre droit pour autant qu'ils soient aliénables (cf. *supra* ¶ 31 s.)[18]. Il peut aussi s'agir de créances

---

[9] CR CC II-De Gottrau/Foëx (n. 1), Art. 899 CC n. 14 ; Steinauer, Droits réels III (n. 1), n. 3207.

[10] ZK-Spirig, Art. 164 CO, n. 199;

[11] CR CO I-Probst, Art. 164 CO n. 71; ZK-Spirig, Art. 164 CO, n. 195.

[12] Steinauer, Droits réels III (n. 1), n. 3132 ; Foëx, Le contrat (n. 4), p. 219 ss et 226 ss; déjà ATF 71/*1945* II 262, JdT 1946 I 370.

[13] Steinauer, Droits réels III (n. 1), n. 3132a.

[14] Steinauer, Droits réels III (n. 1), n. 3133 ; Foëx, Le contrat (n. 4), p. 226 ss ; CR CC II-De Gottrau/Foëx (n. 1), Art. 899 CC n. 13 ; H. Kuhn, Schweizerisches Kreditsicherungsrecht, Berne 2011, § 23 n. 21.

[15] Steinauer, Droits réels III (n. 1), n. 3133 ; Kuhn (n. 14) § 23 n. 19 ; ATF 51/*1925* II 278.

[16] ATF 106/*1980* II 257, JdT 1982 II 106; Steinauer, Droits réels III (n. 1), n. 3134a.

[17] Cf. p. ex. ATF 118/*1992* II 142, JdT 1993 I 300; CR CC II-De Gottrau/Foëx (n. 1), Art. 899 CC n. 22.

[18] Steinauer, Droits réels III (n. 1), n. 3207; CR CC II-De Gottrau/Foëx (n. 1), Art. 899 CC n. 14.

futures ou encore conditionnelles[19]. Il importe peu que le débiteur du droit ou de la créance soit le constituant, le créancier gagiste ou un tiers[20].

## 2.  LES MODALITÉS DE LA CONSTITUTION

36   La constitution du gage se fait par contrat, à savoir un **contrat constitutif de droit de gage**, qui est régi par les règles du nantissement (art. 899 al. 2 CC)[33]. Même si une seule partie s'engage, l'acte constitutif n'est pas un acte unilatéral, mais bien un contrat unilatéral[34], à savoir un contrat où seule une partie, le créancier originaire, s'engage en mettant en gage ses créances. L'acceptation du créancier gagiste a en principe lieu par acte concluant, à savoir de manière tacite (par le silence) ou par un comportement qui démontre son acceptation.

37   Le contrat est soumis à la **forme écrite**. Lorsque que seul le constituant/créancier originaire s'engage dans la Garantie (comme en l'espèce), il suffit alors que seul celui-ci signe le contrat constitutif ; conformément à l'art. 13 al. 1 CO, la forme sera déjà respectée (« *Le contrat pour lequel la loi exige la forme écrite doit être signé par toutes les personnes auxquelles il impose des obligations* »).

38   La validité du contrat constitutif n'est subordonnée **ni au consentement du tiers débiteur, ni même à un avis donné à celui-ci**[21]. Bien sûr que « le créancier et le constituant peuvent donner avis de l'engagement au tiers débiteur » (art. 900 al. 2 CC), mais il ne s'agit pas d'une condition de validité de la constitution de la garantie[22]. En effet, l'avis a uniquement un impact sur l'effet libératoire du paiement par le débiteur nanti, conformément à l'art. 906 CC (cf. *infra* ¶ 45).

## III.   LES EFFETS ET LA RÉALISATION DU GAGE

39   Par suite du **renvoi de l'art. 899 al. 2 CC**, les effets du droit de gage sur un droit sont les mêmes que pour un nantissement d'une chose mobilière.

## 1.  LES EFFETS AVANT LA RÉALISATION FORCÉE

40   Avant la réalisation forcée, l'essentiel des effets sont déterminés par l'art. 899 al. 2 CC. Tel est notamment le cas pour les éléments suivants : le créancier ne peut constituer un gage

---

[19] Steinauer, Droits réels III (n. 1), n. 3207a; ATF 113/*1987* II 163; BSK-ZGB II-Bauer (5e éd.), Art. 899 CC n. 19; cf. ZK-Oftinger/Bär, Art. 899 CC n. 71; Kuhn, (n. 14), § 23 n. 19.

[20] Steinauer, Droits réels III (n. 1), n. 3207a; ATF 113/*1987* II 163; BSK-ZGB II-Bauer (5e éd.), Art. 899 CC n. 19; cf. ZK-Oftinger/Bär, Art. 899 CC n. 71; Kuhn, (n. 14), § 23 n. 19.

[21] Steinauer, Droits réels III (n. 1), n. 3208e; BK-Zobl, Art. 900 n. 51 ss; CR CC II-De Gottrau/Foëx (n. 1), Art. 900 CC n. 26 ss.

[22] SJ 2010 473; ATF 47/*1917* II 474.

sur les créances nanties qu'avec le consentement du constituant du gage (art. 887 CC) ; le gage grève la créance et ses accessoires (art. 892 al. 1 CC)[23].

**41**  De même, le droit de gage garantit au créancier *le capital, les intérêts conventionnels, les frais de poursuite et les intérêts moratoires* (art. 891 al. 2 CC).

**42**  Les articles 905 et 906 al. 1 CC règlent des questions liées à la gestion des créances et des droits qu'il n'est pas utile de présenter ici.

