Exhibit 17

# Analysis of the PWC report relating to litigation between Commissions Import Export and TotalEnergies SE, TotalEnergies E&P Congo and TotalEnergies Holding SAS

## September 2021

Cabinet Didier Kling Expertise & Conseil
28 Avenue Hoche
75008 Paris

# Summary

1.    Introduction.......................................................... ................... ..................................................................... 2
1.1  Context.......... ..... ..... ..... ...  ............. ..... .......... ..... ....... ..... ... ..... .. 3
1.2  Assignment.......................................................................... 2
1.3  Presentation of the Expertise of the Didier Kling Firm to author this report.......................................3
1.4  Due Diligence and Reservations......... ........... ........... ........... ........ ........... .......... .......... .. 3
1.5  Glossary.......... ..........  ........... ........... ........ ......... ........... .......... .......... .. 4
1.6  Plan........................ ..... ..... ..... .....  ....... ..... ........ ..... ........ ........ 4

2.    Summary of events                           ..  ........................ ......................... 5
2.1  The contracts and amendments concluded between COMMISIMPEX and the Republic of Congo .............5
2.2  The Guarantee ..........................................................................................7
2.3  The detailed calculation sheet ..........................................................................8
2.4  The Protocol of 1992                         .,... ,.......... ,,,......................................... 9
2.5  The 2000 ruling ...................................................................................... 10
2.5.2  The *ruling of December 3, 2000*............................................................................ 13
2.6  Ernst & Young's expert report dated September 25, 2001 ................................................ 13
2.7  The 2003 Protocol.......................................................................................15
2.8  The 2013 Award...................................................................................... 16

3.    Determination of the amount that would have been owed by the Republic of Congo to COMMISIMPEX under the contracts covered by the Guarantee on the basis of the Calculation Sheet as of December 31, 2013.
                              ...                             ..                             .            17

31   Presentation of the calculation elements used ......................................................17
3.2  Presentation of the results of the calculations ...................................................18
3.3  Analysis of discrepancies with the conclusions of the 2019 Mazars Report .............................19

4    Analysis of the conclusions of the PWC Report                                      ............ 21
4.1  On the conclusion of the PWC Report according to which the RICOL Report considered only 7 of the 11 contracts in the Guarantee were certain to have been performed ................................21
4.2  On the conclusion of the PWC Report that the 2000 Award relates only to Contracts covered by the Guarantee up to the amounts awarded in FRF, GBP, and USD .... .... .,,,,.............................................22
4.3  On the conclusion of the PWC Report that the 2013 Award relates exclusively to the second part of the Republic of Congo's debt to COMMISIMPEX referred to in the 2003 Protocol in the amount of FRF 520 million (or FCFA 26 billion), which is unrelated to the contracts covered by the Guarantee.. .. .. ....... .. .. ...... 24

5    Analysis of the analysis of the independence of PWC with regard to the parties to this dispute. .  27

Conclusion ......................................................................................................... 29

# i.   Preliminary remarks

## 1.1   Background

The company Commissions Import Export (hereinafter "**COMMISIMPEX**") entered into various public works contracts and amendments with the Republic of Congo during the period from 1984 to 1986.

On December 22, 1986, in order to enable COMMISIMPEX to secure the necessary financing for the performance and execution of these contracts and amendments, the Republic of Congo granted a payment guarantee (hereinafter, the "**Guarantee**") under which it pledged various oil revenues from fields operated, in particular, by subsidiaries of the Total Group.

COMMISIMPEX and the Republic of Congo entered into agreements to arrange for the settlement of the Republic of Congo's debt to COMMISIMPEX of, respectively, October 14, 1992 (hereinafter referred to as "**Protocol No. 566**" or the "**1999 Protocol**") and August 23, 2003 (hereinafter referred to as "**Protocol No. 706**" or the "**1993 Protocol**").

COMMISIMPEX initiated arbitration proceedings following the Republic of Congo's failure to comply with the 1992 Protocol and the 2003 Protocol. Each of these proceedings resulted in judgments against the Republic of Congo (hereinafter, the "**Judgments**") in 2003 ( hereinafter, the "2003 Award") and in 2013 (hereinafter, the "2013 Award"), respectively.

Having failed to obtain payment of the Awards from the Republic of Congo, COMMISIMPEX sued TotalEnergies SE (formerly Total SE), TotalEnergies E&;P Congo (formerly TotalEnergies E&P Congo) and TotalEnergies Holding SAS (formerly Total Holding SAS, hereinafter jointly referred to as the "**Total Group**" or "**Total**")

As part of this procedure, the Total Group produced a report by PWC (hereinafter, the "**PWC Report**").

## 1.2   Assignment

The purpose of this report is to present the conclusions of the assignment entrusted to us by COMMISIMPEX in connection with its dispute with the Total Group, which consists of:

- Determine the amount that would have been owed by the Republic of Congo to COMMISIMPEX under the contracts covered by the Guarantee on the basis of the detailed calculation sheet provided by the Congolese Amortization Fund (hereinafter, the "CCA") and the Ministry of Finance to the Public Prosecutor, the Attorney General, and the Ministry of Justice in September 2017 (hereinafter, the "**Calculation Sheet**") as of March 31, 2019, taking into account that (i) this sheet determined the debt of the Republic of Congo as of December 31, 1986, and (ii) the rate interest rate indicated in the Guarantee amounted to 10.5%;

- Provide an explanation for the discrepancy between the amount thus calculated and the amount indicated in the Mazars report dated March 9 (hereinafter, the "**Mazars Report**");

- Give our opinion on the conclusions of the PWC Report;

- Give our opinion on the independence of PWC with regard to the parties to this dispute;

- Give our opinion on the lack of reference to the Guarantee in the calculations made in the Mazars 2019 Report.

## 1.3 Presentation of Didier Kling Expertise & Conseil and the authors of this report

Didier Kling Expertise & Conseil (hereinafter referred to as "Cabinet Kling") draws on its wide-ranging expertise in economics, accounting, and finance to address the complex issues faced by its clients, who require independent advice in the context of valuations, litigation, or audits.

Didier Kling, president of the Kling firm, is President of the Paris Ile-de-France Chamber of Commerce, former President of the Compagnie Nationale des Commissaires aux Comptes (National Association of Statutory Auditors), and an honorary judicial expert registered with the Paris Court of Appeal and approved by the Court of Cassation.

Teddy Guerineau is a partner at Kling. He is a graduate of Paris Dauphine University and a former lecturer in the Master 225 Corporate Finance and Financial Engineering program. He is a member of the steering committee of the Association Professionnelle des Experts Indépendants (APEI). He has over twenty years of experience in consulting and financial expertise.

## 1.4 Due diligence and reservations

In order to carry out our assignment, we have used the economic, legal, accounting, and financial documents and information provided to us by COMMISIMPEX and its advisors:

the 2000 ruling, the 2013 ruling, and the partial ruling of August 20, 2010;

- the report by Mr. René RICOL dated April 14, 2000 (hereinafter, the "**RICOL Report''**);

- the Ernst & Young report dated September 25, 2001 (hereinafter, the "**EY Report**");

  the PWC Report;

- the Mazars 2019 Report and the Mazars report dated August 2, 2011;

- the letter from Archipel Law dated April 16, 2021, concerning the sums recovered by COMMISIMPEX through the enforcement of arbitral awards;

- the Calculation Sheet;

- the Guarantee;

  the 1992 Protocol and the 2003 Protocol;

- The minutes of February 13, 1988, of the interministerial commission responsible for reviewing the situation with COMMISIMPEX, operator of the Etoumbi-Kunda project (hereinafter referred to as the "**Minutes on the Etoumbi-Kunda project**").

The information on which this report is based was obtained from sources believed to be reliable. Therefore, no verification of this information has been carried out.

This report may not be used for any purpose other than that described in paragraph i.i.

## 1.5   Glossary

AFT: certificate of satisfactory completion of works

BAO: promissory notes

FCFA: CFA franc

FRF: French franc

GBP: pound sterling

USD: USD

## 1.6 Plan

After reviewing the facts (a.), we will examine the following points in turn:

- the amount that would have been owed by the Republic of Congo to COMMISIMPEX under the contracts covered by the Guarantee on the basis of the Calculation Sheet as of March 3, 2009 (3.1 and 3.2);

- the analysis of the differences between the amount thus calculated and the amount indicated in the Mazars Report
2019 (3.3);

- the analysis of the conclusions of the PWC Report (4);

- analysis of the independence of PWC from the parties to this dispute (5.).

The report is supplemented by a single appendix corresponding to the calculation of the amount that would have been owed by the Republic of Congo to COMMISIMPEX for the contracts covered by the Guarantee on the basis of the Calculation Sheet dated March 3, 2019.

