# Exhibit 18

Décision signée électroniquement conformément à l'article 456 du CPC

## TRIBUNAL DE COMMERCE DE NANTERRE

### JUGEMENT

### PRONONCE PAR MISE A DISPOSITION AU GREFFE LE 31 Mars 2022
### 3ème CHAMBRE

#### DEMANDEUR

SDE COMMISSIONS IMPORT EXPORT (COMMISIMPEX)  86 av
Foch BP 1244, Brazzaville    REPUBLIQUE DU CONGO
comparant par SCP HUVELIN et Associés  19 Rue D ANJOU 75008
PARIS cabinet@scphuvelin.com   et par Me Richard WILLEMANT
Richard  CABINET  FERAL-SCHUHL/SAINTE-MARIE    24  RUE
ERLANGER 75016 PARIS

#### DEFENDEURS

SAS  TOTALENERGIES    HOLDINGS  ANCIENNEMENT  ELF
AQUITAINE  2 Pl Jean Millier la  Défense 6 Tour Coupole 92400
COURBEVOIE
comparant par Me Nicole DELAY-PEUCH  15 Rue Monsigny 75002
PARIS contact@delaypeuch.fr  et par  Georges JOURDE   171
BOULEVARD HAUSSMANN 75008 PARIS

SDE TOTALENERGIES E § P CONGO EX TOTAL E & P CONGO
av Poincaré BP 761, Pointe Noire    REPUBLIQUE DU CONGO
comparant par Me François Farhad AMELI  264 Rue DU FG ST
HONORE 75008 PARIS

SA TOTAL  2 Pl Jean Millier Tour Coupole La Défense 6 92400
COURBEVOIE
comparant par Me Nicole DELAY-PEUCH  15 Rue Monsigny 75002
PARIS contact@delaypeuch.fr  et par  Georges JOURDE   171
BOULEVARD HAUSSMANN 75008 PARIS

SDE LA REPUBLIQUE DU CONGO  BP 2083 bd Dénis Sassou
Nguesso & ave du Cardinal E Biayenda Brazzaville    REPUBLIQUE
CONGO
non comparant

LE TRIBUNAL AYANT LE 2 FEVRIER 2022 ORDONNE LA CLOTURE DES DEBATS
POUR LE JUGEMENT ETRE PRONONCE PAR MISE A DISPOSITION AU GREFFE LE
31 Mars 2022, APRES EN AVOIR DELIBERE.

Décision signée électroniquement conformément à l'article 456 du CPC

## EXPOSE des FAITS

La SDE COMMISSION IMPORT EXPORT, ci-après COMMISIMPEX est une société de droit congolais spécialisée dans l'exécution de travaux publics ; elle a été fondée par M. Mohsin Mohammed HAJAIJ, ou HOJEIJ, homme d'affaires anglo-libanais.
La SDE TOTAL E&P CONGO, ci-après TOTAL E&P CONGO, est une société de droit congolais.
La SE TOTAL, ci-après TOTAL SA ou TOTAL SE, était anciennement désignée TOTAL SA.
La SAS TOTAL HOLDINGS, ci-après TOTAL HOLDINGS, était anciennement désignée ELF AQUITAINE.

Entre 1984 et 1986, COMMISIMPEX a exécuté d'importants marchés de travaux publics pour répondre aux besoins de la République du Congo.

Pour sécuriser le paiement du prix des travaux, la République du Congo a consenti à COMMISIMPEX un nantissement sur des revenus à provenir de l'exploitation de certains gisements d'hydrocarbures étrangers : ainsi, le 22 décembre 1986, la République du Congo, représentée par le Ministère des Finances et du Budget, et la Caisse Congolaise d'Amortissement (CCA) ont consenti une garantie, ci-après la « Garantie » « *afin de permettre à COMMISIMPEX (...) d'assurer le financement nécessaire à la réalisation et à l'exécution des marchés et avenants de travaux et fournitures* ». ; la « Garantie » prévoyait un engagement irrévocable de la République du Congo de nantir les revenus qu'elle tirait de l'exploitation des gisements d'hydrocarbures.

COMMISIMPEX a négocié un protocole le 14 octobre 1992 avec la République du Congo pour le paiement de ses créances ; ce protocole n'étant pas appliqué, à la suite de procédures multiples, COMMISIMPEX a obtenu la condamnation de la République du Congo au paiement de sommes qui lui sont dues, aux termes de deux sentences arbitrales, l'une du 3 décembre 2000, l'autre du 21 janvier 2013 ; à la suite des recours de la République du Congo, cette dernière sentence a été revêtue de l'exequatur en France par ordonnance du Président du TGI de Paris le 13 février 2013.
Ces deux sentences arbitrales ont été notifiées avec la Garantie à TOTAL E&P CONGO, à ELF AQUITAINE et à TOTAL SE .

Ces sentences n'étant pas exécutées, la créance totale s'élève à la somme, en principal et intérêts de 1 371 902 024 €. Le montant de cette créance n'est pas l'objet de la présente instance.

COMMISIMPEX a été mise en liquidation par le tribunal de commerce de Brazzaville en octobre 2012.
Le président du TGI de Paris a déclaré inopposable en France cette décision de liquidation et cette ordonnance est confirmée par la Cour d'Appel de Paris le 18 décembre 2014 ; le pourvoi de la République du Congo est rejeté par la Cour de Cassation.
Le tribunal fédéral du district de Colombia (USA) a jugé le 30 juillet 2015, que la décision de liquidation de la société COMMISIMPEX n'était pas « *le produit d'un procès équitable* ».

Un redressement fiscal de 1,2 million d'euros a été notifié à COMMISIMPEX par les autorités congolaises le 19 mars 2014.

Décision signée électroniquement conformément à l'article 456 du CPC

Par exploits d'huissier du 12 octobre 2011, COMMISIMPEX a signifié aux sociétés TOTAL HOLDINGS (ELF AQUITAINE) et TOTAL SE l'existence de la Garantie et de la Sentence arbitrale du 3 décembre 2000 qui rendait la Garantie opposable à ces sociétés.

Ces demandes restant sans suite, les 10 octobre 2016 et 26 décembre 2017, COMMISIMPEX a procédé à la signification de la Sentence du 21 janvier 2013, et a signifié également la Garantie à nouveau ; les actes de signification comportaient les mêmes demandes de paiement et de communication d'informations.

Par acte du 14 février 2012, COMMISIMPEX a assigné TOTAL en référé, sur le fondement de l'article 145 du Code de procédure civile, devant le Tribunal de commerce de Nanterre, notamment aux fins d'obtention de divers documents et informations relatifs aux états de production, de redevances, ou encore de quantités d'hydrocarbures liquides transportées des gisements visés par la Garantie.

Par ordonnance du 14 septembre 2012, le Tribunal de commerce de Nanterre n'a pas fait droit aux demandes de COMMISIMPEX, au motif qu'il n'était pas démontré que TOTAL SE et TOTAL HOLDINGS détenaient les documents sollicités, et qu'il était incompétent pour prononcer des mesures d'exécution à l'encontre de TOTAL E&P CONGO, société de droit congolais .