## 2. LES EFFETS SUR LE DÉBITEUR DU DROIT MIS EN GAGE DES L'AVIS DU GAGE

**43**  **Dès l'avis (« signification ») du gage**, le débiteur n'a plus le droit de s'acquitter entre les mains du titulaire du droit ou du créancier gagiste qu'avec le consentement de l'autre partie, sous peine de devoir effectuer la prestation une seconde fois[24]. En effet, **l'article 906 al. 2 CC** dispose ce qui suit :

> *Le débiteur, avisé du gage, ne peut s'acquitter entre les mains du propriétaire ou du créancier gagiste qu'avec le consentement de l'autre intéressé.*

**44**  Le Tribunal fédéral a déjà indiqué très tôt que **l'avis doit se référer à la mise en gage**[25]. L'avis peut se faire même par actes concluants, en ce sens qu'il suffit qu'au vu des circonstances le débiteur nanti puisse déduire l'existence de la mise en gage[26]. Il n'y a *pas besoin d'indiquer ni le montant des créances, ni d'autres indications* relatives p. ex. aux conséquences de la mise en garantie[27] ; il suffit que l'avis porte sur le fait que la créance a été mise en gage (et cela peut être communiqué par acte concluant[28], c'est-à-dire même sans un mot ou uniquement implicitement)[29]. Si le débiteur a eu connaissance de la mise en gage non pas par un avis formel, mais d'une autre manière, cette connaissance est mise sur un même pied qu'un avis formel, lorsqu'il n'y a pas de doute et que la connaissance repose sur une source fiable[30].

**45**  Une fois l'avis reçu par le débiteur nanti, il ne peut plus payer directement au créancier originaire sans l'accord du créancier gagiste (CC 906 II)[31] ; partant, si le débiteur paie la

---

[23] STEINAUER, Droits réels III (n. 1), n. 3210 ; BSK-ZGB II-BAUER (5e éd.), CC 892 n. 7; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 892 CC n. 5.

[24] ATF 128/*2002* III 366, JdT 2002 I 554 ; BK-ZOBL, Art. 906 CC n. 36; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 906 CC n. 12.

[25] BK-ZOBL, Art. 900 CC n. 48; ATF 27/*1901* II 197; ATF 23/*1897* I 702.

[26] BK-ZOBL, Art. 900 CC n. 48; ATF 27/*1901* II 197.

[27] BK-ZOBL, Art. 900 CC n. 48.

[28] BK-ZOBL, Art. 900 CC n. 47; ATF 27/*1901* II 197.

[29] BK-ZOBL, Art. 900 CC n. 48.

[30] BK-ZOBL, Art. 906 CC n. 35.

[31] BK-ZOBL, Art. 906 CC n. 34.

créance à son créancier originaire après avoir été avisé de la mise en gage et sans que le créancier gagiste lui ait donné son accord, **le paiement n'a pas effet libératoire** et le débiteur risque de devoir payer une deuxième fois[32]. En effet, selon une jurisprudence du Tribunal fédéral[33], dès l'avis, le débiteur doit en quelque sorte sa dette en commun aux deux et c'est leur accord interne qui détermine à qui il doit finalement verser son paiement. Partant, lorsque l'avis lui a déjà été adressé, et que le *créancier* continue d'exiger le paiement, le débiteur peut exiger de sa part qu'il lui présente un document qui contient l'accord du créancier-gagiste, et vice-versa. Cette légitimation peut bien sûr ressortir directement du contrat de gage[34].

## 3. LA RÉALISATION DU DROIT MIS EN GAGE

46  Si le créancier gagiste n'est pas désintéressé, il peut demander la réalisation forcée du droit mis en gage et se payer sur le prix obtenu (art. 891 al. 1 CC par renvoi de l'art. 899 al. 2 CC)[35]. Pour une créance mise en gage, cela revient à exiger le paiement des sommes mises en gage.

## IV. L'ANALYSE DANS LE CAS CONCRET

47  Après avoir examiné si la qualification de « gage sur créances » est correcte (1.), j'examinerai si les conditions de validité et les modalités de constitution sont bien remplies (2.), pour ensuite développer les conditions de réalisation de la Garantie (3.).

## 1. LA QUALIFICATION DE « GAGE SUR CRÉANCES »

48  Le texte du **paragraphe F** de la Garantie mentionne l'expression suivante : « *la R.P.C. nantit et met en garantie tous les revenus…* ». En droit suisse, l'expression se réfère à la question du « droit de gage sur les créances et autres droits » au sens des art. 899 à 906 CC, puisque cette institution est en quelque sorte le parallèle du nantissement des objets mobiliers. D'ailleurs, l'art. 899 al. 2 CC dispose que « *[s]auf disposition contraire, les règles du nantissement sont applicables* ».

49  **L'analyse textuelle** du paragraphe F confirme qu'il s'agit bien en l'espèce d'un « gage sur les créances », puisqu'il indique que la « *R.P.C. nantit et met en garantie tous les revenus* ». En outre, le paragraphe H mentionne lui aussi les termes de « nantissements » et de « garanties ».

---

[32] ATF 45/*1919* III 1 cons. 2 (p. 6); BK-ZOBL, Art. 906 CC n. 36; ZK-OFTINGER/BÄR, Art. 906 CC, n. 24.
[33] ATF 45/*1919* II 250 cons. 2.
[34] BK-ZOBL, Art. 906 CC n. 34; ZK-OFTINGER/BÄR, Art. 906 CC, n. 25; ATF 45/*1919* II 250 cons. 2.
[35] STEINAUER, Droits réels III (n. 10), n. 3211.