# 2.      Summary of the facts

## 2.1      The contracts and amendments concluded between COMMISIMPEX and the Republic of Congo

The Republic of Congo's debt to COMMISIMPEX results from the performance of public works contracts and the supply of equipment, the list of which, drawn up in the RICOL' Report and validated in the 2000 Award (hereinafter the "Contracts"), is presented in the following figure:

**Figure 1. List of contracts and amendments giving rise to the Republic of Congo's debt to COMMISIMPEX**

| Designation | Market date | Date AFT | Currency | |
|---|---|---|---|---|
| Addendum No. 1 No. 107/84 to contract 353/83 | 04/05/84 | 07/02/88 | GBP | 5,638,000 |
| Addendum No. 1 No. 107/84/AV - balance | | | FCFA | 1,486,441,948 |
| Addendum No. 3 No. 127/84 to contract 353/83 | 05/05/84 | 07/02/88 | GBP | 8,457,000 |
| Contract No. 83/85/AO | 06/24/85 | 09/25/86 | USD | 5,450,534 |
| Contract No. 009/86/G | 02/12/86 | 09/30/86 | FRF | 14,812,000 |
| Contract No. 015/86/G | 03/24/86 | 09/25/86 | FRF | 1 8,868,500 |
| Addendum No. 4 No. 54/86 to contract 353/83 | 07/08/86 | NA | GBP | 2,751,344 |
| Contract 53/86 | 07/01/86 | 10/02/86 | FCFA | 1,204,934,500 |
| Addendum No. 1 No. 55/86 to contract 15/86 | 07/08/86 | 09/25/86 | FCFA | 230,914,400 |
| Addendum No. 5 No. 57/86 to contract 353/83 | 07/08/86 | NA | GBP | 7,889,357 |
| Addendum No. 1 No. 56/86 to contract 83/85 | 07/08/86 | 09/25/86 | FCFA | 377,456,228 |
| Guarantee No. corp 5166-85 | 06/27/87 | NA | GBP | 12,818,000 |
| March 185/84 | 06/25/04 | 07/01/87 | GBP | 8,653,000 |
| | | | | |
| Total | | | FRF | 33,680,500 |
| Total | | | GBP | 46,206,701 |
| Total | | | USD | 5,450,534 |
| Total | | | FCFA | 3,299,747,076 |

NB:
AFT: certificate of satisfactory completion of work
NA: not applicable

**The Contracts represented a total Amount of 572,205,082 as of the date they concluded** — this amount therefore does not take interest into account — based on the exchange rates at the end of 1686.

---

1  Source: RICOL Report, pages 16, 18, and 26.
2  Source: 2000 Award, pages 37 and 38. More specifically, page 37 of the 2000 Award states that "*The expert %COL} was therefore right to use the following contracts (page p6 of the report) to determine the claims* between *the parties.*"

   The list of these contracts and amendments is also cited in footnote 1 of the 2013 Award.
3  Source: 2000 Award, page 38.

The Republic of Congo financed these contracts and amendments through loans granted by COMMISIMPEX in the form of promissory notes (hereinafter "**BAO**") of two types:

- series P promissory notes corresponding to the payment of the principal amount of the Contracts;

- Series I promissory notes corresponding to interest payments between the date of conclusion of the Contracts and the maturity date of the Series P promissory notes.

Figure 2 details the amount of BAOs issued in consideration for the Contracts as determined in the RICOL4 Report.

**Figure a. BAOs issued by the Republic of Congo in consideration for the Contracts**

| Designation | Date Market | Currency | Amount BAO 1₁' - P | BAO T    e I |
|---|---|---|---|---|
| Addendum No. 1 No. 107/84 to contract 353/83 | 04/05/84 | GBP | 5,638,000 | 845,700 |
| Addendum No. 1 No. 107/84/AV - balance | | | | |
| Addendum No. 3 No. 127/84 to contract 353/83 | 05/05/84 | GBP | 8 457 000 | 1 735 970 |
| Contract No. 83/85/AO | 06/24/85 | FRF | 51 780 076 | 6 472 510 |
| Contract No. 009/86/G | 02/12/86 | FRF | 14 812 000 | 2 468 677 |
| Contract No. 015/86/G | 03/24 | FRF | 18 868 500 | 3 900 890 |
| Addendum No. 4 No. 54/86 to contract 353/83 | 07/08/86 | USD | 4 182 043 | 470 480 |
| Contract 53/86 | 07/01/86 | USD | 3 492 564 | 427 838 |
| Addendum No. 1 No. 55/86 to contract 15/86 | 07/08/86 | USD | 669 317 | 19 447 |
| Addendum No. 5 No. 57/86 to contract 353/83 | 07/08/86 | USD | 11 991 826 | 1 678 856 |
| Addendum No. 1 No. 56/86 to contract 83/85 | 07/08/86 | USD | 1 094 076 | 87 526 |
| Guarantee No. corp 5166-85 | 06/27 | GBP | 12 818 000 | 3 749 262 |
| Contract 185/84 | 06/25 | GBP | 8 652 000 | 1 816 920 |
| | | | | |
| Total | | FRF | 85 460 576 | 12 842 077 |
| Total | | GBP | 35 565 000 | 8 147 852 |
| Total | | USD | 21 429 826 | 2 684 147 |
| Total | | FCFA | | |

Several clarifications can be made regarding the terms of payment for Contracts:

The balance of CFAF 1,486,441,948 relating to amendment no. 1 to contract no. 107/84 corresponds to the difference, as at **December 31, 1987,** between the total amount of work carried out under amendment no. 1 to contract no. 107/84 and the total amount of BAOs issued under amendments no. 1 to contract no. 107/84 and no. 3 to contract no. 127/84.

This balance did not therefore give rise to the issuance of BAOs.

---

4    Source: RICOL report, pages 28 to 43.
   Sources:
   -   RICOL report, page 21, paragraph 3·23
   -   2000 ruling, page 36.
   -   Minutes on the Etoumbi-Kunda project, page 8.

- The terms of payment for guarantee no. corp 5166-85 were defined in protocol 461 signed on June 26, 1987.

- The BAOs relating to contract no. 185/84 were discounted by COMMISIMPEX with Equator Bank.

## 2.2 Guarantee

On December 22, 1986, the Republic of Congo granted a payment guarantee to COMMISIMPEX to enable it to secure the necessary financing for the completion and execution of the Contracts.

Article 1 of the Guarantee sets out the list of public works and supply contracts equipment covered by it (hereinafter, the "**Contracts covered by the Guarantee**") and their amounts.

Figure 3 compares the list of Contracts (see Figure i) with the list of Contracts covered by the Guarantee, specifying the amount and currency for which they are mentioned in the Guarantee.

**Figure 3. Comparison of the list of Contracts covered by the Guarantee and the list of Contracts**

| Designation | Date of market | Covered by the Guarantee | Currency | Amount |
|---|---|---|---|---|
| Addendum No. 1 No. 107/84 to contract 353/83 | 04/05/84 | Yes | GBP | 5,638,000 |
| Addendum No. 1 No. 107/84/AV - balance | | No | | |
| Addendum No. 3 No. 127/84 to contract 353/83 | 05/05/84 | Yes | GBP | 8,457,000 |
| Contract No. 83/85/AO | 06/24/85 | Yes | FRF | 51,780,076 |
| Contract No. 009/86/G | 02/12/86 | Yes | FRF | 14,812,000 |
| Contract No. 0l5/86/G | 03/24/86 | Yes | FRF | 18,868,500 |
| Addendum No. 4 No. 54/86 to contract 353/83 | 07/08/86 | Yes | GBP | 2,751,344 |
| Contract 53/86 | 07/01/86 | Yes | USD | 3,492,564 |
| Addendum No. 1 No. 55/86 to contract 15/86 | 07/08/86 | Yes | FRF | 4,618,288 |
| Addendum No. 5 No. 57/86 to contract 353/83 | 07/08/86 | Yes | GBP | 7,889,357 |
| Addendum No. 1 No. 56/86 to contract 83/85 | 07/08/86 | Yes | FRF | 7549124 |
| Guarantee no. corp 5166-85 | 03/20/85 | Yes | GBP | 12,818,000 |
| Contract 185/84 | | No | | |
| | | | | |
| Total | | | FRF | 97,627,988 |
| Total | | | GBP | 37,553,701 |
| Total | | | USD | 3,492,564 |
| Total | | | FCFA | |

---

6    Source: RICOL report, page 40

7    Source: Ernst & Young expert report dated September 25, 2001

8    It can be seen that the currency in which the Guarantee is denominated is different from the currency of the BAOs for four contracts. The currency of the BAOs is the dollar (USD) in these four cases, while the Guarantee mentions the pound sterling (GBP) in two cases and the French franc (FRF) in the other two cases.

**It can be seen that the Guarantee covered all Contracts except No.** 185/84, for which the promissory notes had been discounted with Equator Bank.

Articles B and C of the Guarantee define the nature of the payment guarantee granted by the Republic of Congo in the following terms:

*"The Guarantors hereby undertake, unconditionally and irrevocably, to* guarantee to **COMMISIMPEX** *the payment of the full amounts of the contracts and works and supplies awarded to* **COMMISIMPEX,** *the details of which are set out above."*

*"Each guarantor shall only be released upon payment of all sums due to* **COMMISIMPEX** in respect *of the works,* services *and supplies contracts,* including interest, *late payment interest, penalties and incidental costs related to the contracts detailed above."*

Article D stipulates the interest rate applicable in the event of late payment of Contracts:

*"The Guarantors irrevocably and permanently undertake to pay late payment interest at a rate of 10%, revalued annually, which* shall begin *to accrue within the time limits stipulated in* the 'conditions' concerning *interest and late payment* interest, as set out *in the various works contracts, addenda and provisions, the details of which are set out above, until such time as they have been paid in full."*

## 2.3  The detailed calculation sheet

The Calculation Sheet is a document drawn up in September 1991, which was communicated by the CCA and the Ministry of Finance of the Republic of Congo to the Public Prosecutor, the Attorney General, and the Ministry of Justice of the Republic of Congo.