**PROCEDURE**

C'est dans ces circonstances que, par actes d'huissier du 10 octobre et du 7 octobre 2016, délivrés à personne, la SDE COMMISSION IMPORT EXPORT (COMMISIMPEX) fait assigner ELF AQUITAINE et SDE TOTAL ENERGIES E&P CONGO devant ce tribunal, lui demandant de :

*Vu les articles 4 et 2362 alinéa 2 2363 alinéa et 2365 alinéa 1 du Code civil,*
*Vu l'article 6-1 de la Convention de sauvegarde des droits de l'homme et des libertés fondamentales du 4 novembre 1950,*
*Vu l'article 42 du Code de procédure civile,*

- CONDAMNER solidairement ELF AQUITAINE et TEP CONGO à payer à COMMISIMPEX la contrevaleur en euros des sommes dues à cette dernière par la RÉPUBLIQUE DU CONGO au titre de la Sentence de 2000 (soit, au 15 octobre 2016, 118 637 237 FRF (ou 18 086130,19 €), 77 629 786 GBP, 127 778 550 USD et 754 950 523 FCFA, toutes sommes à parfaire des intérêts moratoires qui continueront à courir jusqu'à complet paiement, conformément à la Sentence de 2000) ;
- CONDAMNER solidairement ELF AQUITAINE et TEP CONGO à payer à COMMISIMPEX toutes sommes dont elles sont redevables à l'égard de la RÉPUBLIQUE DU CONGO au titre de l'exploitation des Gisements d'Hydrocarbures, à compter octobre 2016 (date de la seconde signification de la Garantie) à concurrence et jusqu'à extinction de la créance résultant de la Sentence de 2013 (soit, au 15 octobre 2016, une somme de 754 427 785 €, à parfaire des intérêts moratoires qui continueront à courir jusqu'à complet paiement, conformément à la Sentence de 2013) ;

- ENJOINDRE à ELF AQUITAINE et TEP CONGO, solidairement, d'informer COMMISIMPEX - par lettre recommandée et par courriel adressés à son conseil, le cabinet Archipel (dont les coordonnées figurent en tête de la présente assignation) - dans un délai de 24 heures maximum, de toute modification de la Convention d'Etablissement et du CPP susceptible d'affecter l'exploitation des Gisements d'Hydrocarbures ainsi que de toute modification des droits d'ELF AQUITAINE et/ou de TEP CONGO dans les Gisements d'Hydrocarbures et de lui communiquer les documents contractuels correspondants ;
- CONDAMNER solidairement ELF AQUITAINE et TEP CONGO aux entiers dépens ;
- CONDAMNER ELF AQUITAINE et TEP CONGO à payer chacune à la société COMMISIMPEX la somme de 15 000 € au titre de l'article 700 du Code de procédure civile ;
- ORDONNER l'exécution provisoire du jugement à intervenir.

Cette affaire est enregistrée sous le n° 2016 F 02380.

Par actes d'huissier du 16 février 2018, signifié à personne et selon les modalités de l'article 684 du code de procédure civile, COMMISIMPEX assigne respectivement TOTAL SA (devenue SE TOTAL) et LA RÉPUBLIQUE DU CONGO devant ce tribunal, lui demandant :

*Vu les articles 42 et 331 du Code de procédure civile.*
*Vu les articles 2361, 2362, 2363 et 2365 du Code civil.*
*Vu les pièces versées aux débats.*

- DIRE recevable et bien fondée la demande d'intervention forcée de COMMISIMPEX à l'encontre de Total SA et de la République du Congo et joindre la présente intervention à la procédure contre ELF Aquitaine et Total E&P Congo et enrôlée sous le numéro RG 2016 F 02380 ;
- DIRE qu'aux termes de la Garantie en date du 22 décembre 1986, la RÉPUBLIQUE DU CONGO a nanti entre les mains de COMMISIMPEX tous les revenus générés de l'exploitation des quatre gisements d'hydrocarbures exploités à ce jour par le Groupe Total sur son territoire ;
- DIRE que Total SA, Total E&P et la République du Congo sont parties à la Convention d'Établissement en date du 27 octobre 1968 organisant l'exploitation des gisements d'hydrocarbures au Congo ;
- DIRE que conformément à la Convention d'Établissement en date du 27 octobre 1968 et au Code congolais des hydrocarbures, Total SA est codébitrice du paiement par Total E&P et ELF Aquitaine de l'ensemble de leurs dettes au bénéfice de la République du Congo nées de l'exploitation des Quatre Gisements d'hydrocarbures ;
- DIRE que depuis la première signification de la Garantie à Total SA, Total E&P et ELF Aquitaine les 11 et 12 octobre 2011, COMMISIMPEX est créancière de ces sociétés en lieu et place de la République du Congo, à hauteur de 234 346 314 € au titre de la sentence arbitrale du 3 décembre 2000 (somme actualisée au 31 décembre 2017 couverte en euros) ;
- DIRE que depuis la deuxième signification de la Garantie à Total E&P et ELF Aquitaine et Total SA les 7 et 10 octobre 2016 et 26 décembre 2017, COMMISIMPEX est créancière de ces sociétés en lieu et place de la République du Congo, à hauteur de 817 660 891 € au titre de la sentence arbitrale du 21 janvier 2013 (somme actualisée au 31 décembre 2017 couverte en euros) ;

*En conséquence,*

- CONDAMNER *in solidum* Total SA, Total E&P et ELF Aquitaine au paiement de la somme de 431 713 269 USD dont elles se sont acquittées à tort au profit de la RÉPUBLIQUE DU CONGO depuis la première signification de la Garantie avec intérêt au taux légal à compter de la signification du 11 octobre 2011 ;
- CONDAMNER *in solidum* Total SA, Total E&P et ELF Aquitaine à verser à COMMISIMPEX tous les paiements futurs dus à la République du Congo au titre de la Garantie à concurrence du montant de sa créance convertie en euros et arrêtée au 31 juillet 2017 de 1 052 007 205 € et jusqu'à son extinction ;
- ORDONNER la capitalisation des intérêts ;
- CONDAMNER *in solidum* les défenderesses au paiement de la somme de 50 000 € sur le fondement de l'article 700 du Code de procédure civile ;
- CONDAMNER *in solidum* les Défenderesses aux entiers dépens.

Ces dernières assignations sont dénoncées à ELF AQUITAINE et à TOTAL E&P CONGO .

Cette affaire est enregistrée sous le N° 2018 F 00357.

A l'audience du 6 mars 2018, le tribunal décide la jonction des affaires enregistrées sous les N° 2018 F 00357 et 2016 F 02380 qui seront jugées sous le N° 2016 F 02380.

A la suite d'échanges d'écritures, TOTAL HOLDINGS (anciennement ELF AQUITAINE) et TOTAL SE déposent à l'audience du 1er septembre 2021 des conclusions récapitulatives demandant au tribunal de :

- DEBOUTER COMMISIMPEX de ses demandes contre TOTAL SE et TOTAL HOLDINGS SAS,
- CONDAMNER COMMISIMPEX à verser respectivement à TOTAL ENERGIES et TOTAL HOLDINGS SAS précédemment dénommée Elf Aquitaine SA la somme de 500 000 € en application de l'article 700 du Code de procédure civile ainsi qu'en tous les dépens.

A l'audience du 29 septembre 2021, COMMISIMPEX dépose des conclusions en demande N° 7 demandant au tribunal de :

Vu les articles 1231-7,1240 et 1241 du Code civil ;
Vu les lois suisses applicables ;
Vu les lois congolaises applicables *;*
Vu les articles 42, 43, 75 et suivants, 143 et suivants, 263 et suivants, 483, 695 et suivants du Code de procédure civile, ainsi que son article 515 dans sa rédaction antérieure au décret n° 2019-1333 du 11 décembre 2019 ;
In limine litis

- DIRE que l'exception d'incompétence territoriale soulevée par la société TOTAL E&P CONGO S.A. est irrecevable et mal fondée ;
En conséquence,
- REJETER l'exception d'incompétence territoriale soulevée par la société TOTAL E&P CONGO ;

- DIRE que les demandes de la société COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX) sont recevables et bien fondées ;
- DIRE que les exceptions, fins de non-recevoir et demandes des sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A. sont irrecevables et mal fondées