50  **D'autres éléments** renforcent l'analyse que la Garantie consiste bien, dans sa seconde partie, en un gage sur des créances au sens de l'art. 899 CC :

64  **a) La clause de gage négative.** Le paragraphe H indique que « *la R.P.C. s'engage à ne pas céder ou nantir aux tiers, de quelque manière que ce soit, les Revenus et autres droits susmentionnés (paragraphe F)* ». Cet engagement à ne pas céder ou nantir une seconde fois les créances fait parfaitement sens lorsque le débiteur principal a mis en gage les créances spécifiées qu'il a à l'égard des Sociétés du Groupe Total (défenderesses à la présente procédure). Le débiteur principal ne doit en effet pas mettre en danger la possibilité de réaliser les créances mises en gage.

65  **b) La durée de validité.** Le paragraphe K souligne que la Garantie vaut jusqu'au « *paiement intégral de toutes les obligations résultant des marchés et avenants de travaux et fournitures, y inclus les intérêts, les intérêts de retard, frais et accessoires rattachés aux contrats mentionnés ci-dessus* ». Le paragraphe L mentionne que « *il est convenu que seul le paiement total et intégral de toutes les sommes, principal et intérêts en particulier, dues à COMMISIMPEX et couvertes par cette garantie, concernant les marchés et avenants de travaux et fournitures, pourrait acquitter les Garants, sans aucune possibilité d'annulation de cette garantie par n'importe quel moyen autres que le paiement total signalé* ». Ces deux paragraphes soulignent que le droit de gage sur les créances ne s'éteint **qu'après le complet paiement des créances gagées** ; ce lien avec la créance de base est typique de l'accessoriété du droit de gage sur les créances (cf. *supra* ¶ 29).

51  Enfin, plusieurs documents soulignent **la validité de cette Garantie** au regard du droit suisse.

52  **1°** L'article 7 du Protocole d'accord du 23 août 2003 (*pièce 8*) confirme qu'il existe des garanties préexistantes au Protocole en faveur de COMMISIMPEX ; il s'agit donc bien d'une reconnaissance de la validité de la Garantie. Or, la Sentence arbitrale du 21 janvier 2013 (*pièce 10, para. 253 et pt 7 du dispositif*) a validé l'article 7 de ce Protocole d'accord, sentence qui est aujourd'hui revêtue de l'autorité de la chose jugée.

53  **2°** Le recours en annulation de la Sentence Partielle Sentence arbitrale partielle du 20 août 2010 (*pièce 88, para. 125*) a établi la reconnaissance des termes de la Garantie par la RDC, ainsi que l'absence de toute objection sur sa validité.

54  Ainsi, la Garantie constitue bel et bien un **gage sur des créances** au sens des articles 899 ss CC et sa validité a été reconnue par les parties.

## 2. LES CONDITIONS DE VALIDITÉ ET MODALITÉS DE CONSTITUTION

55  J'examine ici quatre conditions de validité et modalité de constitution du gage :

56   **1° Le principe de spécialité de la garantie par rapport à la créance garantie** est donné (cf. *supra* ¶ 29). Les créances garanties existent et leur *quantum* a été confirmé cumulativement par la Sentence Arbitrale du 3 décembre 2000 et par la Sentence Arbitrale du 21 janvier 2013 (*pièce 10, dispositif points 8 et 10*). La Garantie est donc aussi suffisamment déterminée (cf. *supra* ¶ 34). La Garantie prend le soin d'ailleurs de préciser spécifiquement les créances garanties (*p. 1*). Comme il n'est pas nécessaire d'indiquer une somme fixe ou une somme maximale garantie, la Garantie analysée ici est *parfaitement valable* à cet égard.

57   **2° La détermination de l'objet du gage.** Le fait que les créances de l'Etat du Congo à l'égard des sociétés du Groupe Total n'aient pas non plus toutes existé au moment de la mise en gage n'est pas non plus un problème s'agissant de la validité de l'acte, puisqu'il peut même s'agir de créances futures ou encore conditionnelles (cf. *supra* ¶ 33). A la question de savoir si les créances mises en gage par le constituant sont aliénables (cf. *supra* ¶ 31), le Président de la Cour suprême de la République Populaire du Congo a indiqué que « *les obligations du Garant découlant de la signature de la Garantie et des contrats des marchés et avenants de travaux sus désignés constituent des obligations de nature commerciale soumises au droit privé et resteront valables dans toutes leurs dispositions, obligeront l'Etat Congolais et seront reconnues valables en République Populaire du Congo* » (pt 10 de l'avis du Président de la Cour suprême). En outre, si ces créances devaient être considérées comme inaliénables, alors que le document constitutif de la Garantie souligne aux Paragraphes O et P que toutes les autorisations ont été données et que le constituant renonce à l'immunité de juridiction et de toute immunité d'exécution, il faudrait retenir **qu'en vertu de l'art. 164 al. 2 CO**, il n'est pas possible d'opposer l'inaliénabilité au créancier gagiste en raison du fait que celui-ci pouvait de bonne foi se fier à l'aliénabilité de ces droits au moment de la conclusion du contrat (cf. *supra* ¶ 32).