It determines that the Republic of Congo's debt to **COMMISIMPEX** amounts to a total of CFAF 29,949,284.818 as of December 31, 1986.

This amount is calculated taking into account **exclusively the contracts covered by the guarantee** based on their initial amount and taking into account interest calculated at a rate of 10.5% between the date of their conclusion and December 3, 1986.

Figure 4 details the amount of the debt determined in the calculation sheet.

---

9   That is, the Ministry of Finance and Budget of the Republic of Congo and the Congolese Amortization Fund.

10  The CCA is a public financial institution created by Ordinance No. 30/71 of 6/12/1971 which, among other responsibilities, contracts loans on behalf of the Republic of Congo and manages the Congolese public debt.

11  This amount corresponds either to that indicated in the Guarantee or to that indicated in the list of Contracts established in the RICOL Report (see Figure 1).

Figure 4- Debt of the Republic of Congo to COMMISIMPEX as determined in the calculation
sheet

| | Currency | Visé ¡tar la Ca i-a ntie | Amount |
|---|---|---|---|
| Addendum No. 1 No. l07/84 to contract 353/83 | GBP | Yes | 5,638,000 |
| Addendum No. 3 No. 127/84 to contract 353/83 | GBP | Yes | 8,457,000 |
| Contract No. 83/85/AO | FRF | Yes | 51,780,076 |
| Contract No. 009/86/G | FRF | Yes | 14,812,000 |
| Contract No. 0l5/86/G | FRF | Yes | 18,868,500 |
| Addendum No. 4 No. 54/86 to contract 353/83 | GBP | Yes | 2,751,344 |
| Contract 53/86 | FCFA | Yes | 1,204,934,500 |
| Addendum No. 1 No. 55/86 to contract 15/86 | FCFA | Yes | 230,914,400 |
| Amendment No. 5 No. 57/86 to contract 353/83 | GBP | Yes | 7,889,357 |
| Addendum No. 1 No. 56/86 to Contract 83/85 | FCFA | Yes | 377,456,228 |
| Guarantee No. corp 5166-85 | GBP | Yes | 12,818,000 |
| **Principal** | | | |
| Total | FRF | | 85,460,576 |
| Total | GBP | | 37,553,701 |
| Total | USD | | |
| Total | FCFA | | 1,813,305,128 |
| **Interest** | | | |
| Total | FRF | | 10,949,662 |
| Total | GBP | | 6,891,634 |
| Total | USD | | |
| Total | FCFA | | 79,233,629 |
| Principal + **interest** | | | |
| Total | FRF | | 96,410,238 |
| l"ntal | GBP | | 44,445,335 |
| "Fotal | USD | | |
| Tantalum | FCFA | | 1·892,538·757'2 |

## 2-4 The Protocol of 1992;

Protocol No. 566, signed on October 14, 2002, by the Republic of Congo and COMMISIMPEX, aims to
organize the terms for settling the Republic of Congo's debts to COMMISIMPEX, which have been set at
the following amounts (see Article I):

- 50,592,081.53 FRF;

- 21,201,872.76 GBP;

- 34,521,293.24 USD;

- 1,426,623,81 CFA francs.

The 1992 Protocol provides in particular:

---

[12] It should be noted that there is a discrepancy of **55,**000 CFA francs with the details given in the file.

- payment in 120 equal and successive monthly installments, the first due on due on January 30, 1993 (Article 2);

- an interest rate of 10%, calculated on the exact number of days elapsed, on the basis of months of 30 days and a year of 360 days (Article 3)

- an interest rate of 1.5% applicable to monthly installments that are due and unpaid (Article 4)

The amounts due under the 1992 Protocol were evidenced by promissory notes denominated in their original currency (Article 6).

Its implementation provided for COMMISSIMPEX to hand over to the Republic of Congo the BAOs subscribed by the CCA under the Contracts (Article 7).

## 2.5 The 2000 Award

On March 3, 1998, COMMISIMPEX initiated arbitration proceedings against the Republic of Congo, arguing that the latter had failed to comply with the commitments it had made under the Protocol of 1992.

COMMISIMPEX obtained a favorable award on December 3, 2000 *(    )*, with the arbitral tribunal basing its decision on a report prepared by Mr. René RICOL dated April 14, 2000, analyzing certain aspects of the dispute *(&lt;5.1)*.

### 2.5.1 The RICOL Report of April 14 2000

**a- The mission entrusted to Mr. Rene IŁICOL**

In its interim award of June 28, 1999, the arbitral tribunal decided to appoint Mr. René **RICOL,** in particular to:

- *"provide technical advice to enable the Tribunal to determine, in the appropriate currencies, the exact, total, and updated amount of the claims between, on the one hand, COMMISIMPEX and, on the other hand, the REPUBLIC OF CONGO and the CONGOLESE DEBT REDUCTION FUND D'AMORTISSEMENT as of October 1, 1992, taking into account Protocol No. 566 of October 14, 1992 and the discount it incorporated."*

- rule on the following allegations by the Republic of Congo:

    *"several of the contracts and amendments that gave rise to the claims by COMMISIMPEX referred to in Protocol No. 566 were not performed, were not fully performed, or were poorly performed";*

    *"Some of these contracts are meaningless (identical to each other)."*

    *"COMMISIMPEX was allegedly paid several times for the same contracts or the same claims by the REPUBLIC OF CONGO."*

**b- The conclusions of the RICOL Report**

Firstly, the RICOL Report conducted a survey of the contracts that gave rise to the Republic of Congo's debt to COMMISIMPEX, which are listed in Figure i.

**Secondly, the RICOL Report analyzed the Republic of Congo's allegations concerning the contracts, which it rejected in their entirety.**

More specifically:

- With regard to allegations of non-performance, partial performance, or poor performance, the contracts subject to dispute were as follows: (addendum no. 5 to contract no. 57/86, addendum no. 1 to contract 107/84, addendum 3 to contract 127/84, Guarantee No. corp 5166-8s, which gave rise to Protocol No. 46i, and contract No. 185/84).

  The RICOL Report concludes that "**they were***, **however, rejected by the expert in the absence of evidence produced** by **the defendants**, the Republic of Congo and the CCA]* [3] (emphasis added).

- Regarding the allegations of identical work, the RICOL Report states that "**the materials in the file do not allow us to verify the allegations of the defendants**" (emphasis added).

- Regarding the allegations of double payment, the RICOL Report notes that "*Yes, the defendants have not provided evidence* to support *their allegations regarding the documents relating* to payments" (emphasis added).

**The 2000** ruling **confirmed** these **conclusions of the RICOL report**, stating that "*the allegations relating to the contracts themselves (partial or defective performance, duplication of work, etc.) cannot be upheld, not only because* none *of them have been proven by the defendants, but also because* a *detailed analysis does not allow* them *to be considered plausible*"[6] (emphasis added) and that "it is *therefore* right and proper" [7] that all the contracts be taken into account in determining the Republic of Congo's debt to COMMISIMPEX.

Thirdly, the **RICOL Report established the amount of the Republic of Congo's debts** to **COMMISIMPEX that it considers** to be **certain and undisputed,** based on the BAOs for which proof of repayment was provided in a letter from COMMISIMPEX dated November 24, [1992].

The amount of these debts was broken down as follows: 17,216,381 FRF, 15,521,332 GBP, USD 18,798,738 and FCFA 1,486,441,948 (see Figure 5 on the following page) on a "non-discounted" basis, according to the expression used in the report (i.e., before taking into account interest related to late payments).

They relate exclusively to **contracts covered** by the Guarantee.

---

[13] See RICOL Report, page 5.

[14] Ibid.

[15] Ibid.

[16] See 2000 ruling, page 37.

[17] Ibid.

[18] See RICOL report, page 5.

[19] For the record, the amount of 1,486,441,948 CFA francs corresponds to the balance owed to COMMISIMPEX, determined by the difference between the total amount of work carried out under amendment no. i to contract no. 107/84 and the total amount of BAOs issued under amendments No. 1 to contract No. 107/84 and No. 3 to contract No. 127/84 (see RICOL Report, page 21, paragraph 3.23 and Award 2000, page 39, footnote on page 14).

It should be noted that if these certain and undisputed debts do not cover all of the contracts covered by the guarantee, it is because COMMISIMPEX has not provided proof that it has returned the corresponding BAOs, and not because these contracts have not been performed.

Figure 5. **Secure and undisputed debts of the Republic of Congo to COMMISIMPEX according to the RICOL Report**

| Désignation | Mentionné Garantie | Devise | Principal | Montant Intérêts | Total |
|---|---|---|---|---|---|
| Avenant n°1 n°107/84 du marché 353/83 | Oui | | | | |
| Avenant n°1 n°107/84/AV - solde | Non | FCFA | 1,486,441,948 | | 1,486,441,948 |
| Avenant n°3 n°127/84 du marché 353/83 | Oui | | | | |
| Marché n°83/85/AO | Oui | | | | |
| Marché n°009/86/G | Oui | FRF | 7,405,998 | 1,382,453 | 8,788,451 |
| Marché n°015/86/G | Oui | FRF | 6,289,500 | 2,138,430 | 8,427,930 |
| Avenant n°4 n°54/86 du marché 353/83 | Oui | USD | 2,091,021 | 235,240 | 2,326,261 |
| Marché 53/86 | Oui | USD | 1,746,282 | 366,719 | 2,113,001 |
| Avenant n°1 n°55/86 du marché 15/86 | Oui | USD | 669,317 | 19,477 | 688,794 |
| Avenant n°5 n°57/86 du marché 353/83 | Oui | USD | 11,991,826 | 1,678,856 | 13,670,682 |
| Avenant n°1 n°56/86 du marché 83/85 | Oui | | | | |
| Garantie n° corp 5166-85 | Oui | GBP | 12,589,217 | 2,932,115 | 15,521,332 |
| Marché 185/84 | Non | | | | |
| | | | | | |
| Total | | FRF | | | 17,216,381 |
| Total | | GBP | | | 15,521,332 |
| Total | | USD | | | 18,798,738 |
| Total | | FCFA | | | 1,486,441,948 |

Finally, the RICOL Report determined the "discounted" amount of secured and undisputed debts as of October 30, 192, applying "*the average nine-month* bank lending rate, *as referenced by the Banque de France, increased* by one *point*," which is presented in the following figure.