- DEBOUTER les sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A. de l'ensemble de leurs demandes ;
- CONDAMNER *solidairement* les sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A. à verser à la société COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX) prise en la personne de son représentant M. Moshen HOJEIJ, au titre de la garantie consentie par LA RÉPUBLIQUE DU CONGO en date du 22 décembre 1986, le montant de toutes les créances, fiscales ou non fiscales, de LA RÉPUBLIQUE DU CONGO à l'encontre d'une ou de plusieurs des sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO, nées depuis le 11 octobre 2011 (désignées ci-après les « Créances nanties »), que ces créances aient été payées ou non, en nature, en deniers ou en quittances, au titre notamment des revenus de toute nature de LA RÉPUBLIQUE DU CONGO, passés, présents, futurs ou éventuels, provenant ou à provenir, directement ou indirectement, de l'exploitation, sous quelques formes que ce soient, des gisements d'hydrocarbures suivants situés en République du Congo : Likouala, Loango, Tchibouela, Emeraude, Yanga, Sendji et Sendji Compl. incluant toutes leurs extensions et satellites le cas échéant, et ce dans la limite du montant des créances garanties établi à 1 365 494 708 €, en principal et intérêts ;
- FAIRE INTERDICTION aux sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A. de payer à LA RÉPUBLIQUE DU CONGO le montant des Créances nanties nées postérieurement au prononcé du jugement à intervenir jusqu'au complet paiement du montant des créances garanties ;
- ORDONNER le cas échéant aux sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A., de communiquer aux conseils de la société COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX), le 1ER janvier et le 1ER juillet de chaque année, toutes informations ou tous documents notamment en matière financière, comptable ou fiscale, certifiés sincères et exacts par un commissaire aux comptes ou un auditeur externe, relatifs aux montants de toutes les créances, fiscales ou non fiscales, de LA RÉPUBLIQUE DU CONGO à l'encontre d'une ou de plusieurs d'entre elles, nées à compter du jugement à intervenir (désignées ci-après les « Créances nanties Postérieures »), au titre des revenus de toute nature de LA RÉPUBLIQUE DU CONGO, provenant ou à provenir, directement ou indirectement, de l'exploitation, sous quelques formes que ce soient, des gisements d'hydrocarbures suivants situés en République du Congo : Likouala, Loango, Tchibouela, Emeraude, Yanga, Sendji et Sendji Compl. incluant toutes leurs extensions et tous leurs satellites le cas échéant, accompagnés d'une copie certifiée conforme de toutes les déclarations fiscales afférente, jusqu'au complet paiement du montant actualisé des créances garanties ; et ce sous une astreinte provisoire de 500 000 € par infraction constatée ;
- ORDONNER le cas échéant aux sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A. de procéder au versement à la société COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX) prise en la personne de son représentant légal M. Moshen HOJEIJ, du montant des Créances nanties Postérieures, jusqu'au complet paiement du montant des créances garanties ; et ce sous une astreinte provisoire de 150 000 € par jour de retard à compter de l'expiration d'un délai de 30 jours à compter de l'échéance de chacune des dites créances nanties ;

- CONDAMNER *in solidum* les sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A. à verser à la société COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX) prise en la personne de son représentant légal M. Moshen HOJEIJ la somme de 100 000 000 €, sur dommages et intérêts en réparation du préjudice subi du fait de la résistance abusive et de la faute commise par ces sociétés en versant, de mauvaise foi, le montant des Créances nanties passées entre les mains de LA RÉPUBLIQUE DU CONGO ; et sous une astreinte provisoire de 150 000 € par jour de retard à compter de l'expiration d'un délai de 30 jours à compter du prononcé du jugement à intervenir ;
- DIRE que le tribunal de Commerce de Nanterre se réserve le pouvoir de liquider les astreintes prononcées par le jugement à intervenir ;
- CONDAMNER *in solidum* les sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A. à verser à COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX) prise en la personne de son représentant légal M. Moshen HOJEIJ la somme de 750 000 € au titre des frais irrépétibles, sur le fondement de l'article 700 du Code de procédure civile ;
- CONDAMNER *in solidum* les sociétés TOTAL SE, TOTAL HOLDING S.A.S. et TOTAL E&P CONGO S.A. aux entiers dépens ;
- RAPPELER que les condamnations pécuniaires prononcées par le jugement à intervenir emportent intérêts au taux légal, à compter du prononcé du jugement, avec anatocisme ;
- ORDONNER l'exécution provisoire du jugement à intervenir.

A l'audience du 10 novembre 2021, TOTAL HOLDINGS (anciennement ELF AQUITAINE) et TOTAL SE déposent des conclusions récapitulatives réitérant leurs précédentes demandes.

A l'audience du 10 novembre 2021, TOTAL E&P CONGO (anciennement TOTAL E&P CONGO) dépose des conclusions en réponse et récapitulatives demandant au tribunal de :

*Vu l'article 42 al. 2 du Code de procédure civile*
*Vu les articles 1131, 1334, 2078, 2356 et 2357 anciens du Code civil.*
*Vu les articles 3 et 1379 du Code civil*
*Vu les articles 1128, 1326, 1334, 1348, 1277 al. et 2075 du Code civil congolais.*

A titre principal.
- DIRE RECEVABLE l'exception d'incompétence soulevée par TOTAL E&P CONGO ;
- CONSTATER que ni TOTAL HOLDINGS SAS, NI TOTAL SE ne sont une des défenderesses sérieuses au sens de l'article 42 al. 2 du CPC ;
- CONSTATER que la compétence du Tribunal ne peut être retenue sur le fondement du déni de justice ou pour une bonne administration de la justice ;
- DIRE que TOTAL E&P CONGO n'a pas renoncé à l'exception d'incompétence ;
- SE DECLARER INCOMPETENT en faveur des juridictions de la République du Congo, et
  celles de Pointe Noire en particulier ;

A titre subsidiaire :
- CONSTATER que le Tribunal de commerce de Nanterre ne peut intervenir dans les relations fiscales entre TOTAL E&P CONGO et l'État congolais, quant aux sommes venant à être dues à celui-ci pour l'avenir ;

- SE DIRE sans pouvoir juridictionnel pour fixer les dettes de TEP Congo envers la République du Congo et dire irrecevables les demandes de COMMISIMPEX à cet effet.

Sur le fond :
- DEBOUTER COMMISIMPEX de l'ensemble de ses demandes dirigées contre TOTAL E&P CONGO.

En toute hypothèse :
- CONDAMNER COMMISIMPEX à verser la somme de 700.000 € à TOTAL E&P CONGO sur le fondement de l'article 700 du Code de Procédure Civile,
- CONDAMNER COMMISIMPEX aux dépens dont distraction au profit de Maître AMELI.

A l'audience collégiale du 2 février 2022, TOTAL HOLDINGS et TOTAL SE déposent des conclusions récapitulatives réitérant leurs précédentes demandes.

La RÉPUBLIQUE DU CONGO, bien que régulièrement convoquée, ne se présente pas et ne dépose aucune conclusion.

A l'audience collégiale du 2 février 2022, les parties indiquent qu'elles n'ont pas trouvé de solution amiable pour le règlement de leur litige et confirment que les termes de leurs dernières conclusions récapitulatives représentent bien l'intégralité de leurs demandes. Le président clôt les débats et met le jugement en délibéré pour être prononcé par mise à disposition au greffe le 31 mars 2022     conformément aux dispositions de l'article 450 du code de procédure civile.

## MOYENS des PARTIES et MOTIFS de la DECISION

### *SUR LA DEMANDE D'INCOMPETENCE*

**Enoncé des moyens**

**TOTAL E&P CONGO dit** que l'action est intentée par une société de droit congolais, COMMISIMPEX, contre elle-même, qui est également de droit congolais, sur le fondement d'un nantissement censé constitué par la République du Congo sur ses recettes publiques en garantie du prix de travaux publics exécutés dans ce pays ; il s'agit donc d'une affaire qui n'a aucun lien avec la France et qui est interne au Congo ; par conséquent, le tribunal de commerce de Nanterre n'est pas compétent.