58   Il n'en irait autrement que si l'inaliénabilité devait reposer sur une règle impérative du droit étranger (en l'espèce le droit de la République du Congo) qui poursuivrait des intérêts légitimes et manifestement prépondérants au regard de la conception suisse du droit (art. 19 de la Loi fédérale du 18 décembre 1987 sur le droit international privé, LDIP[36]). Ce n'est pas mon rôle de faire une telle analyse ; je peux toutefois souligner que le Président de la Cour suprême du Congo constate que les créances étaient aliénables et que les valeurs du droit suisse engagent de lutter contre des comportements contradictoires (*venire contra factum proprium ;* art. 2 al. 2 CC). Or, en soutenant l'application d'une éventuelle règle impérative qui s'opposerait à la mise en gage de créances en question, on soutiendrait un comportement contradictoire de l'Etat du Congo qui, d'un côté, assure dans la Garantie que tout a été entrepris pour assurer la validité et la possibilité de la réaliser, mais qui, d'un autre côté, pourrait invoquer une règle qui s'opposerait à la mise en gage. L'art. 19 LDIP n'a pas pour fonction de soutenir les comportements contradictoires d'un Etat. En l'espèce,

---

[36] Recueil systématique (RS) 291.

il semble que les créances soient parfaitement susceptibles de faire l'objet d'une mise en gage conformément à l'avis du Président de la Cour suprême du Congo.

59 En outre, il n'y a aucune importance de savoir quel est le droit applicable aux créances nanties, puisque le phénomène de mise en gage des créances est soumis au droit suisse et que celui-ci admet que n'importe quelle créance soit mise en garantie (cf. *supra* ¶ 30), y compris bien sûr des créances non soumises au droit suisse.

60 **3° La forme.** L'acte de mise en gage des créances a été rédigé par écrit. La Garantie examinée contient en un même acte le contrat constitutif de la mise en gage et le contrat de disposition des créances, créateur du droit réel limité. Comme le créancier et constituant du gage l'a signé, la forme écrite des article 12 ss CO a été parfaitement respectée, puisque seule la partie qui s'engage doit signer le contrat (art. 13 al. 1 CO). En effet, la signature du créancier gagiste n'est pas nécessaire[37]. En outre, le consentement du tiers débiteur ou même un avis à celui-ci n'est pas un élément constitutif de sa validité (cf. *supra* ¶ 52).

61 **4° La mise en gage ne constitue pas un engagement excessif (art. 27 al. 2 CC).** Aucun arrêt du Tribunal fédéral n'indique un cas de mise en gage de créances qui serait excessif. La seule hypothèse proche est celle d'une cession globale de créance aux fins de garantie dans laquelle le Tribunal fédéral a posé comme limite que la cession globale de créances futures doit être délimitée, de sorte que l'on puisse juger si la cession est limitée p.ex. au cercle d'une activité spécifique ou de plusieurs activités délimitées[38]. Certes, la jurisprudence a été développée en lien avec la cession des créances, mais certains auteurs préconisent de l'appliquer aussi à la mise en gage de créances[39]. En l'espèce toutefois, non seulement il ne s'agit pas d'une cession de créance (ce qui laisse déjà planer des doutes sur l'application de la jurisprudence), mais surtout la Garantie indique précisément les contrats considérés (cf. paragraphe F *in fine*), de sorte que la délimitation est de toute manière suffisante au regard de l'article 27 al. 2 CC pour que l'engagement ne puisse pas être considéré comme excessif.

## 3. LES CONDITIONS DE LA RÉALISATION DE LA GARANTIE

62 Je vais examiner les diverses clauses de la Garantie qui ont trait à la garantie sur les créances.

---

[37] Arrêt du TF, 4A_586/2009, SJ 2010 I 473 ; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 900 CC n. 10 ; BSK-ZGB II-BAUER (5e éd.), art. 900 CC n. 2 ; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 899 CC n. 22.

[38] ATF 112/*1986* II 433 cons. 3, JdT 1987 I 162; cf. ég. TERCIER/PICHONNAZ, Le droit des obligations, 6e éd., Zurich 2019, n. 1846.

[39] CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 899 CC n. 22.

## 1° Une réalisation privée unilatérale

**63** Les parties peuvent déroger au régime d'exécution de l'art. 906 al. 2 CC et prévoir une clause dite de réalisation privée[40]. Celle-ci permet au créancier gagiste d'exiger directement en ses propres mains le paiement des créances par le débiteur nanti et d'agir directement en son propre nom en justice[41]. Cela lui permet alors d'obtenir une exécution forcée simplifiée, puisqu'il suffit d'intenter une mesure d'exécution la créance pour une somme d'argent. C'est d'ailleurs la procédure qui a actuellement lieu devant le Tribunal de commerce de Nanterre.