**Figure** 6. **Secured and undisputed debts** "**discounted**" at 31/10/1992

| Currency | Amounts | |
|---|---|---|
| | Non Discounted | Discounted at 10/31/1992 |
| FRF | 17,216,381 | 29,489,637 |
| GBP | 15,521,332 | 18,939,772 |
| USD | 18,798,738 | 31161701 |
| FCFA | 1,486,441,948 | 2,466,703,689 |

---

[20] See RICOL report, page 45

[21] See RICOL Report, pages 51 and 52.

[22] See RICOL report, page 8.

### 2.5.2 The ruling of December 2000

The 2000 ruling found that the Republic of Congo and the CCA owed COMMISIMPEX, first and foremost, the enforceable balances comprising:

- the amount of promissory notes denominated in FRF, GBP, and USD returned in the letter of November 24, 1992, as indicated in the RICOL Report, applying a discount of 25% [23];

- the balance denominated in CFA francs in favor of COMMISIMPEX, while noting that it did not give rise to the issuance of promissory notes, nor was it subject to discounting or a haircut, and that in any event Protocol No. 566 limits its amount to 1,426,623,801 [24]

As a result, the 2000 Award considers that the balances owed to COMMISIMPEX under Protocol No. 566 are as follows:

**Figure 7**: **Balances due and payable under Protocol No. 566 pursuant to the 2008 Award** 2OOO85

| Currency | Amount It: ʰ₯ʷʲ I Rico | Discount of 25%) | ʈ OII tit II ᵗ Sentence |
|---|---|---|---|
| | (1) | (2) = 25% x (1) | (3) — (1) - (2) |
| FRF | 29,489,637 | 7,372,409 | 22,117,228 |
| GBP | 18,939,772 | 4,734,943 | 14,204,829 |
| USD | 31,161,701 | 7,790,425 | 23,371,278 |
| FCFA | 2,466,703,689 | NA | 1,426,623,801 |

These balances are partially represented by the BAOs issued under Protocol No. 566. The amount awarded to COMMISIMPEX by the 2000 Award also takes into account:

- interest calculated at a rate of 10% on the amounts summarized in Figure 7 [26]

"Late payment interest calculated at a rate of 10.5%, reduced, however, to the quarterly usury threshold applicable by law to the category of fixed-rate business loans with a term of more than two years, whenever the rate of 10.5% exceeds the usury rate for the quarter in question, with annual capitalization from March 13, 1998.

## 2.6 **The Ernst & Young report** dated September 12, 2001
2001

At the request of COMMISIMPEX, the Commercial Court of Brazzaville appointed Ernst & Young, by order dated September 3, 2000, to assess the exact amount of COMMISIMPEX's claim against the Republic of Congo. It issued its findings in a report dated September 25, 2001.

---

23    See 2000 Award, pages 3 and 61
24    See 2000 Award, page 5, footnote 26, and page 61.
25    See 2000 Award, page 67. See §1)a)i)
26    See 2000 Award, page 67. See § 1) a) ii)
27     See 2000 Award, page 68, see § 2).

As part of its work, Ernst & Young first verified the information indicated in the calculation sheet, according to which the Republic of Congo's debt to COMMISIMPEX amounted to 2,949,284,818 CFA francs.

It concluded on this point:

*"It can therefore be concluded that at the end of 1986/beginning of 1987, the Republic of Congo and the Congolese Development Bank owed COMMISIMPEX a sum of approximately 10 million CFA francs, as the Congolese Development Bank, like the Congolese Development Bank, owed COC MISIMPEX a sum of approximately 30 million CFA francs, as the Congolese Debt Settlement Fund had been informed by the Congolese authorities in the context of the trial against Minister LEKOUNDZOU in 1991"*

He also estimated the Republic of Congo's debt to COMMISIMPEX as of September 30, 1992, the calculation of which is shown in Figure 8.

Figure 8: Detailed calculation from the EY report concerning the Republic of Congo's debt to COMMISSIMPEX as of September 30, 1999.



---

28 See EY Report, page 41.

**The EY Report concludes that the Republic of Congo's debt amounted to 48,532,681,474 FCFA, of which 22,000,000,000 FCFA was covered by the 1992 Protocol, leaving a balance of 26,532,681,474 FCFA (see Figure 8, amounts circled in red).**

This calculation of the Republic of Congo's debt as of September 30, 2002, is based on the following elements:

- the amount of debt determined in the calculation sheet at 29,949,284,818 CFA francs on January 1, 1987, based on the contracts covered by the guarantee (see Figure 8, amount circled in green);

- capitalization at a rate of 10.5% of this amount as of April 27, 1987, from which a partial payment of US$1 million is deducted, converted into 4,500,000,000 CFA francs, resulting in an amount of 26,457,338 CFA francs (see Figure 8, amounts circled in blue);

- capitalization at a rate of 10.5% of this amount as of September 30, 2002, which then amounted to 45,614,448.185 CFA francs (see Figure 8, amounts circled in orange);

- capitalization at a rate of 10.5% of the balance of the price on amendment no. 1 to contract no. 107/84 (1,426,623,801 CFA francs) between March 8, 1988, and September 30, 1992, resulting in an amount of 2,918,233,289 CFA francs (see Figure 8, amounts circled in yellow);

- the sum resulting from the capitalization of the debt indicated in the calculation sheet and the price balance on amendment no. 1 to contract no. 107/84, which then amounts to 48,532,681,474 CFA francs (see Figure 8, amount circled in gray).

## 2.7 Protocol No. 776

Protocol No. 776 signed on August 3, 2003, by the Republic of Congo and COMMISIMPEX aims to organize the terms of settlement of the Republic of Congo's debts to COMMISIMPEX, set at a **total amount of 96 billion expressed in CFA francs, after the devaluation that occurred in 1994. or 960, 000,000 expressed** in FRF, on <u>September 10</u> 1992.

In this regard, the 2003 Protocol states in particular:

> *"The amount of the Congo state's debt <u>as of September</u> 30<u>, 1992, amounts</u> to <u>__a principal sum of 960,000,000 FRF__</u> (nine hundred and sixty million French francs), which in 1992 represented the sum of 48 billion CFA francs, **equivalent to <u>96,000,000,000 CFA</u>** francs (ninety-six billion CFA francs)"* (emphasis added

As indicated in paragraph 2.6 above, this amount of 96 billion CFA francs corresponds to the amount of 48 billion CFA francs indicated in the EY Report, after the effect of the devaluation that took place in 1994. Calculated on the basis of:

"the amount indicated in the Calculation Sheet as of January 1, 1987, based on the Contracts covered by the Guarantee;

- interest capitalized on this amount at a rate of 10.5% between January 1, 1987, and September 30, 1992;

- the balance of the price on amendment no. 1 to contract no. 107/84, including interest capitalized on this balance at a rate of $10.5\%$ between March 8, 1988, and September 30, 1992.

The parties agreed that this debt of FRF 960 million was divided into two parts:

- a first part in the amount of FRF 440 million, which was the subject of the 1992 Protocol; In this regard, the 2003 Protocol states:

*octobre 1992 »*
"a first part fixed at 440,000,000 *FRF (four hundred and forty million* French Francs*), equivalent to 22 billion CFA francs, subject to Memorandum of Understanding* No. 566 of October 14, 1992.

- a second part in the amount of 20 million FRF, the repayment terms of which are set out in Article 4

This amount of 96 billion CFA francs or 96 million FRF **does not take into account the capitalized interest accrued at an annual rate of 10% between September 30, 1999, and July 30, 2003,** which represented a **total of 14,445,866 FRF,** as specified in Article 3 in the following terms:

*"The State of Congo undertakes to repay to the company* **COMMISIMPEX** *the principal sum of soo million FRF,* ***not including*** *interest* ***amounting to 941,141,586 FRF, for the period from September 1992 to July 2000*** *at* **a rate** *of 10% per annum"* (emphasis added).

## 2.8 The 2013 Award

On April 2, 2009, COMMISIMPEX initiated new arbitration proceedings against the Republic of Congo, arguing that the latter had failed to comply with its commitments under the 2003 Protocol.

COMMISIMPEX obtained a favorable ruling on January 21, 2013.