Dans ses dernières conclusions **COMMISIMPEX répond** que le tribunal est compétent pour les raisons suivantes :

1. TOTAL E&P CONGO a renoncé à son exception d'incompétence en saisissant le tribunal
   d'une demande au fond ; en effet, l'exception d'incompétence doit être soulevée *in limine litis* et avant toute demande au fond et la demande au fond vaut renonciation à l'exception d'incompétence ; or, TOTAL E&P CONGO a fait délivrer à COMMISIMPEX une sommation de communiquer le 15 avril 2019 et son conseil a écrit une lettre officielle en date du 26 juin 2019 qui n'était dans ses propres termes « *que l'équivalent de conclusions adressées à* [COMMISIMPEX] » dont elle a adressé copie

Décision signée électroniquement conformément à l'article 456 du CPC

au tribunal ; de plus, dans son courrier en date du 26 juin 2019, TOTAL E&P CONGO aborde le fond du dossier sans aucune réserve quant à la compétence du tribunal ; dans ces conditions, cette dernière ne peut plus se prévaloir d'une exception d'incompétence.

2. L'exception d'incompétence ne satisfait pas les exigences de l'article 75 du code de procédure civile ; en effet, cet article prévoit que la partie soulevant l'exception d'incompétence doit, à peine d'irrecevabilité, la motiver et faire connaître devant quelle juridiction elle demande que l'affaire soit portée ; en l'espèce, la désignation des juridictions congolaises ne satisfait pas aux conditions de l'article 75 du code de procédure civile, non pas parce qu'elle ne désigne pas le tribunal spécialement compétent, mais parce qu'elle équivaut à une désignation impossible : les juridictions congolaises ont prononcé la liquidation de COMMISIMPEX, désigné trois syndics en charge de la représenter et ont constaté la compensation de prétendues créances réciproques par une ordonnance du 18 décembre 2014 ; mais les juridictions françaises ont constaté que les décisions rendues au Congo étaient contraires à l'ordre public et ont refusé de les rendre opposables sur le territoire français ; le président du Tribunal de Grande Instance de Paris, saisi par la République du Congo d'une demande de reconnaissance des différents jugements intervenus dans le cadre de la liquidation judiciaire de COMMISIMPEX a, par ordonnance du 16 décembre 2015, conclu à leur contrariété à l'ordre public et à leur inopposabilité sur le territoire français ; cette ordonnance a été confirmée en appel et le pourvoi formé par la République du Congo a été rejeté par la Cour de cassation ; COMMISIMPEX n'est ainsi plus autorisée par les juridictions congolaises à faire valoir ses créances à l'encontre du Congo devant les juridictions congolaises ; dans ces conditions, la désignation des juridictions congolaises par TOTAL E&P CONGO est inefficace et équivaut à une absence de désignation.

3. La compétence du tribunal est prorogée en vertu de l'article 42 alinéa 2 du code de procédure civile ; le tribunal de commerce est compétent, car les conditions de cet article sont remplies et la compétence du Tribunal à l'égard de TOTAL HOLDINGS et TOTAL SE - tous deux débiteurs réels et sérieux - doit être étendue à TOTAL E&P CONGO ; en premier lieu, les demandes formées au fond à l'encontre de TOTAL E&P CONGO (défendeur étranger) et TOTAL HOLDINGS et TOTAL SE (défendeurs d'ancrage) sont connexes et découlent de la mise en œuvre de la Garantie consentie par la République du Congo au profit de COMMISIMPEX ; par ailleurs, le caractère réel et sérieux ne signifie pas que les demandes formulées doivent prospérer devant le juge du fond : le juge qui vérifie le caractère réel et sérieux de la demande visant le défendeur d'ancrage n'a pas à apprécier le bien-fondé de l'action vis-à-vis des défendeurs ; en l'espèce, les demandes formées par COMMISIMPEX à l'encontre de TOTAL HOLDINGS et TOTAL SE présentent un caractère réel et sérieux pour les raisons suivantes :

- ELF AQUITAINE (devenue TOTAL HOLDINGS) est non seulement désignée nommément dans la Garantie, mais elle est également partie à l'acte générateur de la créance nantie par la République du Congo, soit la Convention d'Etablissement ; la Garantie a valablement été signifiée à TOTAL HOLDINGS (ELF AQUITAINE) par voie d'huissier les 12 octobre 2011 et 10 octobre 2016 ; ELF AQUITAINE est signataire des avenants n° 1 à 13 à la Convention d'Etablissement aux termes desquels les « bénéficiaires » demeurent TOTAL E&P CONGO et sa société mère française, ELF AQUITAINE. Ces avenants prennent acte de l'évolution des relations contractuelles entre la République du Congo et le groupe pétrolier et aménagent les modalités de calcul de l'impôt sur les sociétés et de la redevance minière dus à l'État congolais ; l'avenant n° 1 rappelle en son article 3 intitulé « Bénéficiaire de la convention» : « *Les dispositions de la convention seront applicables de plein droit à ELF-ERAP, à la société ELF-Congo [...]* » ; ainsi ELF AQUITAINE, qui succède à ELF-ERAP, est donc indiscutablement bénéficiaire de la Convention d'Établissement ; au titre de l'avenant n°4, ELF AQUITAINE (désormais TOTAL

HOLDINGS) s'est substituée à ELF-ERAP dans les droits et obligations prévus par la Convention d'Établissement et ses avenants antérieurs ; enfin, TOTAL HOLDINGS est partie à l'avenant n° 9 à la Convention d'Etablissement qui vient réorganiser le régime juridique et fiscal applicable à l'exploitation des gisements Emmeraude, Likouala, Yanga-Senji, Tchibouella et Loango ; les revenus d'exploitation de ces gisements sont expressément affectés en garantie de la créance de COMMISIMPEX ; l'article 8 de l'annexe 9 prévoit même le paiement en espèces de la redevance ; ainsi, TOTAL HOLDINGS est partie à l'acte générateur de la créance nantie par la République du Congo (la Convention d'Établissement et ses Avenants) et désignée, dans la Garantie, en qualité de débiteur de la créance nantie ; la Garantie et la Convention d'Etablissement et ses avenants fondant la demande de COMMISIMPEX à l'encontre de TOTAL HOLDINGS, il en résulte que TOTAL HOLDINGS est un codéfendeur réel et sérieux.

- S'agissant de TOTAL SE, l'avenant n° 14 du 7 janvier 2004 à la Convention d'Etablissement précise que par « Convention d'Établissement », il faut entendre « *la convention du 17 octobre 1968 signée entre la République du CONGO et l'Entreprise de Recherche et Activités Pétrolières (aux droits de laquelle est venue la société Elf Aquitaine puis la société TOTAL SE)* [...] » ; en d'autres termes, l'engagement de TOTAL SE résulte de la reprise des engagements d'ELF AQUITAINE au titre de la Convention d'établissement et de ses Avenants ; depuis 2004, TOTAL SE est partie à la Convention d'établissement, acte générateur de la créance nantie par la République du Congo conformément aux termes de la Garantie. TOTAL SE est ainsi « *personnellement intéressée au procès* » et doit être qualifiée de défendeur réel et sérieux.

4. A titre surabondant, une décision d'incompétence entrainerait un déni de justice et un manquement au principe de bonne administration de la justice ; dans ses écritures, TOTAL E&P CONGO demande au tribunal de se déclarer incompétent « *en faveur des juridictions de la République du Congo* » ; or, la désignation est inefficace, car COMMISIMPEX n'est plus en mesure d'agir au Congo ; de ce fait, la compétence des juridictions françaises est fondée sur le risque d'un déni de justice ; comme il a été indiqué supra, COMMISIMPEX est, du fait de sa liquidation et de la compensation intervenues au Congo, considérées sur place comme régulières, mais jugées inopposables en France, dans l'impossibilité juridique de saisir les juridictions congolaises (puisque la loi congolaise lui interdit d'agir en justice au Congo) et s'est donc, à bon droit, tournée vers les juridictions françaises devant lesquelles elle peut valablement poursuivre le recouvrement de sa créance. De plus, le lien de rattachement du présent litige avec la France est patent ; deux des trois codéfendeurs (TOTAL HOLDINGS et TOTAL SE) présents au litige sont des sociétés enregistrées en France ; si TOTAL E&P CONGO est immatriculée au Congo, il est patent que sa direction effective se trouve en France, puisque ses principaux dirigeants déclarent tous exercer leur activité en France ; de plus, les assemblées générales ordinaires de TOTAL E&P CONGO se tiennent en France ; dans la Garantie elle-même, la République du Congo a prévu expressément un lien de rattachement avec la France puisque la République du Congo a élu domicile à « *l'ambassade du Congo à Paris* » et qu'elle a désigné comme représentant devant les tribunaux son ambassadeur à Paris ; enfin, le litige initial entre COMMISIMPEX et la République du Congo présente également des liens de rattachement avec la France notamment avec le choix de l'arbitrage à Paris et du droit français applicable. COMMISIMPEX ajoute que la bonne administration de la justice commande que le tribunal de commerce de Nanterre statue sur l'ensemble des demandes