**64** Le **Paragraphe I de la Garantie** prévoit une telle clause, qui dispose ceci :

> *La présente Garantie est exécutoire à la demande de COMMISIMPEX et vaudra une instruction permanente de paiement irrévocable et inconditionnelle à AGIP, AGIP Congo, Elf et ELF Congo à concurrence des sommes des marchés, avenants et travaux mentionnés ci-dessus y compris principal et intérêts, frais, accessoires, et indemnisations de tout préjudice de retard. En l'occurrence, cette garantie sera opposable à AGIP, AGIP Congo, ELF et ELF Congo ou tout garant, et COMMISIMPEX pourra l'exécuter de plein droit contre tous les biens, actions, parts ou autres droits, notamment les conventions et redevances susmentionnées dans les articles 2 et 3, revenant à R.P.C. auprès de AGIP, AGIP Congo, ELF et ELF Congo et tout Garant sans recours ou autorisation préalable. La signature de R.P.C. sur la présente vaut acceptation sans réserve et consentement définitif de l'exécution sus-indiquée de la part de COMMISIMPEX vis-à-vis de AGIP, AGIP Congo, ELF et ELF Congo et toute autre société appartenant, totalement ou partiellement, au Garant (ou aux Garants).*

**65** L'expression selon laquelle la Garantie est exécutoire à la demande de Commisimpex et vaut « *instruction permanente de paiement irrévocable et inconditionnelle* » aux sociétés du Groupe Total est la **concrétisation du droit de réalisation privée**. Non seulement, les constituants acceptent que Commisimpex puisse *à sa seule demande* provoquer le paiement en ses mains, mais ils donnent une instruction irrévocable, inconditionnelle et permanente aux débiteurs nantis de s'exécuter en mains du créancier gagiste, Commisimpex.

**66** En conséquence, **le débiteur ne peut plus payer directement à son créancier sans l'accord du créancier gagiste** lorsque celui-ci avise le débiteur engagé du gage (CC 906 II). Partant, si le débiteur engagé paie la créance à son créancier originaire alors qu'il a été

---

[40] ZK-OFTINGER/BÄR, Art. 906 CC, n. 4; STEINAUER, Droits réels III (n. 1), n. 3210c ; CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 906 CC n. 4, 16.

[41] CR CC II-DE GOTTRAU/FOËX (n. 1), Art. 906 CC n. 17; BK-ZOBL, Art. 906 CC n. 16; ZK-OFTINGER/BÄR, 906 CC, n. 37.

avisé du gage, son paiement n'est pas libératoire. Ainsi, il peut être contraint de payer une seconde fois en mains du créancier gagiste (cf. *supra* ¶64)[42].

**67**  En l'espèce, les débiteurs nantis ont été avisés à plusieurs reprises (cf. *supra* ¶ 9), dont pour la première fois à ma connaissance les 11 et 12 octobre 2011. Depuis ce moment-là, tout paiement fait au créancier originaire n'était plus libératoire sans l'accord du créancier gagiste. Cela signifie aussi que l'absence du caractère libératoire et le droit au paiement des sommes considérées existaient dès l'avis des 11 et 12 octobre 2011. S'ils avaient eu des doutes sur le droit du créancier principal ou du créancier gagiste de recevoir les montants, les débiteurs nantis auraient pu exiger un document, en l'espèce l'extrait de la Garantie qui indique clairement au Paragraphe I le droit, à la simple demande du créancier gagiste, de recevoir le paiement du débiteur engagé (« …vaudra une instruction permanente de paiement irrévocable et inconditionnelle »). Toutefois, les avis contenaient déjà expressément cette indication, de sorte qu'il n'y avait aucun doute pour les débiteurs nantis dès l'avis qui leur a été communiqué (cf. *infra* ¶ 75).

## 2° Le renforcement accru de la position du créancier gagiste

**68**  Les constituants ou le créancier originaire n'ont pas seulement renforcé la position du créancier gagiste en lui donnant un droit de réalisation privée par cette clause de mise en œuvre unilatérale en faveur du créancier gagiste. Ils ont également renforcé sa position par **trois clauses complémentaires**.

**69**  **a) La clause de gage négative.** Le paragraphe H de la Garantie (cf. *supra* ¶ 64) indique que « la R.P.C. s'engage à ne pas céder ou nantir aux tiers, de quelque manière que ce soit, les Revenus et autres droits susmentionnés (paragraphe F) ». Cette clause typique a pour but de rendre nul tout engagement ultérieur que le constituant du gage pourrait faire. En effet, conformément à l'art. 893 al. 2 CC (qui s'applique par renvoi de l'art. 899 al. 2 CC), le rang entre plusieurs créanciers-gagistes « est déterminé par la date de la constitution des gages ». Or, cela peut s'avérer un point délicat en présence de créances futures dont l'engagement pourrait être considéré comme prenant effet à la date de la naissance de la créance (même si le gage est constitué antérieurement). Pour éviter tout risque dans ce sens, et ainsi afin d'assurer au créancier gagiste qu'il aura l'entier de la garantie des créances couvertes par le gage, les Garants se sont engagés à ne pas engager une deuxième fois les mêmes créances. Cela renforce donc la position du créancier gagiste.

**70**  **b) La clause d'interdiction de modifier le contrat de base.** Le Paragraphe H précise ainsi ce qui suit :

> *La R.P.C. s'engage […] à ne pas révoquer le susdit mandat, à ne pas résilier ou modifier les instructions ou les engagements donnés relativement au paiement des Revenus et à ne pas résilier les Conventions,*

---

[42] ZK-Oftinger/Bär, Art. 906 CC, n. 24; CR CC II-De Gottrau/Foëx (n. 1), Art. 906 CC n. 12; Steinauer, Droits réels III (n. 1), n. 3210e.