The court awarded it the second part of its debt referred to in the 2003 Protocol, amounting to FRF 20 million, plus interest capitalized at an annual rate of 10% on this amount between September 3, 2002, and July 30, 2003. *"the sum of €222,749,598.82 plus interest at 10% per annum compounded* annually on *December 31, for the period between December 31, 2002 and until full payment"°.*

---

[29] See 2013 Award, page 79, point 10.
Paragraph 316 on pages 77 and 78 of the 2013 ruling also states: "The Republic of Congo must therefore pay Commisimpex, in accordance with the 2003 Protocol, the sum of 520,000,000 FRF, i.e. the equivalent of €79,273,488.96 euros + 941,141,586 FRF either €143,476,109.86 = €222,749,598.82 plus interest at 10% compounded annually on December 31, for the period between December 31, 2003 and full payment.

# 3. Determination of the amount that would have been owed by the Republic of Congo to COMMISIMPEX under the contracts covered by the Guarantee on the basis of the calculation sheet as at March 31, 2009

## 3.1   Presentation of the calculation elements used

In determining the amount that would have been owed by the Republic of Congo to COMMISIMPEX under the contracts covered by the Guarantee, based on the Calculation Sheet dated March 31, 2016, we took four factors into account.

First, we used the total amounts in foreign currency indicated in the Calculation Sheet (see Figure 4 : 96,410,238 FRF, 44,445,335 **GBP**, and 1,892,538,757 FCFA) because the latter is based exclusively on the Contracts covered by the Guarantee and takes them into account in their entirety.

Secondly, we deducted the amounts received by COMMISIMPEX since January 1, 1987, i.e., the reference date for the calculation sheet, which are of two types according to the information provided to us.

On the one hand, this is a partial payment made on April 27, 1987, for an amount of approximately USD 15 million. This payment was made in exchange for COMMISIMPEX's delivery of promissory notes issued for various contracts and denominated in different currencies, as detailed in the following figure.

**Figure 9. Details of the partial payment made by the Republic of Congo on April 27, 1987**

| | | | | |
|---|---|---|---|---|
| Addendum No. 1 No. 107/84/AV | GBP | 1,409,500 | 338,280 | 1,747,780 |
| Addendum No. 3 No. 127/84/AV | GBP | 4,228,500 | 1,288,550 | 5,517,050 |
| Contract No. 83/85/AO | FRF | | | |
| Contract No. 009/86/G | FRF | 2 468 670 | 658,312 | 3,126,982 |
| Contract No. 015/86/G | FRF | 3 144 750 | 964,390 | 4,109,140 |
| Addendum No. 4 No. 54/86/AV | USD | 1 045 511 | 188,192 | 1,233,703 |
| Contract No. 53/86/AO | USD | | | |
| Amendment No. 1 No. 55/86/AV | FRF | | | |
| Addendum No. 5 No. 57/86/AV | GBP | | | |
| Addendum No. 1 No. 56/86/AV | FRF | | | |
| Guarantee No. corp 5166-85 | GBP | | | |
| | | | | |
| Total | FRF | 5,613,420 | 1,622,702 | 7,236,122 |
| Total | GBP | 5,638,000 | 1,626,830 | 7,264,830 |
| Total | USD | 1,045,511 | 188,192 | 1,233,703 |

---

[30] See Mazars report dated August 2011, page 7.

On this basis, we therefore considered that COMMISIMPEX had obtained a refund on April 27, 1987, consisting of FRF **7,236,122**, GBP 7,264.830, and USD 1,233,703.

As the amounts in foreign currencies used in the calculation sheet did not include USD, we converted the amount in USD into FRF at the exchange rate on April 27, 1987, i.e., 5.966 **FRF[31]**.

In addition, COMMISIMPEX recovered a number of sums from the Republic of Congo following enforcement measures carried out in accordance with arbitration awards.

These sums, denominated in euros, were converted and deducted from the amounts expressed in FRF in the Calculation Sheet at the official exchange rate of 6.957 FRF to the euro.

Figure 10 details the amounts recovered by COMMISSIMPEX before March 3, 2019.

**Figure 10. Details of the amounts recovered by COMMISIMPEX following enforcement measures before March 31, 2019**

| | | | |
|---|---|---|---|
| 12/01/2016 | 1 197 273,30 | 1 197 273,30 | 7 853 598,02 |
| 21/03/2016 | 4 892 963,63 | 6 090 236,93 | 39 949 335,46 |
| 08/09/2016 | 43 947,90 | 6 134 184,83 | 40 237 614,79 |
| 23/06/2017 | 3 566 016,43 | 9 700 201,26 | 63 629 149,18 |
| 18/04/2018 | 450 000,00 | 10 150 201,26 | 66 580 955,68 |
| 25/07/2018 | 113 142,56 | 10 263 343,82 | 67 323 122,22 |
| 23/08/2018 | 42 626,40 | 10 305 970,22 | 67 602 733,08 |
| 15/02/2019 | 28 295,00 | 10 334 265,22 | 67 788 336,11 |

Thirdly, we capitalized the amounts retained between January 31, 1987, and March 31. 2019, at the rate of 10.5% indicated in the Guarantee. Capitalization is performed on an annual basis on December 31.

Finally, we converted the amounts in foreign currencies obtained on March 31, 2019, into euros based on the exchange rates indicated in the Bloomberg database, namely: EUR 1.162 for GBP 1, FRF 6.55957 for EUR 1, and FCFA 6.5957 for EUR 1.

## 4.2 Presentation of calculation results

The amount that would have been owed by the Republic of Congo to COMMISIMPEX under the contracts covered by the Guarantee, based on the calculation sheet dated March 3, 2019, amounts to €1,461,421,086, as detailed in Figure 11 and the appendix to this report.

---

[31] Source: **Bloomberg.**

**Figure** 11. **Amount owed under the contracts covered by the Guarantee based on the Calculation Sheet as of March 31, 2019.**

| Currencies | Amount | Exchange rate | Amount t € |
|---|---|---|---|
| FRF | 1,972,824,818 | 0.1524 | 300,755,205 |
| GBP | 936,669,149 | 1.162 | 1,088,409,551 |
| FCFA | 47,397,045,455 | 0.0015 | 72,256,330 |
| Total | | | 1,461,421,086 |

## 4.3 Analysis of **discrepancies with the conclusions of the Mazars Report**

The Mazars Report 2019 determines that the amount discounted to March 31, 2019 of the sums awarded by the 2010 Award and the 2013 Award totals 1,198,646,682 euros[32] excluding discounted arbitration costs.

Our calculation of the amount owed by the Republic of Congo to COMMISIMPEX under the contracts covered by the Guarantee, based on the Calculation Sheet, as of the same date of March 3, 2019, **is higher at 1,461,421,086 euros.**

Fundamentally, the purpose of the Mazars Report 2019 was to update the amounts awarded in the arbitration awards as of March 31, 2019, and therefore did not seek to take into account the Guarantee or the amounts of the contracts covered by the Guarantee as indicated in the Calculation Sheet.

The difference in results between our calculations and those in the Mazars Report 2019 is therefore not due to a difference in the scope of calculation, in the sense that the awards, as we will see in the following section, allocated sums to COMMISIMPEX on the basis of the Contracts covered by the Guarantee, but rather to a set of differences in the calculation parameters taken into account.

Firstly, there is a difference in the amount retained for the Contracts covered by the Guarantee, as the Calculation Sheet retains the initial amount of the contracts, while the 2000 Award retains an amount lower than the initial amount, implicitly considering that the BAOs for which proof of repayment could not be provided had been paid.

Secondly, there is a difference in the currency in which the amount of the contracts is denominated in the arbitration awards and in the calculation sheet, which implicitly leads to different exchange rates being used.

On the one hand, the 2000 Award is based on the amount of the BAOs representing the loans granted by COMMISIMPEX, which are denominated for contracts in currencies other than those taken into account in the Calculation Sheet[34].

---

[32] See Mazars 2019 report, table 1, page 3, column "Total discounted amounts granted."

[33] Adding the balance of amendment no. 1 to contract no. 107/84.

[34] The BAOs for these five contracts are denominated in USD, while their amounts in the calculation sheet are denominated in GBP for two and in FCFA for three.

On the other hand, the 2013 ruling is based on a debt owed by the Republic of Congo denominated in CFA francs and French francs (approximately 30 billion CFA francs on January 1, 1987, and 48 billion CFA francs or 60 million as of September 30, 1990), which amounts to freezing the exchange rates between the FRF, the CFA franc, and the **GBP** on which the amounts it allocates are calculated, whereas our calculation is based on the currencies appearing in the Calculation Sheet and therefore takes into account the evolution of these parities until March 31, 2019.

Thirdly, our calculation based on the Calculation Sheet takes into account the repayments made under the terms of the enforcement measures of the arbitral awards, which is not the case for the amounts determined in the Mazars Report 2019.

Finally, there is a difference in the interest rate used.

Our calculation is based on an annualized rate of 10.0%, whereas:

- the amounts allocated in the 2000 ruling take into account simple, non-compounded interest until March 13, 1988, and an annual interest rate of 10%, limited, however, to the usury threshold;

- the amounts awarded in the 2013 ruling take into account an annual interest rate of 10% and not 10.5%;

# 4. Analysis of the conclusions of the PWC report

Our analysis of the PWC report leads us to make observations on three points:

- its conclusion that the RICOL Report considered that only 7 of the ii contracts covered by the Guarantee were certain to be performed *(4.1)*

- its conclusion that the 2000 Award relates to Contracts covered by the Guarantee only up to the amounts awarded in FRF, GBP, and USD *(4.2)*

- its conclusion that the 2013 Award relates exclusively to the second part of the Republic of Congo's debt to COMMISIMPEX referred to in the 2003 Protocol, amounting to FRF 20 million (or FCFA 26 billion), which is unrelated to the contracts covered by the Guarantee *(4 3)*

## 4.1 On the conclusion of the PWC Report that the RICOL Report considered that only 7 of the 11 contracts covered by the Guarantee were certain to be performed

The PWC Report expresses this conclusion in the following terms:

> "**The RICOL Report** *covers all eleven Contracts covered by* **the Guarantee** *and considers that* <u>*the performance of seven of* **the** *eleven* **Contracts** *is certain*</u>*, based on the amounts shown in column* (b) **of** *the Summary* **Table** *prepared by* **the Expert**" (emphasis added).