de COMMISIMPEX formées à l'encontre des sociétés du Groupe TOTAL ; en effet, le contexte factuel est strictement identique pour chacune des actions formées à l'encontre de TOTAL E&P CONGO, TOTAL HOLDINGS et TOTAL SE ; Les actions formées à l'encontre de chacune des sociétés codéfenderesses sont toutes fondées sur les mêmes dispositions contractuelles (la Garantie, la Convention d'Établissement et ses Avenants successifs) ; COMMISIMPEX formule une seule et même demande à l'encontre de ses codéfendeurs : la condamnation solidaire des défenderesses à payer une même somme. Le tribunal de commerce de Nanterre est la juridiction du ressort de TOTAL HOLDINGS, TOTAL SE détenant 85% du capital de sa filiale TOTAL E&P CONGO ; il existerait donc un risque d'éclatement du contentieux et de contrariété de décisions si la demande formée à l'encontre de Total E&P CONGO venait à être jugée par un autre tribunal que le tribunal de commerce de Nanterre.

**TOTAL E&P CONGO réplique que :**

1. L'exception d'incompétence est recevable :
L'inefficacité de la désignation découlerait de ce que COMMISIMPEX, en liquidation judiciaire et représentée par son syndic, ne serait de ce fait plus « *autorisée par les Juridictions congolaises à faire valoir ses créances à l'encontre du Congo devant les Juridictions congolaises* », ce qui rendrait « *inefficace* » l'exception et équivaudrait donc à « *une absence de désignation* » ; mais l'obligation de désignation n'est cependant que celle de désigner la juridiction compétente selon les règles normales de compétence et, en cas de déni de justice, il n'appartient qu'au demandeur de choisir la juridiction de substitution, puisqu'il peut y en avoir plusieurs et le demandeur à l'exception ne peut le faire à sa place.

2. La compétence du Tribunal à l'égard de TOTAL E&P CONGO ne peut être fondée sur la mise en cause de TOTAL HOLDINGS :
   - En premier lieu, ratione temporis, l'article 42 al. 2 ne permet au demandeur d'attraire un défendeur devant le tribunal du lieu où demeure son codéfendeur que si l'instance est unique dès son introduction et la compétence pour des raisons évidentes s'apprécie à la date d'introduction de l'instance ; or, l'assignation visant Elf Aquitaine a été placée seule le 28 octobre 2016 ; ainsi, lors de l'introduction de l'instance, il n'existait qu'un défendeur ; COMMISIMPEX ne peut donc affirmer « *qu'elle avait assigné TEP Congo en même temps qu'une société française contre qui elle disposait d'une action directe et personnelle, à savoir Elf Aquitaine* » ; elle ne peut non plus écrire que « *l'instance est unique depuis son introduction* » puisque l'introduction coïncide avec le placement de l'assignation délivrée à Elf Aquitaine.
   - En second lieu, ratione materiae, COMMISIMPEX invoque la connexité au soutien de la compétence ; ce moyen est inopérant puisque la connexité ne joue, au visa de l'article 357 du code de procédure civile, qu'entre instances relevant toutes de la compétence du même tribunal ; le débat sur la compétence est premier et il en va de même de l'argument tiré d'une bonne administration de la Justice.
   - En troisième lieu, ratione paersonae, il n'est pas possible de rechercher la responsabilité d'ELF AQUITAINE, en qualité de garante coobligée aux côtés de TOTAL E&P CONGO en vertu de la Convention d'Établissement du 17 octobre 1968 liant la République du Congo à ERAP ; pour asseoir la compétence du tribunal, COMMISIMPEX dit que les redevances dues à l'État seraient exigibles sur le fondement de la Convention d'Établissement du 17 octobre 1968 conclue entre la République et l'ERAP, auteur de TOTAL SE et de TOTAL HOLDINGS, qui

seraient de ce fait débitrices ;or, les redevances ne sont pas fondées sur cette Convention mais sur le Code des hydrocarbures congolais qui les régit à son titre VIII et, en ce qui concerne la redevance minière proportionnelle, aux articles 158 et suivants ; de surcroît, comme le démontrent les conclusions déposées le 17 février 2021 par TOTAL SE et TOTAL HOLDINGS , il résulte de la Convention d'Établissement qu'elle ne crée ni obligation de paiement, ni obligation de garantie, ni enfin obligation de solidarité ; en outre, depuis le 7 janvier 2004, date de la conclusion de l'avenant n° 14 à la Convention d'Établissement, ELF AQUITAINE n'est même plus partie à celle-ci ; l'abrogation par l'article 37 de la loi de finances rectificative de la République du Congo pour 2020 confirmée l'article 36 de la loi de finances pour 2021 de la convention d'établissement de 1968 et ses avenants ainsi que de toutes les autres conventions d'établissement conclues par la République du Congo, confirme l'invraisemblance de la thèse de COMMISIMPEX : si la Convention d'Établissement constituait les sociétés mères codébitrices ou garantes de TOTAL E&P CONGO, la République du Congo ne l'aurait pas abrogée ; l'abrogation montre que la convention d'établissement n'avait d'autre but que de protéger ERAP et AGIP contre une instabilité fiscale et non pas de créer des obligations à leur égard ; ELF AQUITAINE n'est redevable d'aucune somme à la République du Congo depuis la création de sa filiale congolaise en 1969 et a *fortiori* depuis 2004 ; d'ailleurs COMMISIMPEX n'a jamais contesté, lors des saisies qu'elle a effectuées entre les mains de TOTAL HOLDINGS y compris le 19 janvier 2021 et le 15 juillet 2021, lesquelles ont toujours été infructueuses, les réponses négatives du tiers saisi. La mise en cause de TOTAL HOLDINGS, anciennement ELF AQUITAINE, est donc artificielle.

3. La compétence du Tribunal à l'égard de TOTAL E&P CONGO ne peut être fondée sur la mise en cause de TOTAL SE :

- La mise en cause tardive de TOTAL SE ne peut, ratione temporis, autoriser l'application de l'article 42 al. 2 CPC : en effet, les assignations délivrées à TOTAL SE en 2018 sont postérieures de plus d'un an à celle délivrée à la concluante en octobre 2016, et ne peuvent donc asseoir la compétence sur cette dernière.
- TOTAL SE n'est pas, ratione personae, un défendeur sérieux : en effet, cette société n'a jamais eu aucune activité en République du Congo ; elle a pris le contrôle d'ELF AQUITAINE en 2000 à une époque où TOTAL E&P CONGO avait depuis longtemps assumé dans son intégralité l'activité pétrolière au Congo ; si TOTAL SE est partie à la Convention d'Établissement depuis l'avenant n° 14 du 7 janvier 2004, il n'existe dans celle-ci aucune obligation de paiement stipulée à sa charge comme cela est démontré par les conclusions déposées par TOTAL SE et TOTAL HOLDINGS ; il résulte de l'article 10 de la Convention d'Établissement et du titre III de l'avenant n° 1 que leur objet est de garantir un régime fiscal, juridique et financier stable au cocontractant de la République qui choisit d'investir en territoire congolais afin que cet investissement soit attractif pour lui et plus sûr ; pour assurer cette stabilité, la Convention et ses avenants fixent les taux des impôts, taxes et redevances mais l'obligation de les payer ne se concrétise que dans les contrats de concession ou de partage de production subséquents avec TEP Congo ; ainsi, la Convention d'Établissement ne crée pas d'obligation à la charge de l'ERAP, puis d'ELF AQUITAINE, puis enfin de TOTAL SE, mais détermine uniquement le régime économique et fiscal applicable.