*ni à les modifier de façon à diminuer directement ou indirectement les nantissements et les garanties sus-indiquées.*

71  La clause porte sur l'interdiction pour l'Etat du Congo de modifier de quelque façon que ce soit les contrats entre l'Etat du Congo et les sociétés du Groupe Total si cela devait avoir un impact négatif sur les droits et la sûreté découlant de la mise en gage des créances. Cette clause va de pair avec le paragraphe P qui souligne que toutes les autorisations ont été obtenues, afin d'assurer le créancier gagiste qu'il dispose d'une créance qu'il pourra effectivement réaliser. **Le but des parties** au contrat de gage est ainsi de créer un droit irrévocable et pour lequel le substrat des créances soit maintenu.

72  **c) La renonciation à l'immunité de juridiction et d'exécution.** Cette clause exprimée au Paragraphe O est surtout importante par rapport à la Garantie à première demande stipulée dans les 1ers paragraphes de la Garantie. Elle souligne toutefois aussi la volonté des parties de ne rien laisser au hasard, en s'assurant qu'aucune exception ou objection ne puisse faire obstacle au paiement à première demande des montants réclamés.

## 3° Un résumé du système mis en place par l'avis et l'exécution forcée

73  Le régime mis en place entre le créancier des créances mises en gage et le créancier gagiste est **soumis au droit suisse** conformément au Paragraphe P, 2ᵉ paragraphe « *La présente garantie sera régie par le droit suisse sous réserve de tout autre droit ou recours dont la COMMISIMPEX dispose, conformément au droit de toute juridiction ou les actifs de tout Garant peuvent être localisés.* ».

74  Cela signifie que la clause de « réalisation privée unilatérale » est soumise au droit suisse. Elle déroge ainsi valablement à l'art. 906 al. 2 CC. Elle a pour effet que par la seule demande (« avis ») du créancier gagiste, le débiteur nanti est tenu irrévocablement de payer au créancier gagiste. Déjà sur la base de l'art. 906 al. 2 CC, ces avis n'ont pas besoin de respecter une forme spécifique (cf. *supra* ¶ 44) ; toutefois, la Garantie elle-même ne pose aucune exigence de forme particulière pour cet avis. Il n'y a besoin ni d'indiquer un montant des créances, ni d'autres indications spécifiques, pour autant que les débiteurs nantis puissent déduire de l'avis l'existence de la mise en gage des dettes qu'il doit (cf. *supra* ¶ 44).

75  En l'espèce, les avis des 11 et 12 octobre 2011, des 7 et 10 octobre 2016, et du 26 décembre 2017, remplissent ces exigences minimales. Commisimpex a en effet signifié la Garantie à chacun de ces débiteurs, à savoir aux sociétés du Groupe TOTAL (*cf. pièces n°39 à 44).* D'une part, ces avis se réfèrent expressément à la Garantie du 22 décembre 1986 et aux créances mises en garanties. D'autre part, la signification contient également la teneur du Paragraphe I de la Garantie (cf. *supra* ¶ 64), de sorte qu'il n'y avait plus de doute possible sur le fait que le créancier originaire avait donné son accord anticipé au paiement en mains du créancier gagiste. La jurisprudence du Tribunal fédéral permettant au débiteur nanti d'exiger un document légitimant le créancier gagiste (cf. *supra* ¶ 67) était ainsi remplie par anticipation.

76    Partant, **dès l'avis** (« signification ») les débiteurs nantis ne pouvaient plus se libérer valablement en mains du créancier principale, et étaient tenus de verser les montants en mains du créancier gagiste. Au plus tard au moment de cet avis, le créancier gagiste pouvait ouvrir action afin d'obtenir le paiement en ses mains.

77    En l'absence de paiement spontané, le créancier gagiste peut dès l'avis obtenir l'exécution forcée de cette créance à l'égard des débiteurs nantis, ce qu'il fait justement devant le Tribunal de commerce de Nanterre.

# § 5 CONCLUSIONS

78 **1°** Le fait pour l'Etat du Congo de « *nanti[r] et met[tre] en garantie tous les revenus, et notamment toutes les créances, royalties, taxes, droits, etc., qu'ils soient présents, futurs ou éventuels, provenant ou à provenir, directement ou indirectement, de l'exploitation sous quelque forme que ce soit des gisements d'hydrocarbure dont le détail figure ci-après* » (Paragraphe F) doit être qualifié de « **gage sur des créances** » **au sens de l'art. 899 ss CC** (cf. supra ¶ 48 ss).

79 **2°** Le gage sur des créances **a été valablement constitué**. En effet, la spécialité de la garantie par rapport aux créances garanties est donnée (cf. *supra* ¶ 56) ; l'objet du gage est suffisamment déterminé (cf. *supra* ¶ 57) ; les créances étaient aliénables (cf. *supra* 57) et si elles devaient ne pas l'être, il faudrait considérer, en vertu de l'art. 164 al. 2 CO, qu'il n'est pas possible d'opposer l'inaliénabilité au créancier gagiste (cf. *supra* ¶ 57). Même le recours à l'art. 19 LDIP ne serait d'aucune utilité, compte tenu du comportement contradictoire du Congo (cf. *su supra* ¶ 58). Enfin, la forme écrite est elle aussi respectée (cf. *supra* ¶ 60).

80 **3° La réalisation privée de la garantie** se fait par une réalisation unilatérale du gage en dérogation à l'art. 906 al. 2 CC, auquel les parties peuvent valablement déroger (droit dispositif, cf. *supra* ¶ 63). En vertu de cette clause, le créancier-gagiste peut aussi agir directement en justice contre les débiteurs nantis. C'est ce qu'ont prévues les constituants au Paragraphe I (cf. *supra* ¶ 64), en stipulant un droit irrévocable et inconditionnel pour Commisimpex à obtenir le paiement directement des débiteurs nantis, sans passer par une quelconque formalité (cf. *supra* ¶ 65). Ainsi, Commisimpex peut faire valoir la clause de réalisation privée fondée sur le droit suisse devant un juge français, puisque cette clause permet au créancier gagiste d'agir en exécution forcée de la créance dans une procédure tout à fait ordinaire (cf. *supra* ¶ 75).