This conclusion prompts the following comments on our part:

1 To be perfectly precise, it should be noted that the RICOL Report analyzed all of the Contracts giving rise to the Republic of Congo's debts to COMMISIMPEX (see Figure i), which includes the eleven Contracts covered by the Guarantee (see Figure 3) but also Contract 185/84, for which the promissory notes had been discounted by Equator Bank.

**2/ The RICOL Report did not identify any uncertainty regarding the performance of the Contracts** in **general or the Contracts covered by the Guarantee** in **particular** (see paragraph 2.5.1).

On the contrary, it noted that the Republic of Congo and the CCA had not produced sufficient evidence to demonstrate non-performance, partial performance, or poor performance.

3/ The 2000 Award confirmed this conclusion of the RICOL Report as follows (see paragraph 2.5.1):

> "no ***allegation relating* to *the works*** *themselves (partial or defective performance, duplication of work, etc.)* ***can be upheld,*** not *only* because none *has been*

---

[35] See PWC report, page 20.
[36] See RICOL report, page 5.

*proven* by *the defendants, but even* a *detailed* analysis *does not allow* us *to* grant them plausibility[37] (emphasis added).

4/ The wording used in the PWC Report could suggest that the amounts retained by the RICOL Report were based on the proven performance of the Contracts.

However, the amounts retained in the RICOL Report are equal to the amount of BAOs that COMMISIMPEX was able to prove it had refunded.

To be convinced of this, one need only refer to page ₅ of the RICOL Report, which states that:

"*From* my *point of view, the secure and undisputed debts consist* of *promissory notes for which proof of restitution was provided by the letter from Commisimpex dated November 1992.*"

Consequently, the RICOL Report confirmed that all the Contracts, including those covered by the Guarantee, had been performed in full and recognized for each contract a debt owed by the Republic of Congo to COMMISIMPEX in the amount of the promissory notes for which repayment could be proven, without there being any link between this amount and any uncertainty regarding the performance of the contracts.

## 4.2 On the conclusion of the PWC Report that the 2000 Award relates to Contracts covered by the Guarantee only up to the amounts granted in FRF, GBP, and USD

The PWC Report expresses this conclusion as follows:

"***Thus, the*** *2000* ***Award grants amounts*** **in** ***different currencies resulting from the annuity of all Contracts covered by the*** **Guarantee.**

*It follows that* **the Claim against the Republic of Congo under the** Guarantee **should** ***not exceed, in these circumstances, the amount of the sums awarded by the*** *2000* ***Award in FRF, GBP and USD,*** *as established in the Mazars Report, since only that* amount *results from a* valuation *carried out on* all *of* the Republic's *contracts*.

The PWC Report thus suggests that the sum allocated by the 2000 Award in CFA francs, amounting to 1,426,623,801 CFA francs, is not related to the contracts covered by the Guarantee (see Figure 12 on the following page)[39].

**Figure 12**: **balances payable according to page** 67 **of the 2000 Award**

---

[37] See 2000 Award, page 37.

[38] See PWC Report, pages 26 and 27.

[39] It concludes that the present value of the sums awarded by the 2000 Award as determined in the Mazars 2019 Report (i.e., EUR 244,914,319, see page 11) must be reduced by the present value of the sums awarded in CFA francs (i.e., EUR 10,922,934, see page 11) to arrive at an amount of 234 million euros (i.e., 244,914,319 – 10,922,934 = 233,991,385 EUR).

les soldes dus exécutables selon le Protocole n° 566, à savoir

- EUR ·· ··· ···
- GBP 14.204.829
- USD 23.371.278
- XAF (FCFA) 1.426.623.801

This conclusion contradicts the 2000 ruling because:

1/ Footnote 4 on page 39 of the 2000 ruling links this amount of 1,426,623,800 CFA francs to the amount of 1,486,441,800 CFA francs indicated in the minutes of the Etoumbi-Kunda project of February 13, 1988, in the following terms:

> *According to the RICOL Report (pages 7-50), it is necessary to add <u>as an indisputable debt the amount</u> recognized on February 1, 1988 [in the Minutes on the Efoumbi- Kunda project] of FCFA 1,864,449,980. However, the minutes of March 1993 mention the slightly lower amount of <u>FCFA 1,426,623,801</u> appearing in Article 1 of Protocol °566, apparently without being updated or discounted, and which the Court will take into consideration alone"* (emphasis added).

2/ The minutes of the Etoumbi-Kunda project meeting of February 13, 1988, notably established that the execution of amendment no. 1 to contract 107/84 left an unpaid balance owed to COMMISSIMPEX corresponding to the amount of 1,486,441,998 CFA francs

This point is acknowledged in the **RICOL** Report in the following terms:

> *"According to the minutes of 13/1/1988, the RPC acknowledges a balance owed to COMMISIMPEX of 1,486,441,948 CFA francs (difference between the total amount of work carried out under contract 107/84 and all promissory notes issued between* Amendments A1 107/84 and A3 127/84 on December 12, 1987"[40].

This finding is explicitly confirmed in the eooo ruling when it **states on page 36 at Regarding amendments** no. 1 **to contract** no. 107/84 and no. 3 to contract no.127/84, that:

> *"The minutes acknowledge that COMMISIMPEX was at the time owed half of the balance of 1,486,441,948 CFA francs, corresponding to the difference between the work performed and the payments made."*

3/ Addenda No. 1 to contract No. 107/84 and No. 3 to contract No. 127/84, which gave rise to an unpaid balance in favor of COMMISIMPEX of 1,486,441,948 CFA francs, are covered by the Guarantee (see Figure 3).

Consequently, the sum allocated by the 2000 ruling in the amount of 1,426,638,801 CFA francs is linked to the contracts covered by the guarantee, specifically amendments No. 1 to contract No. 108/84 and No. 3 to contract No. 127/84. This is contrary to what is suggested in the PWC report.

---

40 Source: RICOL Report, page 21, paragraph 3.23.

## 4.3 On the conclusion that the 2013 Award relates exclusively to the second part of the Republic of Congo's debt to COMMISIMPEX referred to in the 2003 Protocol in the amount of 520 million FRF (or 26 billion CFA francs), which is unrelated to the contracts covered by the Guarantee.

The PWC Report expresses this conclusion in the following terms:

> **Page** 23: *"The 2013 ruling relates exclusively to* **the debt** *amount of* **26MFCFA, which** *is unrelated to the contracts governed by the Guaranty*."

> Page 26: "**The amounts awarded by the** *2013 Award and the* **various** arbitration **awards** should **not be included in the claim alleged by COMMMMMPEX because they are unrelated to** the Guaranty."

**This conclusion** contradicts the Award of 2013.

In its section entitled "On the alleged absence of cause in the 2003 Protocol," the arbitral tribunal proceeds to analyze the origin of the second part of the Republic of Congo's debt of FRF 20 million to COMMISIMPEX, confirming that it is linked to the contracts concluded by the Republic of Congo with the company. an analysis of the origin of the second part of the Republic of Congo's debt of FRF 20 million to COMMISIMPEX, which confirms that it is linked to the Contracts covered by the Guarantee as follows:

i/ The Republic of Congo's debt to COMMISIMPEX amounted to CFAF 29,949,284,818 on January 1, 1987, based on the amount of contracts covered by the guarantee, as shown in the calculation sheet (see paragraph 2.3 and Figure 4).

2/ This debt had increased to approximately CFAF 48 billion (i.e., FRF 960 million) as of September 30, 1992, taking into account interest calculated at an annual rate of 10.5% between January 1, 1987, and September 3, 1992.

This point is discussed in detail in the EY Report (see paragraph 2.6 and Figure 8), which:

- confirms the amount of the Republic of Congo's debt indicated in the Calculation Sheet;
- shows that the latter had increased to 48,532,681,474 CFA francs on September 30 1992.

3/ The Protocol of 9 2 only partially settled the Republic of Congo's debt to COMMISIMPEX.

This point is highlighted in the EY Report (see paragraph 2.6 and Figure 8), which indicates that the debt as of September 30, 1992, had been partially settled in the amount of 22 billion CFA francs (i.e., 44 million FRF) through the 1992 Protocol, leaving a residual debt of CFAF 26,532,681,474 (i.e., approximately 100 million FRF).

---

[41]  Cf. 2013 ruling, pages 65 and following

4/ Articles 3 and 4 of the 2003 Protocol were specifically aimed at organizing the settlement of this residual debt of FRF 20 million as of September 3, 2012 (see paragraph 2.7).