Décision signée électroniquement conformément à l'article 456 du CPC

4. La compétence du Tribunal ne peut être fondée sur le déni de justice :

- COMMISIMPEX déduit le déni de justice auquel elle serait exposée au Congo dans ses rapports procéduraux avec TOTAL E&P CO NGO de ce que la procédure de liquidation judiciaire qui l'a opposée à la République du Congo a été reconnue frauduleuse par le juge à qui était demandé l'exequatur de la seconde sentence arbitrale ; mais, c'est un déni de justice dans une instance visant TOTAL E&P CONGO qu'il lui faut démontrer ; or, la compétence pour déni de justice n'est concevable que si le demandeur a tenté d'obtenir satisfaction selon les modes le permettant sans avoir à attraire devant une juridiction incompétente un défendeur qui n'en relève pas ; COMMISIMPEX n'a cependant pas tenté de saisir les juridictions congolaises de l'action qu'elle exerce contre TOTAL E&P CONGO, demandé aux organes de la liquidation d'en saisir la justice congolaise, voire tenté de faire désigner un mandataire *ad hoc* pour représenter ses intérêts face aux liquidateurs par hypothèse défaillants ou d'engager des poursuites contre eux ; COMMISIMPEX se borne à indiquer qu'elle refuse d'agir devant les tribunaux congolais parce que, selon elle, ils lui donneront forcément tort ; or, elle ne peut invoquer le déni qu'après l'avoir constaté, c'est-à-dire après avoir tenté d'obtenir justice. Il faut un déni de justice constitué et non la crainte d'un déni de justice pour pouvoir saisir le for incompétent.
- La compétence palliative du for de nécessité est un remède qui doit demeurer exceptionnel sauf à méconnaître le principe d'égalité des États, qui fonde tout le droit international public ; en l'espèce, la souveraineté congolaise serait lésée par une compétence assise sur une décision réputant en bloc frauduleuses les procédures suivies par ses juridictions et ses mandataires de Justice, ce qui constituerait en droit interne un excès de pouvoir.
- De plus, à supposer qu'il existe en effet un danger de déni de justice, les juridictions françaises ne sont pas pour autant ipso facto compétentes : il faut encore que le litige présente avec la France une attache suffisante ; les arguments développés par COMMISIMPEX sur les liens de TOTAL E&P CONGO avec la France sont dépourvus de fondements : le pouvoir de direction de cette société si situe au Congo où elle emploie plus de 1 000 salariés et le fait que certains dirigeants exercent leur activité en France ne suffit pas à créer un attachement avec la France ; d'ailleurs la Cour d'appel de Versailles a déjà constaté en 2003, que le siège de la société est incontestablement au Congo ; enfin, le lien résultant de ce que la République du Congo aurait élu domicile en son ambassade à Paris et aurait confié sa représentation à son ambassadeur à Paris, est trop ténu et artificiel pour créer un rattachement.
- Enfin, si seul un déni de justice devait être attendu des juridictions congolaises, par la demande qu'elle soumet au Tribunal, COMMISIMPEX réclame, non qu'il soit évité, mais que le tribunal en transfère le risque à la concluante ; COMMISIMPEX a en effet pour seul objectif de substituer à son débiteur souverain un tiers facile à exécuter à qui elle entend imposer le paiement de sa créance ; or, le remède au déni subi par une partie ne peut être l'obligation de l'autre de se défendre devant une juridiction incompétente.

5. TOTAL E&P CONGO explique à l'audience collégiale que la sentence arbitrale du 21 janvier 2013 ferait l'objet d'une demande de révision, information non contestée.

**TOTAL SE et de TOTAL HOLDINGS disent que :**

- *« La tardiveté de la mise en cause de TOTAL SE, en février 2018, compromet la pluralité des défendeurs lui donnant prise sur TOTAL E&P CONGO. D'où son insistance depuis ses conclusions du 6 novembre 2018, à démontrer qu'ELF AQUITAINE devenue TOTAL SA resterait partie à la Convention. »*
- Mais, rationae materiae, ni TOTAL SE, ni TOTAL HOLDINGS ne sont débitrices, ni de la République du Congo, ni de COMMISIMPEX.
- TOTAL SE doit être mise hors de cause, puisqu'elle n'a pas absorbé ELF AQUITAINE et que la « garantie » ne fait pas mention de TOTAL SE ; cette dernière ne peut être recherchée dès lors que la « Garantie » ne donne à COMMISIMPEX aucun droit sur les créances que la République du Congo pourrait détenir sur elle ; ELF AQUITAINE devenue TOTAL SA ne peut être recherchée parce que ses liens avec la République du Congo se sont dénoués avant la notification de la « Garantie » ; au surplus la Convention d'Etablissement ne créait aucune obligation de paiement ou de garantie ; en effet l'article 4 de l'avenant n° 1 à cette convention (''engagements du bénéficiaire'') n'énumère, en cumulant les engagements de l'ERAP et de la filiale à créer, que :
  - o l'obligation de l'ERAP de faire participer la République au capital de la filiale ad hoc, celle de la filiale d'employer du personnel congolais, de donner la préférence aux fournisseurs congolais, et de vendre les produits pétroliers par priorité à l'industrie congolaise.
  - o Cette liste ne comprend pas le paiement des redevances puisque l'obligation ne peut naitre que de l'exploitation des gisements et donc des permis d'exploitation

- TOTAL E&P CONGO, seule, extrait depuis 50 ans la totalité de la production congolaise du groupe TOTAL car la République du Congo a exigé, à des fins évidentes de contrôle, que l'exploitation soit le fait d'un cocontractant local comme tel tenu d'avoir son siège dans le pays.

**COMMISIMPEX rétorque que** :

- Les conditions posées par l'article 42 alinéa 2 du code de procédure civile sont respectées puisque l'assignation délivrée à TOTAL E&P CONGO et à ELF AQUITAINE les visent toutes les deux simultanément et ont été enregistrées par le tribunal sous le même numéro d'ordre.
- Si la Convention d'Etablissement du 17 octobre 1968 a été abrogée en 2020, elle a créé des obligations à ses bénéficiaires pendant qu'elle était en vigueur.

**Le tribunal motive ainsi sa décision :**

*SUR SA RECEVABILITE :*

L'article 74 du code de procédure civile dispose que « *les exceptions doivent être soulevées avant toute défense au fond ou fin de non-recevoir….la demande de communication de pièces ne constitue pas une cause d'irrecevabilité des exceptions* ».

L'article 75 du même code dispose que « *s'il est prétendu que la juridiction saisie en première instance ou en appel est incompétente, la partie qui soulève cette exception doit, à peine d'irrecevabilité, la motiver et faire connaître dans tous les cas devant quelle juridiction elle demande que l'affaire soit portée.* » .

La sommation de communiquer des pièces du 15 avril 2019 et la lettre du 26 juin 2019 alléguées par COMMISIMPEX comme des défenses au fond, ne constituent pas une cause d'irrecevabilité de l'exception au visa du deuxième alinéa de l'article 74 du code de procédure civile.

TOTAL E&P CONGO demande au tribunal de se déclarer incompétent en faveur des juridictions de la République du Congo, celles de Pointe Noire en particulier et motive sa prétention par plusieurs moyens .

COMMISIMPEX dit que cette désignation ne satisfait pas aux conditions de l'article 75 du code de procédure civile, non pas parce qu'elle ne désigne pas le tribunal spécialement compétent, mais parce qu'elle équivaut à une désignation impossible.

Mais s'agissant, à ce stade de l'instance, de la recevabilité et non du mérite de l'exception formulée, l'obligation de désignation qui incombe au demandeur à l'exception, n'est que celle de désigner la juridiction compétente selon les règles normales de compétence.