81 **4° Les clauses complémentaires** (clause de gage négative [cf. *supra* ¶ 69], clause de non-modification du rapport de base [cf. *supra* ¶ 70], clause d'immunité de juridiction et d'exécution [cf. *supra* ¶ 72]) renforcent l'idée que le constituant du gage a tout entrepris pour assurer que le paiement devrait être fait au créancier gagiste à sa première demande, en d'autres termes, que la Garantie soit « exécutoire et à la demande de COMMISIMPEX » (Paragraphe I *in initio*). C'est aussi la raison pour laquelle le constituant a prévu que la Garantie vaut « instruction permanente de paiement irrévocable et inconditionnelle » (Paragraphe I) aux sociétés du Groupe Total et que la Garantie « serait opposable » (Paragraphe I) aux sociétés du Groupe Total (cf. *supra* ¶ 64).

82 **Le paiement est ainsi exécutoire**, compte tenu du fait que le créancier gagiste en a fait la demande et que l'instruction permanente, irrévocable et inconditionnelle, faite aux débiteurs de payer souligne que les débiteurs nantis ont renoncé à d'éventuelles exceptions au préalable ou au moins au moment de l'avis de la Garantie. La procédure conduit ainsi à

l'exécution forcées à l'encontre des débiteurs nantis des créances mises en gage selon la procédure française en cours.

Fribourg, le 20 août 2020

Prof. Pascal Pichonnaz

# ANNEXE – LES DISPOSITIONS LÉGALES CITÉES

## I.    CODE CIVIL SUISSE

### Art. 2 B. étendue des droits civils / I. Devoirs généraux

[1] Chacun est tenu d'exercer ses droits et d'exécuter ses obligations selon les règles de la bonne foi.

[2] L'abus manifeste d'un droit n'est pas protégé par la loi.

### Art. 27 B. Protection de la personnalité / I. Contre des engagements excessifs

[1] Nul ne peut, même partiellement, renoncer à la jouissance ou à l'exercice des droits civils.

[2] Nul ne peut aliéner sa liberté, ni s'en interdire l'usage dans une mesure contraire aux lois ou aux moeurs.

### Art. 887 A. Nantissement / I. Constitution / 4. Engagement par le créancier

Le créancier ne peut engager la chose dont il est nanti qu'avec le consentement de celui dont il la tient.

### Art. 891 A. Nantissement / III. Effets / 1. Droits du créancier

[1] Le créancier qui n'est pas désintéressé a le droit de se payer sur le prix provenant de la réalisation du gage.

[2] Le nantissement garantit au créancier le capital, les intérêts conventionnels, les frais de poursuite et les intérêts moratoires.

### Art. 892 A. Nantissement / III. Effets / 2. Étendue du gage

[1] Le gage grève la chose et ses accessoires.

[2] Sauf convention contraire, le créancier rend les fruits naturels de la chose au débiteur dès qu'ils ont cessé d'en faire partie intégrante.

[3] Le gage s'étend aux fruits qui, lors de la réalisation, font partie intégrante de la chose.

### Art. 894 A. Nantissement / III. Effets / 4. Pacte commissoire

Est nulle toute clause qui autoriserait le créancier à s'approprier le gage faute de paiement.

### Chapitre II: Du gage sur les créances et autres droits

### Art. 899 A. En général

[1] Les créances et autres droits aliénables peuvent être constitués en gage.

[2] Sauf disposition contraire, les règles du nantissement sont applicables.

### Art. 900 B. Constitution / I. Créances ordinaires

[1] L'engagement des créances qui ne sont pas constatées par un titre ou ne résultent que d'une reconnaissance de dette, a lieu par écrit et en outre, dans le dernier cas, par la remise du titre.

[2] Le créancier et le constituant peuvent donner avis de l'engagement au tiers débiteur.

[3] L'engagement des autres droits s'opère par écrit, en observant les formes établies pour leur transfert.

### Art. 901 B. Constitution / II. Papiers-valeurs

[1] L'engagement des titres au porteur s'opère par leur seule remise au créancier gagiste.

[2] L'engagement d'autres papiers-valeurs ne peut avoir lieu que par la remise du titre muni d'un endossement ou d'une cession.

[3] L'engagement des titres intermédiés est régi exclusivement par la loi du 3 octobre 2008 sur les titres intermédiés[1],[2]

### Art. 902 B. Constitution / III. Titres représentatifs de marchandises et warrants

[1] Le nantissement des papiers-valeurs qui représentent des marchandises emporte droit de gage sur celles-ci.

[2] Lorsqu'un titre de gage spécial (warrant) a été créé indépendamment du titre qui représente les marchandises, l'engagement du warrant équivaut au nantissement de celles-ci, pourvu qu'il en soit fait mention sur le titre principal avec indication de la somme garantie et de l'échéance.

### Art. 903 B. Constitution / IV. Engagement subséquent de la créance

L'engagement subséquent d'une créance déjà grevée d'un droit de gage n'est valable que si le propriétaire de la créance ou le nouveau créancier gagiste en avise par écrit le créancier gagiste antérieur.