More specifically, the following can be read in the 2013 Sentence:

> Paragraph 288: "*The Arbitral* Tribunal *considers* by *a majority **that the Republic of Congo has not provided any evidence** establishing **that in October 2003 its debt to Commisimpex was an amount other than 48 billion FCFA [60 million FRF] referred to in the Protocol of 2000,** whereas Commisimpex has plausibly explained* **the origin of this discrepancy** : *a* reduction *in **Commisimpex's** margin on the **contracts of 29,949,284,818 at the end of 1986**. By* **applying** *an interest* **rate** *of 10.5%* **with annual compounding** *and based on a conversion of the amounts* into *foreign currency at the rates envisaged on the date of the Signing the contracts, we* **obtain an** *amount of approximately FRF* **960,000,000**, *or 48* **billion** *CFA francs from the 2003 Protocol*.

> Paragraph 292: "***The detailed calculation** sheet from the CCA for 1999, which **confirms the existence of a debt of** 949,800,000 **CFA francs at the end** of 1986, is also referred to by the Court of Appeal in its decision of July 11, 2000, which also mentions **the valuation at 48 billion** FCFA from September 30 1992 per Ernst & Young*.

> Paragraph 293: "*All of the documents just mentioned **allow the Tribunal to make two key determinations**: 1) **The assessment of Congo's debt to Commisimpex in 1986** at 29,949,184,818 FCFA seemed widely accepted in both 1991 and 2002-2003l and 2) its change to 48 billion **FCFA** at October 1992 leaves little room for discussion since it is a mathematical calculation carried out by Ernst & Young and verified by the Mazar firm during the previous arbitration proceedings (...) **The amount of 48 billion FCFA is based on an assessment of the sums owed to Commisimpex in 1991 and updated at the end of September** 1992. This is not a figure plucked out of thin air by negotiators for obscure reasons and without any basis.

> Paragraph 297: "*The fraud must also have been spread over* a *long period, since it dates* **back** *at least* **to the valuation of the debt at 29,949,184,818 FCFA at the end of** 1986, *in 1999,* **which was the basis for the valuation at 48 billion in September 1992**."

Consequently, the contracts covered by the Guarantee were the source of the debt of 29,949,184,818 FCFA8 CFA francs determined on January 1, 1987, the amount of which had increased to approximately 48 billion CFA francs as of September 3, 1992 (or 60 million FRF), due to the compounding of interest.

The 1992 Protocol, which was never fulfilled by the Republic of Congo, only dealt with the Republic of Congo's debt as of September 30, 1992, in the amount of 22 billion CFA francs (or 44 million FRF), leaving a residual debt of approximately 26 billion CFA francs (or 120 million FRF), which was the subject of the second part of the Republic of Congo's debt dealt with in Articles 3 and 4 of the 2003 Protocol.

**The sums allocated to COMMISIMPEX by the** August 3 **ruling** relating to the **second part** of **the Republic of Congo's debt** in **the amount of 520 million FRF** as of September 30, 1995**, and the interest capitalized** on this amount until

July 30 2003, there is a direct link between the sums allocated by the Award of 2013 and the Contracts covered by the Guarantee.

# 5. Analysis of the independence of PWC with regard to the parties to this dispute

As part of the ongoing proceedings, TOTAL Energy E&P Congo produced a report drafted on December 24, 2020, by PWC

To be validly considered in the proceedings, this report should only be taken into account if it was prepared by a professional who, regardless of their technical qualifications, is independent of the parties involved.

In this regard, two observations are worth noting:

1/ PWC's relations with the Republic of Congo:

In March 2017, the Congolese government announced that it had entrusted an important mission to PWC experts in Brazzaville.

The aim is to develop a methodology for diversifying the Congolese economy.

This mission is part of the project to support economic diversification and the 2012-2016 national development program.

This long-term business relationship involves close cooperation with the Congolese authorities.

However, in the present dispute, the interests of the Republic of Congo do not necessarily coincide with those of the TOTAL group.

It is therefore difficult to intervene simultaneously on behalf of two parties with an interest in the outcome of the same case.

2/ PWC's relationship with the TOTAL Group.

According to a press release published by the TOTAL Group, a board of directors meeting was held on October 2, 2020, and it was decided to submit to the general meeting of shareholders, which will be held on May 2, 2002, to approve the accounts for the 2021 financial year, the appointment of PWC as statutory auditor for a six-year term.

This means that on the date on which PWC drafted its report, December 24, 2020, it had agreed to be appointed as auditor.

However, the Code of Ethics for the profession of auditor, included in the appendix to Book **VIII** of the Commercial Code, in its regulatory section, in force as of March 1, 2020, provides in Article 22 that:

• *The auditor may not accept* an *audit engagement from a public* interest *entity if, during the financial year preceding that for which* the *accounts are to be audited, he* or *any member of* his *network has provided, directly or indirectly, to the public* interest *entity, persons or entities that control it or are controlled by it in* the *European* Union, *within the* meaning *of I and II of* Article L. *233 of the Commercial Code, the services referred to 1 of Article 5 of EU Regulation No. 537/2014.*

In addition, paragraph I of Article 22 requires the auditor to identify and analyze all engagements performed prior to his appointment in order to assess the risks of self-review and define appropriate safeguards.

Finally, Article 18 of the Code sets out the services that are prohibited for an auditor working with a public interest entity.

These services are listed in Article L.822-11 of the Commercial Code and include, in particular: g-iii- acting as a defender in the resolution of a dispute.

Since its name had been proposed by a board of directors and it had agreed to be appointed at a forthcoming meeting, it can be considered that PWC was required to comply with this requirement and to refrain from any assignment that could place it in a situation of incompatibility with the position to which it had agreed to be appointed.

By drafting a report in defense of the TOTAL Group on December 24, 2020, PWC appears to have ignored this requirement.

Therefore, this report, produced in contravention of legal and regulatory provisions, must be excluded from the present debate.

# Conclusion

In conclusion, based on the findings described in this report, we believe that the following conclusions can be drawn:

1. The amount that would have been owed by the Republic of Congo to COMMISIMPEX, under the contracts covered by the Guarantee, based on the Calculation Sheet, as of March 3, 2019, amounts to EUR 1,461,421,086.

2. This amount is higher than that determined in the Mazars Report 2019, which amounts to EUR 1,098,666.68, excluding discounted arbitration costs.

3. The difference between these two amounts cannot be explained by differences in scope, in the sense that the awards taken into account in the Mazars Report 2019 allocated sums to COMMISIMPEX exclusively on the basis of the Contracts covered by the Guarantee. This difference is due to the use of different calculation parameters.

4. The conclusions of the PWC Report cannot be considered accurate on three points.

    Firstly, it is inaccurate to state, as the PWC Report does, that the **RICOL** Report considered that only seven of the eleven Contracts covered by the Guarantee were certain to be performed.

    The RICOL Report considers that all of the Contracts, including all of those covered by the Guarantee, had been performed perfectly. It therefore rejects all of the Republic of Congo's allegations concerning possible non-performance, partial performance, or poor performance of a contract.

    Secondly, it is incorrect to consider that the sums allocated to COMMISIMPEX by the 2000 Award should only be retained for amounts denominated in FRF, GBP, and USD.

    The sum awarded to COMMISIMPEX by the 2000 Award denominated in CFA francs is also linked to the Contracts covered by the Guarantee, specifically amendments No. 1 to Contract No. 107/84 and No. 3 to Contract No. 127/84.

    Consequently, the entire amount awarded to COMMISIMPEX by the 2000 Award, as updated in the Mazars 2002 Report (i.e., EUR 244.9 million), is linked to the Contracts covered by the Guarantee, and not just an amount of EUR 234 million as suggested by the PWC Report.

    Finally, it is incorrect to assert that the sums allocated to COMMISIMPEX by the 2013 Award are unrelated to the Contracts covered by the Guarantee.

    The sums awarded by the 2013 Award are, in fact, based on the second part of the Republic of Congo's debt in the amount of FRF 20 million as of September 3, 1992, and on the interest capitalized on that amount until July 30, 2003.

    However:

    - This amount of FRF 20 million constitutes the balance of the Republic of Congo's debt calculated on the basis of the amount determined in the Calculation Sheet (CFAF 48 billion or FRF 60 million after capitalization of the amounts from January 1, 1987, to September 30, 1992) after deduction of the amount of FRF 44 million covered by the 1992 Protocol.

- The calculation sheet is based exclusively on and takes into account in an exhaustive manner the Contracts covered by the Guarantee.

As a result, the amounts awarded by the 2013 Award are based exclusively on the Contracts covered by the Guarantee.

5. The PWC Report should be disregarded in this debate as it appears to contradict legal and regulatory provisions due to:

- its relations with the Republic of Congo;

- the announcement on October 29, 2020, by TotalEnergies, prior to the date of its report, of the proposal to appoint it as auditor at its general meeting called to approve the accounts for its fiscal year.