Ainsi, il est établi que l'exception d'incompétence a été soulevée avant toute défense au fond ou fin de non-recevoir, est motivée et désigne la juridiction qui selon TOTALENREGIES E&P CONGO serait compétente ; elle est donc recevable.

*SUR SON MERITE :*

L'article 42 du code de procédure civile dispose que « *la juridiction territorialement compétente est, sauf disposition contraire, celle du lieu où demeure le défendeur.*
*S'il y a plusieurs défendeurs, le demandeur saisit, à son choix, la juridiction du lieu où demeure l'un d'eux.*
*Si le défendeur n'a ni domicile ni résidence connus, le demandeur peut saisir la juridiction du lieu où il demeure ou celle de son choix s'il demeure à l'étranger* ».

Par actes d'huissier de justice du 10 octobre et du 7 octobre 2016, délivrés à personne, COMMISIMPEX a assigné en même temps ELF AQUITAINE devenue TOTAL HOLDINGS et TOTAL ENERGIES E&P CONGO devant ce tribunal.

Par actes d'huissier de justice du 16 février 2018, COMMISIMPEX l'un signifié à personne et l'autre selon les modalités de l'article 684 du code de procédure civile, assigne respectivement TOTAL SA, devenue  TOTAL et la République du Congo devant ce tribunal.

Il résulte de ces assignations que le demandeur attrait devant le tribunal la République du Congo, une société de droit congolais, TOTAL E&P CONGO et deux sociétés immatriculées au RCS du tribunal de commerce de Nanterre, TOTAL HOLDINGS et TOTAL .

L'article 42 al. 2 visé ci-dessus ne permet au demandeur d'attraire un défendeur devant le tribunal du lieu où demeure son codéfendeur que si l'instance est unique dès son introduction ; la compétence s'apprécie à la date d'introduction de l'instance.

Les actes d'huissiers de justice délivrés le 10 et le 7 octobre 2016 assignent en même temps ELF AQUITAINE devenue TOTAL HOLDINGS et TOTAL ENERGIES E&P CONGO pour demander leur condamnation solidaire ; si ces assignations ont été placées à des dates différentes, elles ont été enregistrées sous le même numéro, à savoir le numéro 2016 F 02380 ; TOTAL E&P CONGO ne peut donc soutenir que cette instance ne serait pas unique dès son introduction.

Mais, si les assignations signifiées à ELF AQUITAINE devenue TOTAL HOLDINGS et à TOTAL ENERGIES E&P CONGO introduisent une instance unique à l'égard de ces deux sociétés, les assignations délivrées à TOTAL SA, devenue TOTAL SE, et à la RÉPUBLIQUE DU CONGO sont constitutives d'une autre instance qui a fait l'objet d'une décision de jonction avec celle mentionnée ci-dessus, en date du 6 mars 2018.

Or, la décision de jonction qui ajoute à l'instance d'origine de nouveaux défendeurs ne peut avoir pour effet de modifier a posteriori les règles de compétence de la juridiction sasie.

En outre la prorogation de compétence résultant de l'article 42 deuxième alinéa du code de procédure civile applicable dans l'ordre international ne permet pas d'attraire devant une juridiction française un défendeur demeurant à l'étranger lorsque la demande formulée contre lui et un codéfendeur domicilié en France ne présente pas à l'égard de ce dernier un caractère réel et sérieux, fut-elle connexe à une autre demande formulée contre les mêmes défendeurs.

En l'espèce, COMMISIMPEX doit pouvoir sérieusement prétendre à une action personnelle et directe contre les codéfendeurs domiciliés en France, TOTAL HOLDINGS et TOTAL SE pour qu'il lui soit permis d'assigner devant le tribunal de commerce de Nanterre, la société de droit congolais, TOTAL ENERGIES E&P CONGO .

Au stade actuel de l'instance, le caractère réel et sérieux ne signifie pas que les demandes formulées à l'égard des défendeurs d'ancrage doivent être reconnues au fond ; il appartient seulement au tribunal de vérifier le caractère réel et sérieux de la demande visant les défendeurs d'ancrage sans apprécier le bien-fondé de l'action vis-à-vis desdits défendeurs.

Mais, il appartient à celui qui prétend que les défendeurs qu'il a assignés confèrent au tribunal la compétence pour statuer, d'apporter des éléments suffisants pour permettre à ce tribunal d'apprécier le caractère sérieux desdits défendeurs assignés.

COMMISIMPEX justifie que TOTAL HOLDINGS et TOTAL sont des débiteurs sérieux en se fondant sur plusieurs moyens :

1. Elle soutient d'abord que les demandes adressées aux trois défendeurs sont connexes puisque « le contexte factuel est identique » , que les demandes sont toutes fondées sur les mêmes actes à savoir : la Garantie datée du 22 décembre 1986 et la Convention d'établissement datée du 17  octobre 1968 et sont des demandes à titre solidaire à l'encontre desdits défendeurs.

Mais le tribunal ne saurait apprécier la connexité alléguée sans avoir préalablement statué sur sa compétence.

2. COMMISIMPEX dit ensuite qu'elle dispose des créances incontestables sur la RÉPUBLIQUE DU CONGO ; ces créances sont établies par deux sentences d'arbitrage rendues par la Cour Internationale d'Arbitrage l'une datée du 13 décembre 2000, l'autre

Décision signée électroniquement conformément à l'article 456 du CPC

du 21 janvier 2013 ; cette dernière condamne la République du Congo à lui payer au titre du Protocole du 23 août 2003 la somme de 222 749 598, 82 € plus les intérêts capitalisés au taux de 10 % l'an ; un arrêt de la Cour d'Appel de Paris du 14 octobre 2014 rejette le recours en annulation de cette sentence et un arrêt de la Cour de Cassation du 25 mai 2016 rejette le pourvoi en annulation de la République du Congo ; ces décisions passées en force de chose jugée établissent donc que COMMISIMPEX dispose d'une créance sur la République du Congo .

3. COMMISIMPEX soutient qu'elle peut mobiliser cette créance auprès de TOTAL HOLDINGS et de TOTAL SE à raison des dettes de toute nature que ces deux sociétés ont à l'endroit de la République du Congo ; à cet effet, elle communique au tribunal une Garantie datée du 22 décembre 1986 signée par la CCA et par le Ministre des Finances du CONGO ; l'article I de cette garantie est ainsi rédigé : « *La présente Garantie exécutoire à la demande de COMMISIMPEX et vaudra une instruction permanente de paiement irrévocable et inconditionnelle à [...] ELF et ELF CONGO à concurrence des sommes des marchés, avenants et travaux mentionnés ci-dessus y compris principal et intérêts, frais, accessoires et indemnisations de tout préjudice de retard. En l'occurrence, cette garantie sera opposable à [...] ELF et ELF CONGO ou tout garant, et COMMISIMPEX pourra l'exécuter de plein droit contre tous les biens, actions, parts ou autres droits, notamment les conventions et redevances susmentionnées dans les articles 2 et 3, revenant à la R.P.C. auprès de [...] ELF et ELF CONGO et tout Garant, sans recours ou autorisation préalable. La signature de la R.P.C. sur la présente vaut acceptation sans réserve et consentement définitif de l'exécution sus indiquée de la part de COMMISIMPEX vis-à-vis de [...] ELF et ELF CONGO [...]* » *;* COMMISIMPEX rappelle que cette Garantie a été notifiée à TOTAL HOLDINGS ; le tribunal observe que cette garantie mentionne ELF devenue TOTAL HOLDINGS et ELF CONGO devenue TOTAL E&P CONGO, mais pas d'autres sociétés.