### Art. 904 C. Effets / I. Étendue du droit du créancier

[1] Le gage constitué sur des créances produisant des intérêts ou d'autres revenus périodiques, tels que des dividendes, ne s'étend, sauf convention contraire, qu'aux prestations courantes, à l'exclusion de celles qui sont échues antérieurement.

[2] Lorsque ces prestations accessoires sont représentées par des titres particuliers, elles ne sont comprises dans le gage, sauf stipulation contraire, que si elles ont été engagées elles-mêmes conformément à la loi.

### Art. 905 C. Effets / II. Représentation d'actions et de parts sociales d'une société à responsabilité limitée données en gage

[1] Les actions données en gage sont représentées dans l'assemblée générale de la société par l'actionnaire lui-même et non par le créancier gagiste.

[2] Les parts sociales d'une société à responsabilité limitée données en gage sont représentées dans l'assemblée des associés par l'associé lui-même et non par le créancier gagiste.

### Art. 906 C. Effets / III. Administration et remboursement

[1] Le propriétaire de la créance engagée peut la dénoncer ou en opérer le recouvrement et le créancier gagiste a le droit de l'y contraindre, si ces mesures sont commandées par l'intérêt d'une bonne gestion.

[2] Le débiteur, avisé du gage, ne peut s'acquitter entre les mains du propriétaire ou du créancier gagiste qu'avec le consentement de l'autre intéressé.

[3] À défaut de ce consentement, il doit consigner.

# II.   CODE DES OBLIGATIONS

### Art. 13 B. Forme des contrats / II. Forme écrite / 1. Forme requise par la loi / b. Ses éléments

[1] Le contrat pour lequel la loi exige la forme écrite doit être signé par toutes les personnes auxquelles il impose des obligations.

### Art. 18 D. Interprétation des contrats; simulation

[1] Pour apprécier la forme et les clauses d'un contrat, il y a lieu de rechercher la réelle et commune intention des parties, sans s'arrêter aux expressions ou dénominations inexactes dont elles ont pu se servir, soit par erreur, soit pour déguiser la nature véritable de la convention.

[2] Le débiteur ne peut opposer l'exception de simulation au tiers qui est devenu créancier sur la foi d'une reconnaissance écrite de la dette.

### Art. 82 C. Époque de l'exécution / VI. Dans les contrats bilatéraux / 1. Mode de l'exécution

Celui qui poursuit l'exécution d'un contrat bilatéral doit avoir exécuté ou offrir d'exécuter sa propre obligation, à moins qu'il ne soit au bénéfice d'un terme d'après les clauses ou la nature du contrat.

### Art. 114 A. Extinction des accessoires de l'obligation

[1] Lorsque l'obligation principale s'éteint par le paiement ou d'une autre manière, les cautionnements, gages et autres droits accessoires s'éteignent également.

[2] Les intérêts courus antérieurement ne peuvent plus être réclamés que si ce droit a été stipulé ou résulte des circonstances.

[3] Sont réservées les dispositions spéciales sur le gage immobilier, les papiers-valeurs et le concordat.

### Art. 120 F. Compensation / I. Conditions / 1. En général

[1] Lorsque deux personnes sont débitrices l'une envers l'autre de sommes d'argent ou d'autres prestations de même espèce, chacune des parties peut compenser sa dette avec sa créance, si les deux dettes sont exigibles.

[2] Le débiteur peut opposer la compensation même si sa créance est contestée.

[3] La compensation d'une créance prescrite peut être invoquée, si la créance n'était pas éteinte par la prescription au moment où elle pouvait être compensée.

### Art. 127 G. Prescription / I. Délais / 1. Dix ans

Toutes les actions se prescrivent par dix ans, lorsque le droit civil fédéral n'en dispose pas autrement.

### Art. 164 A. Cession des créances / I. Conditions / 1. Cession volontaire / a. Admissibilité

[1] Le créancier peut céder son droit à un tiers sans le consentement du débiteur, à moins que la cession n'en soit interdite par la loi, la convention ou la nature de l'affaire.

[2] Le débiteur ne peut exciper de ce que la créance avait été stipulée incessible, si le tiers est devenu créancier sur la foi d'une reconnaissance écrite ne mentionnant pas l'incessibilité.

23

**Art. 169 A. Cession des créances / II. Effets de la cession / 1. Situation du débiteur cédé / c. Exceptions du débiteur cédé**

[1] Le débiteur peut opposer au cessionnaire, comme il aurait pu les opposer au cédant, les exceptions qui lui appartenaient au moment où il a eu connaissance de la cession.

[2] S'il possédait contre le cédant une créance non encore exigible à cette époque, il peut invoquer la compensation, pourvu que sa créance ne soit pas devenue exigible postérieurement à la créance cédée.

# III.    LOI SUR LE DROIT INTERNATIONAL PRIVÉ

**Art. 19 VII. Prise en considération de dispositions impératives du droit étranger**

[1] Lorsque des intérêts légitimes et manifestement prépondérants au regard de la conception suisse du droit l'exigent, une disposition impérative d'un droit autre que celui désigné par la présente loi peut être prise en considération, si la situation visée présente un lien étroit avec ce droit.

[2] Pour juger si une telle disposition doit être prise en considération, on tiendra compte du but qu'elle vise et des conséquences qu'aurait son application pour arriver à une décision adéquate au regard de la conception suisse du droit.