Done in Paris, September 27, 2021 Didier

Kling Expertise & Consulting

**Didier Kling**
Expert (honorary) près la cour d'Appel de Paris
**Appeal** Approved by the Court of Cassation

**Teddy** Guerineau
Associé

**Appendix: Amount that would have been paid by the Republic of Congo to COMMISIMPEX for the contracts covered by the Guarantee, based on the calculation sheet**

| | Designation | | | | | | |
|---|---|---|---|---|---|---|---|
| 30 777,00 | Avenant n°1 n°107/84/AV | GBP | 7 302 563 | GBP | 1 747 780 | | |
| 30 807,00 | Avenant n°3 n°127/84/AV | GBP | 10 862 567 | | 5 517 050 | | |
| 31 222,00 | Marché n°83/85/AO | FRF | 59 942 886 | | | | |
| 31 455,00 | Marché n°009/86/G | FRF | 16 111 601 | FRF | 3 126 982 | | |
| 31 495,00 | Marché n°015/86/G | FRF | 20 355 751 | FRF | 4 109 140 | | |
| 31 601,00 | Avenant n°4 n°54/86/AV | GBP | 2 871 649 | USD | 1 233 703 | | |
| 31 594,00 | Marché 53/86 | FCFA | 1 257 621 499 | | | | |
| 31 601,00 | Avenant n°1 n°55/86/AV | FCFA | 241 011 369 | | | | |
| 31 601,00 | Avenant n°5 n°57/86/AV | GBP | 8 234 327 | | | | |
| 31 601,00 | Avenant 56/86 | FCFA | 393 960 889 | | | | |
| 31 955,00 | Garantie n° corp 5166-85 | GBP | 15 174 229 | | | | |

| | | | | |
|---|---|---|---|---|
| | Total | FRF | 96 410 238 | 7 236 122 |
| | Total | GBP | 44 445 335 | 7 264 830 |
| | Total | USD | | 1 233 703 |
| | Total | CFA | **1 892 593 757** | |

| | Exécution forcée sur sentences arbitrales en € | | |
|---|---|---|---|
| Date | Montant EUR | Cumul EUR | Cumul FRF |
| 12/01/2016 | 1 197 273,30 | 1 197 273,30 | 7 853 598,02 |
| March 21, 2016 | 4 892 963,63 | 6 090 236,93 | 39 949 335,46 |
| 09/08/2016 | 43 947,90 | 6 134 184,83 | 40 237 614,79 |
| 06/23/2017 | 3 566 016,43 | 9 700 201,26 | 63 629 149,18 |
| 04/18/2018 | 450 000,00 | 10 150 201,26 | 66 580 955,68 |
| 07/25/2018 | 113 142,56 | 10 263 343,82 | 67 323 122,22 |
| 08/23/2018 | 42 626,40 | 10 305 970,22 | 67 602 733,08 |
| 02/15/2019 | 28 295,00 | 10 334 265,22 | 67 788 336,11 |
| 04/10/2019 | $2 208 981,90 | 12 543 247,12 | 82 278 307,51 |
| 02/23/2021 | 26 233 973,54 | **38 777 220,66** | 254 361 893,32 |

| Date | FRF | | | | GBP | | | | FCFA | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Principal | Intérêts à 10,5% | Rbt | Montant fin période | Principal | Intérêts à 10,5% | Rbt | Montant fin période | Principal | Intérêts à 10,5% | Rbt | Montant fin période |
| 12/31/86 | 96 410 238 | | | | 44 445 335 | | | | 1 892 593 757 | | | |
| 04/27/87 | | 3 244 931 | -14 596 394 | | | 1 495 920 | -7 264 830 | | | 63 700 039 | | |
| 12/31/87 | | 5 836 801 | | 90 895 576 | | 2 652 549 | | 41 328 974 | | 135 022 305 | | 2 091 316 101 |
| 12/31/88 | | 9 544 035 | | 100 439 612 | | 4 339 542 | | 45 668 517 | | 219 588 191 | | 2 310 904 292 |
| 12/31/89 | | 10 546 159 | | 110 985 771 | | 4 795 194 | | 50 463 711 | | 242 644 951 | | 2 553 549 243 |
| 12/31/90 | | 11 653 506 | | 122 639 277 | | 5 298 690 | | 55 762 400 | | 268 122 670 | | 2 821 671 913 |
| 12/31/91 | | 12 877 124 | | 135 516 401 | | 5 855 052 | | 61 617 453 | | 296 275 551 | | 3 117 947 464 |
| 12/31/92 | | 14 229 222 | | 149 745 623 | | 6 469 833 | | 68 087 285 | | 327 384 484 | | 3 445 331 948 |
| 12/31/93 | | 15 723 290 | | 165 468 913 | | 7 149 165 | | 75 236 450 | | 361 759 855 | | 3 807 091 802 |
| 12/31/94 | | 17 374 236 | | 182 843 149 | | 7 899 827 | | 83 136 277 | | 399 744 639 | | 4 206 836 442 |
| 12/31/95 | | 19 198 531 | | 202 041 680 | | 8 729 309 | | 91 865 586 | | 441 717 826 | | 4 648 554 268 |
| 12/31/96 | | 21 214 376 | | 223 256 056 | | 9 645 887 | | 101 511 473 | | 488 098 198 | | 5 136 652 466 |
| 12/31/97 | | 23 441 886 | | 246 697 942 | | 10 658 705 | | 112 170 178 | | 539 348 509 | | 5 676 000 975 |
| 12/31/98 | | 25 903 284 | | 272 601 226 | | 11 777 869 | | 123 948 046 | | 595 980 102 | | 6 271 981 078 |
| 12/31/99 | | 28 623 129 | | 301 224 355 | | 13 014 545 | | 136 962 591 | | 658 558 013 | | 6 930 539 091 |
| 12/31/00 | | 31 628 557 | | 332 852 912 | | 14 381 072 | | 151 343 663 | | 727 706 605 | | 7 658 245 695 |
| 12/31/01 | | 34 949 556 | | 367 802 468 | | 15 891 085 | | 167 234 748 | | 804 115 798 | | 8 462 361 493 |
| 12/31/02 | | 38 619 259 | | 406 421 727 | | 17 559 649 | | 184 794 396 | | 888 547 957 | | 9 350 909 450 |
| 12/31/03 | | 42 674 281 | | 449 096 008 | | 19 403 412 | | 204 197 808 | | 981 845 492 | | 10 332 754 942 |
| 3 l/1 2/04 | | 47 155 081 | | 496 251 089 | | 21 440 770 | | 225 638 578 | | 1 084 939 269 | | 11 417 694 211 |
| 12/31/05 | | 52 106 364 | | 548 357 454 | | 23 692 051 | | 249 330 628 | | 1 198 857 892 | | 12 616 552 104 |
| 12/31/06 | | 57 577 533 | | 605 934 986 | | 26 179 716 | | 275 510 344 | | 1 324 737 971 | | 13 941 290 074 |
| 12/31/07 | | 63 623 174 | | 669 558 160 | | 28 928 586 | | 304 438 930 | | 1 463 835 458 | | 15 405 125 532 |
| 12/31/08 | | 70 303 607 | | 739 861 767 | | 31 966 088 | | 336 405 018 | | 1 617 538 181 | | 17 022 663 713 |
| 12/31/09 | | 77 685 486 | | 817 547 252 | | 35 322 527 | | 371 727 545 | | 1 787 379 690 | | 18 810 043 403 |
| 12/31/10 | | 85 842 461 | | 903 389 714 | | 39 031 392 | | 410 758 937 | | 1 975 054 557 | | 20 785 097 960 |
| 12/31/1 | | 94 855 920 | | 998 245 634 | | 43 129 688 | | 453 888 626 | | 2 182 435 286 | | 22 967 533 246 |
| 12/31/12 | | 104 815 792 | | 1 103 061 425 | | 47 658 306 | | 501 546 931 | | 2 411 590 991 | | 25 379 124 237 |
| 12/31/13 | | 115 821 450 | | 1 218 882 875 | | 52 662 428 | | 554 209 359 | | 2 664 808 045 | | 28 043 932 282 |
| 12/31/14 | | 127 982 702 | | 1 346 865 577 | | 58 191 983 | | 612 401 342 | | 2 944 612 890 | | 30 988 545 171 |
| 3 l/1 2/15 | | 141 420 886 | | 1 488 286 462 | | 64 302 141 | | 676 703 483 | | 3 253 797 243 | | 34 242 342 414 |
| 12/01/16 | | 5 123 609 | -7 853 598 | | | | | | | | | |
| 03/21/16 | | 29 305 290 | -32 095 737 | | | | | | | | | |
| 09/08/16 | | 71 051 621 | -288 279 | | | | | | | | | |
| 12/31/16 | | 47 358 319 | | 1 600 887 686 | | 71 053 866 | | 747 757 348 | | 3 595 445 954 | | 37 837 788 368 |
| 06/23/17 | | 80 132 104 | -23 391 534 | | | | | | | | | |
| 12/31/17 | | 86 675 850 | | 1 744 304 106 | | 78 514 522 | | 826 271 870 | | 3 972 967 779 | | 41 810 756 147 |
| 04/18/8 | | 54 192 900 | -2 951 807 | | | | | | | | | |
| 07/25/18 | | 49 091 822 | -742 167 | | | | | | | | | |
| 08/23/18 | | 14 520 980 | -279 611 | | | | | | | | | |
| 12/31/18 | | 65 083 593 | | 1 923 219 819 | | 86 758 546 | | 913 030 416 | | 4 390 129 395 | | 46 200 885 542 |
| 02/15/19 | | 25 449 731 | -185 603 | | | | | | | | | |
| 03/31 | | 24 340 871 | | 1 972 824 818 | | 23 638 733 | | 936 669 149 | | 1 196 159 913 | | 47 397 045 455 |

| Devises | Montant | Tx change | Montant € |
|---|---|---|---|
| FRF | 1 972 824 818 | 0,1524 | 300 755 205 |
| GBP | 936 669 149 | 1,1620 | 1 088 409 551 |
| FCFA | 47 397 045 455 | 0,0015 | 72 256 330 |
| | | | |
| Total | | | 1 461 421,08 |