4. Mais pour attraire valablement TOTAL HOLDINGS anciennement ELF AQUITAINE, nommée dans la Garantie, il convient de démontrer que cette dernière est un débiteur sérieux c'est-à-dire qu'elle est débitrice à l'égard de la République du Congo ; à cet effet COMMISIMPEX dit que ELF AQUITAINE, devenue TOTAL HOLDINGS, est partie à la « Convention d'établissement » signée par l'ERAP et par la République du Congo le 17 octobre 1968, approuvée par le Premier Ministre du CONGO le 29 novembre 1968 et publiée au journal officiel de la République du Congo; il est établi que ELF AQUITAINE, devenue TOTAL HOLDINGS a succédé aux droits de l'ERAP ; d'ailleurs, ELF AQUITAINE est signataire de nombreux Avenants à cette Convention d'Etablissement aux termes desquels les « bénéficiaires » sont TOTAL E&P CONGO et sa société mère française, ELF AQUITAINE ; l'Avenant n° 14 du 7 janvier 2004 à la Convention précise que par « Convention d'Établissement », il faut entendre « *la convention du 17 octobre 1968 signée entre la République du CONGO et l'Entreprise de Recherche et Activités Pétrolières (aux droits de laquelle est venue la société Elf Aquitaine puis la société TOTAL SE »)* ; les deux Défenderesses françaises TOTAL HOLDINGS et TOTAL SE sont désignées à l'article 1 de cet Avenant n° 14 **;** ainsi, il est établi que TOTAL HOLDINGS et TOTAL SE sont parties à la Convention d'Etablissement.

5. La Convention d'Etablissement et ses Avenants ont été abrogés par l'article 36 de la loi de Finances de la République du Congo pour 2021 ; mais celle-ci peut avoir exercé des effets pendant sa période de validité à l'égard des parties à la présente instance.

6. **La Convention et ses Avenants sont communiqués au tribunal ; ces textes comportent plusieurs dispositions :**
   a. L'ERAP s'engage :
      i. à créer une filiale de droit congolais, qui deviendra TOTAL E&P CONGO ;
      ii. à engager du personnel au Congo ;
      iii. à vendre du pétrole au Congo ;
   b. La République du Congo s'engage :
      i. à garantir une garantie générale de stabilité des régimes fiscaux et juridique pendant la durée de la Convention ;
      ii. à certains aménagements fiscaux ;
      iii. à des aménagements sur les redevances pétrolières ;
      iv. sur le régime des changes.

   Les annexes à cette Convention précisent les assiettes et les taux d'imposition en vigueur et le régime comptable pour les activités de l'ERAP ; les Avenants modifient les taux et les assiettes du régime fiscal de l'ERAP ; l'article 8.1 de l'Annexe 9 stipule que *« tant qu'il existera une dette de la République du Congo domiciliée sur la fiscalité due par une entité composant le contracteur, cette redevance minière proportionnelle sera versée en espèces par cette entité qui commercialisera de ce fait les quantités d'hydrocarbure liquide correspondantes. A la fin de la domiciliation d'une telle dette et de ses intérêts la redevance minière proportionnelle pourra être payée en nature à la demande de la République du Congo. »* ; ce texte mentionne une dette de la République du Congo qui serait *« domiciliée sur la fiscalité »* mais ne mentionne pas que cette dette soit versée à un tiers autre que la République du Congo.

7. L'examen de ces textes montre qu'ils organisent les relations fiscales, administratives et comptables entre d'une part TOTAL HOLDINGS et TOTAL SE et d'autre part la République du Congo, mais ne génèrent par eux-mêmes aucune dette exigible de l'ERAP et ne comportent aucun engagement de garantie ou de solidarité à la charge de ces deux sociétés.

   Ainsi, il n'est pas démontré que TOTAL HOLDINGS et TOTAL SE aient des dettes exigibles à l'égard de la République du Congo.

   De ce fait, et au vu des pièces livrées au débat, COMMISIMPEX ne démontre pas que TOTAL HOLDINGS et TOTAL SE sont assignés en qualité de débiteurs sérieux des obligations qu'elle allègue.

8. Le tribunal rappelle en outre que TOTAL SE a été assignée le 16 février 2018 alors que les deux autres défendeurs ont été assignés le 7 et le 10 octobre 2016 ; comme il a été rappelé ci-dessus, la décision de jonction ne peut avoir pour effet de modifier a posteriori les règles de compétences ; en conséquence l'assignation signifiée à TOTAL SE ne peut justifier à elle seule, la compétence du tribunal.

9. COMMISIMPEX dit qu'elle risque de subir un déni de justice si le tribunal décline sa compétence mais elle ne démontre pas avoir saisi et épuisé toutes les voies de justice tant au Congo que devant la Chambre Internationale de règlement des différends relatifs aux investissements (CIRDI) ; il est rappelé que la liquidation judiciaire de COMMISIMPEX prononcée au Congo ne fait pas disparaitre la personnalité morale de

Décision signée électroniquement conformément à l'article 456 du CPC

cette société et cette dernière ne justifie pas avoir fait appel de cette décision de liquidation ; ainsi le déni de justice allégué est insuffisamment démontré.

Le tribunal observe en outre que la compétence éventuelle d'un tribunal français pour statuer sur un différend opposant des personnes morales de droit étranger suppose un lien de rattachement suffisant avec la France ; à cet égard, il n'est pas contesté que TOTAL E&P CONGO n'a aucune activité en France et n'a pas d'intérêt en France du fait de son activité ; le fait que des administrateurs de TOTAL E&P CONGO soient domiciliés en France, que son capital soit en partie détenu par TOTAL SE et que certaines de ses assemblées se soient tenues en France ne confère pas à cette société la qualité de justiciable devant les tribunaux français.

Enfin, l'intérêt d'une bonne administration de la justice implique un constat de connexité qui, comme il a été indiqué ci-dessus, ne peut être décidé par le tribunal si celui-ci n'a pas préalablement statué sur sa compétence.

Ainsi, la compétence du tribunal ne peut être fondée sur le déni de justice allégué.

Il résulte des constats et des décisions mentionnés ci-dessus que la compétence du tribunal pour juger d'un différend qui oppose COMMISIMPEX à TOTAL E&P CONGO et à la RÉPUBLIQUE DU CONGO n'est pas établie.

En conséquence, le tribunal se déclarera incompétent et, s'agissant d'un différend n'opposant plus que des sociétés de droit étranger et la République du Congo, renverra les parties à mieux se pourvoir.

### *SUR L'APPLICATION DE L'ARTICLE 700 DU CPC ET LES DÉPENS*

Attendu que pour faire reconnaître ses droits, TOTAL E&P CONGO, TOTAL HOLDINGS et TOTAL SE ont dû exposer des frais non compris dans les dépens qu'il serait inéquitable de laisser à leur charge, le tribunal, compte tenu des éléments d'appréciation en sa possession, condamnera COMMISIMPEX à leur payer chacune la somme de 100 000 € au titre de l'article 700 du code de procédure civile, déboutant pour le surplus et condamnera COMMISIMPEX qui succombe aux entiers dépens.

## PAR CES MOTIFS

Le tribunal après en avoir délibéré, statuant publiquement par un jugement contradictoire en premier ressort :

- Se déclare incompétent et renvoie les parties à mieux se pourvoir.
- Condamne la SDE COMMISIONS IMPORT EXPORT (COMMISIMPEX) à payer à la SAS TOTAL HOLDINGS, à la SE TOTAL et à la SDE TOTAL E&P CONGO la somme de 100 000 €, chacune, au titre de l'article 700 du CPC.

Décision signée électroniquement conformément à l'article 456 du CPC

- Condamne la SDE COMMISIONS IMPORT EXPORT (COMMISIMPEX) aux dépens.

Liquide les dépens du Greffe à la somme de 179,04 euros, dont TVA   29,84 euros.

Délibéré par Messieurs Jean-Jacques DELAPORTE, président de l'audience collégiale, Antoine ROUSSELIN et Laurent PITET.

Le présent jugement est mis à disposition au greffe de ce Tribunal, les parties en ayant été préalablement avisées verbalement lors des débats dans les conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

La minute du jugement est signée électroniquement par le Président du délibéré et le Greffier.