# Exhibit 19

Decision signed electronically in accordance with Article 456 of the CPC

## COMMERCIAL COURT OF NANTERRE

### JUDGMENT

### ISSUED BY THE CLERK'S OFFICE ON MARCH 31, 2022 3rd CHAMBER

### PLAINTIFF

SDE COMMISSIONS IMPORT EXPORT (COMMISIMPEX) 86 av Foch BP 1244, Brazzaville    REPUBLIC OF CONGO represented by SCP HUVELIN et Associés 19 Rue D ANJOU 75008 PARIScabinet@scphuvelin.com and by Richard WILLEMANT Richard CABINET FERAL-SCHUHL/SAINTE-MARIE    24 RUE ERLANGER 75016 PARIS

### DEFENDANTS

SAS TOTALENERGIES    HOLDINGS FORMERLY    ELF AQUITAINE 2 Pl Jean Millier la Défense 6 Tour Coupole 92400 COURBEVOIE
represented by Nicole DELAY-PEUCH, attorney, 15 Rue Monsigny 75002 PARIScontact@delaypeuch.fr and by Georges JOURDE, 171 BOULEVARD HAUSSMANN 75008 PARIS

SDE TOTALENERGIES E § P CONGO EX TOTAL E &amp; P CONGO av Poincaré BP 761, Pointe Noire    REPUBLIC OF CONGO
represented by François Farhad AMELI, attorney  264 Rue DU FG ST HONORE 75008 PARIS

SA TOTAL 2 Pl Jean Millier Tour Coupole La Défense 6 92400 COURBEVOIE
represented by Nicole DELAY-PEUCH, attorney 15 Rue Monsigny 75002 PARIScontact@delaypeuch.fr and by Georges JOURDE 171 BOULEVARD HAUSSMANN 75008 PARIS

SDE LA REPUBLIQUE DU CONGO    BP 2083 bd Dénis Sassou Nguesso &amp; ave du Cardinal E Biayenda Brazzaville    REPUBLIC OF CONGO
not appearing

ON FEBRUARY 2, 2022, THE COURT ORDERED THE CLOSING OF THE DEBATES FOR THE JUDGMENT TO BE DELIVERED BY SUBMISSION TO THE CLERK'S OFFICE ON MARCH 31, 2022, AFTER DELIBERATION.

Decision signed electronically in accordance with Article 456 of the CPC

## STATEMENT OF FACTS

SDE COMMISSION IMPORT EXPORT, hereinafter COMMISIMPEX, is a Congolese company specializing in public works; it was founded by Mr. Mohsin Mohammed HAJAIJ, or HOJEIJ, an Anglo-Lebanese businessman.
SDE TOTAL E&P CONGO, hereinafter TOTAL E&P CONGO, is a company incorporated under Congolese law.
SE TOTAL, hereinafter referred to as TOTAL SA or TOTAL SE, was formerly known as TOTAL SA. SAS TOTAL HOLDINGS, hereinafter referred to as TOTAL HOLDINGS, was formerly known as ELF AQUITAINE.

Between 1984 and 1986, COMMISIMPEX carried out major public works contracts to meet the needs of the Republic of Congo.

To secure payment for the work, the Republic of Congo granted COMMISIMPEX a pledge on revenues to be derived from the exploitation of certain foreign hydrocarbon deposits: thus, on December 22, 1986, the Republic of Congo, represented by the Ministry of Finance and Budget, and the Caisse Congolaise d'Amortissement (CCA) granted a guarantee, hereinafter referred to as the "Guarantee," "*to enable COMMISIMPEX (...) to secure the necessary financing for the completion and execution of the contracts and amendments for works and supplies.*" The "Guarantee" provided for an irrevocable commitment by the Republic of Congo to pledge the revenues it derived from the exploitation of hydrocarbon deposits.

COMMISIMPEX negotiated a protocol on October 14, 1992, with the Republic of Congo for the payment of its claims; as this agreement was not implemented, following multiple proceedings, COMMISIMPEX obtained a ruling against the Republic of Congo for the payment of sums owed to it, under the terms of two arbitration awards, one dated December 3, 2000, and the other dated January 21, 2013; Following appeals by the Republic of Congo, the latter award was enforced in France by order of the President of the Paris Regional Court on February 13, 2013.
These two arbitration awards were notified with the Guarantee to TOTAL E&P CONGO, ELF AQUITAINE, and TOTAL SE.

As these awards have not been enforced, the total claim amounts to €1,371,902,024 in principal and interest. The amount of this claim is not the subject of the present proceedings.

COMMISIMPEX was placed in liquidation by the Brazzaville Commercial Court in October 2012.
The president of the Paris Regional Court declared this liquidation decision unenforceable in France, and this order was upheld by the Paris Court of Appeal on December 18, 2014; the Republic of Congo's appeal was rejected by the Court of Cassation.
On July 30, 2015, the Federal District Court of Columbia (USA) ruled that the decision to liquidate COMMISIMPEX was not "*the product of a fair trial.*"

A tax adjustment of €1.2 million was notified to COMMISIMPEX by the Congolese authorities on March 19, 2014.

Decision signed electronically in accordance with Article 456 of the CPC

By bailiff's writs dated October 12, 2011, COMMISIMPEX notified TOTAL HOLDINGS (ELF AQUITAINE) and TOTAL SE of the existence of the Guarantee and the Arbitration Award of December 3, 2000, which made the Guarantee enforceable against these companies.

As these requests were not followed up, on October 10, 2016, and December 26, 2017, COMMISIMPEX served the Award of January 21, 2013, and also served the Guarantee again; the service documents contained the same requests for payment and disclosure of information.

By deed dated February 14, 2012, COMMISIMPEX brought summary proceedings against TOTAL before the Commercial Court of Nanterre, pursuant to Article 145 of the Code of Civil Procedure, in particular for the purpose of obtaining various documents and information relating to production statements, royalties, and quantities of liquid hydrocarbons transported from the deposits covered by the Guarantee.

By order of September 14, 2012, the Nanterre Commercial Court dismissed COMMISIMPEX's requests on the grounds that it had not been demonstrated that TOTAL SE and TOTAL HOLDINGS held the requested documents and that it lacked jurisdiction to order enforcement measures against TOTAL E&amp;P CONGO, a company incorporated under Congolese law.

## **PROCEEDINGS**

It is in these circumstances that, by writs of summons dated October 10 and October 7, 2016, delivered in person, SDE COMMISSION IMPORT EXPORT (COMMISIMPEX) has summoned ELF AQUITAINE and SDE TOTAL ENERGIES E&amp;P CONGO before this court, requesting that it:

*Pursuant to Articles 4 and 2362, paragraph 2, 2363, paragraph, and 2365, paragraph 1, of the Civil Code,*
*Considering Article 6-1 of the Convention for the Protection of Human Rights and Fundamental Freedoms of November 4, 1950,*
*Having regard to Article 42 of the Code of Civil Procedure,*

- ORDER ELF AQUITAINE and TEP CONGO jointly and severally to pay COMMISIMPEX the equivalent in euros of the sums owed to the latter by the REPUBLIC OF CONGO under the 2000 Award (i.e., as of October 15, 2016, 118,637,237 FRF (or €18,086,130.19), 77,629,786 GBP, 127,778,550 USD, and 754,950 523,000 CFA francs, all sums to be increased by default interest which shall continue to accrue until full payment, in accordance with the 2000 Award);
- ORDER ELF AQUITAINE and TEP CONGO jointly and severally to pay COMMISIMPEX all sums owed by them to the REPUBLIC OF CONGO in respect of the exploitation of hydrocarbon deposits, as of October 2016 (date of the second service of the Guarantee) up to the amount of the debt resulting from the 2013 Award (i.e., as of October 15, 2016, a sum of €754,427,785, plus default interest which will continue to accrue until full payment, in accordance with the 2013 Award);

Decision signed electronically in accordance with Article 456 of the CPC

- ORDER ELF AQUITAINE and TEP CONGO, jointly and severally, to inform COMMISIMPEX - by registered letter and email addressed to its counsel, Archipel (whose contact details appear at the top of this summons) - within a maximum of 24 hours, of any amendment to the Establishment Agreement and the CPP that may affect the exploitation of the Hydrocarbon Deposits, as well as any amendment to the rights of ELF AQUITAINE and/or TEP CONGO in the Hydrocarbon Deposits, and to provide it with the corresponding contractual documents;
- ORDER ELF AQUITAINE and TEP CONGO jointly and severally to pay all costs;
- ORDER ELF AQUITAINE and TEP CONGO to each pay COMMISIMPEX the sum of €15,000 pursuant to Article 700 of the Code of Civil Procedure;
- ORDER the provisional enforcement of the judgment to be rendered.

This case is registered under No. 2016 F 02380.

By bailiff's writ dated February 16, 2018, served in person and in accordance with the provisions of Article 684 of the Code of Civil Procedure, COMMISIMPEX summons TOTAL SA (now SE TOTAL) and THE REPUBLIC OF CONGO before this court, requesting:

*Having regard to Articles 42 and 331 of the Code of Civil Procedure. Having regard to Articles 2361, 2362, 2363, and 2365 of the Civil Code. Having regard to the documents submitted for consideration.*

- DECLARE COMMISIMPEX's application for compulsory intervention against Total SA and the Republic of Congo admissible and well founded, and join this intervention to the proceedings against ELF Aquitaine and Total E&amp;P Congo, registered under number RG 2016 F 02380;
- DECLARE that, under the terms of the Guarantee dated December 22, 1986, the REPUBLIC OF CONGO has pledged to COMMISIMPEX all revenues generated from the exploitation of the four hydrocarbon deposits currently operated by the Total Group on its territory;
- DECLARE that Total SA, Total E&P, and the Republic of Congo are parties to the Establishment Agreement dated October 27, 1968, organizing the exploitation of hydrocarbon deposits in Congo;
- DECLARE that, in accordance with the Establishment Agreement dated October 27, 1968, and the Congolese Hydrocarbons Code, Total SA is jointly liable for the payment by Total E&amp;P and ELF Aquitaine of all their debts to the Republic of Congo arising from the exploitation of the Four Hydrocarbon Fields;
- DECLARE that since the first notification of the Guarantee to Total SA, Total E&P, and ELF Aquitaine on October 11 and 12, 2011, COMMISIMPEX has been a creditor of these companies in place of the Republic of Congo, in the amount of €234,346,314 pursuant to the arbitration award of December 3, 2000 (amount updated as of December 31, 2017, covered in euros);
- STATE that since the second notification of the Guarantee to Total E&P and ELF Aquitaine and Total SA on October 7 and 10, 2016, and December 26, 2017, COMMISIMPEX is a creditor of these companies in place of the Republic of Congo, in the amount of €817,660,891 pursuant to the arbitration award of January 21, 2013 (amount updated as of December 31, 2017, covered in euros);

Decision signed electronically in accordance with Article 456 of the CPC

*Consequently,*

- ORDER Total SA, Total E&amp;P, and ELF Aquitaine *jointly and severally* to pay the sum of USD 431,713,269, which they wrongfully paid to the REPUBLIC OF CONGO since the first notification of the Guarantee, with interest at the legal rate from the date of notification on October 11, 2011;
- ORDER Total SA, Total E&P, and ELF Aquitaine *jointly and severally* to pay COMMISIMPEX all future payments due to the Republic of Congo under the Guarantee up to the amount of its claim converted into euros and set at €1,052,007,205 as of July 31, 2017, until its extinction;
- ORDER the capitalization of interest;
- ORDER the defendants *jointly and severally* to pay the sum of €50,000 pursuant to Article 700 of the Code of Civil Procedure;
- ORDER the defendants *jointly and severally* to pay all costs.

These latest summonses have been served on ELF AQUITAINE and TOTAL E&P CONGO. This

case is registered under No. 2018 F 00357.

At the hearing on March 6, 2018, the court decided to join the cases registered under Nos. 2018 F 00357 and 2016 F 02380, which will be heard under No. 2016 F 02380.

Following an exchange of written submissions, TOTAL HOLDINGS (formerly ELF AQUITAINE) and TOTAL SE filed summary conclusions at the hearing on September[1,] 2021, asking the court to:

- DISMISS COMMISIMPEX's claims against TOTAL SE and TOTAL HOLDINGS SAS,
- ORDER COMMISIMPEX to pay TOTAL ENERGIES and TOTAL HOLDINGS SAS, formerly known as Elf Aquitaine SA, the sum of €500,000 pursuant to Article 700 of the Code of Civil Procedure, as well as all costs.

At the hearing on September 29, 2021, COMMISIMPEX filed conclusions in claim No. 7 asking the court to:


Having regard to Articles 1231-7, 1240, and 1241 of
the Civil Code; Having regard to the applicable
Swiss laws;
Considering the applicable Congolese laws*;*
Having regard to Articles 42, 43, 75 et seq., 143 et seq., 263 et seq., 483, 695 et seq. of the Code of Civil Procedure, as well as Article 515 thereof in its version prior to Decree No. 2019-1333 of December 11, 2019;
In limine litis

- DECLARE that the objection of lack of territorial jurisdiction raised by TOTAL E&P CONGO S.A. is inadmissible and unfounded;
Consequently,
- REJECT the objection of lack of territorial jurisdiction raised by TOTAL E&P CONGO;

Decision signed electronically in accordance with Article 456 of the CPC

- DECLARE that the claims of COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX) are admissible and well-founded;
- DECLARE that the objections, motions to dismiss, and claims of TOTAL SE, TOTAL HOLDING S.A.S., and TOTAL E&P CONGO S.A. are inadmissible and unfounded

- DISMISS the claims of TOTAL SE, TOTAL HOLDING S.A.S. and TOTAL E&P CONGO S.A. of all their claims;
- ORDER TOTAL SE, TOTAL HOLDING S.A.S. and TOTAL E&P CONGO S.A. *jointly and severally* to pay COMMISSION IMPORT EXPORT
  S.A. (COMMISIMPEX), represented by Mr. Moshen HOJEIJ, under the guarantee granted by THE REPUBLIC OF CONGO on December 22, 1986, the amount of all claims, whether tax-related or not, by THE REPUBLIC OF CONGO against one or more of the companies TOTAL SE, TOTAL HOLDING S.A.S. and TOTAL E&amp;P CONGO, arising since October 11, 2011 (hereinafter referred to as the "Pledged Claims"), whether or not these claims have been paid, in kind, in cash or in receipts, in particular in respect of the Republic of Congo's income of any kind, past, present, future or potential, arising or to arise, directly or indirectly, from the exploitation, in any form whatsoever, of the following hydrocarbon deposits located in the Republic of Congo: Likouala, Loango, Tchibouela, Emeraude, Yanga, Sendji and Sendji Compl., including all their extensions and satellites, if any, up to the limit of the amount of the secured claims set at €1,365,494,708, in principal and interest;
- PROHIBIT TOTAL SE, TOTAL HOLDING S.A.S. and
  TOTAL E&amp;P CONGO S.A. from paying the REPUBLIC OF CONGO the amount of the secured claims arising after the judgment is handed down until the secured claims have been paid in full;
- ORDER, where applicable, TOTAL SE, TOTAL HOLDING S.A.S. and TOTAL E&amp;P CONGO S.A. to communicate to the counsel of COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX) on January 1 and January 1
  July of each year, all information or documents, particularly those relating to financial, accounting, or tax matters, certified as true and accurate by an auditor or external auditor, relating to the amounts of all tax and non-tax claims of the REPUBLIC OF CONGO against one or more of them, accrued as of the date of the judgment to be rendered (hereinafter referred to as the "Subsequent Secured Claims"), in respect of income of any kind of THE REPUBLIC OF CONGO, derived or to be derived, directly or indirectly, from the exploitation, in any form whatsoever, of the following hydrocarbon deposits located in the Republic of Congo: Likouala, Loango, Tchibouela, Emeraude, Yanga, Sendji and Sendji Compl., including all their extensions and satellites, if any, accompanied by a certified copy of all related tax returns, until full payment of the discounted amount of the secured claims; this shall be subject to a provisional penalty of €500,000 per violation found;
- ORDER, where applicable, TOTAL SE, TOTAL HOLDING S.A.S., and TOTAL E&P CONGO S.A. to pay COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX), represented by its legal representative Mr. Moshen HOJEIJ, the amount of the Subsequent Secured Claims, until the secured claims have been paid in full; and this under a provisional penalty of €150,000 per day of delay from the expiry of a period of 30 days from the due date of each of the said secured claims;

Decision signed electronically in accordance with Article 456 of the CPC

- ORDER TOTAL SE, TOTAL HOLDING S.A.S. and TOTAL E&P CONGO S.A. *jointly* and seve*rally* to pay COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX), represented by its legal representative Mr. Moshen HOJEIJ, the sum of €100,000,000 in damages to compensate for the harm suffered as a result of the abusive resistance and misconduct of these companies in paying, in bad faith, the amount of the secured claims to the REPUBLIC OF CONGO; and under a provisional penalty of €150,000 per day of delay from the expiry of a period of 30 days from the date of the judgment to be rendered;
- DECLARE that the Commercial Court of Nanterre reserves the right to liquidate the penalties imposed by the judgment to be rendered;
- ORDER TOTAL SE, TOTAL HOLDING S.A.S. and TOTAL E&P CONGO S.A. *jointly* and severally to pay COMMISSION IMPORT EXPORT S.A. (COMMISIMPEX), represented by its legal representative Mr. Moshen HOJEIJ, the sum of €750,000 in non-recoverable costs, pursuant to Article 700 of the Code of Civil Procedure;
- ORDER TOTAL SE, TOTAL HOLDING S.A.S. and TOTAL E&P CONGO S.A. *jointly* and severally to pay all costs;
- REMIND that the financial penalties imposed by the judgment to be rendered shall bear interest at the legal rate, starting from the date of the judgment, with compound interest ;
- ORDER the provisional enforcement of the judgment to be rendered.

At the hearing on November 10, 2021, TOTAL HOLDINGS (formerly ELF AQUITAINE) and TOTAL SE filed summary conclusions reiterating their previous requests.

At the hearing on November 10, 2021, TOTAL E&P CONGO (formerly TOTAL E&P CONGO) filed its response and summary conclusions asking the court to:

*Pursuant to Article 42(2) of the Code of Civil Procedure*
*Having regard to Articles 1131, 1334, 2078, 2356, and 2357 of the former*
*Civil Code. Having regard to Articles 3 and 1379 of the Civil Code*
*Pursuant to Articles 1128, 1326, 1334, 1348, 1277 para. and 2075 of the Congolese Civil Code.*

As a main point.
- DECLARE ADMISSIBLE the objection of lack of jurisdiction raised by TOTAL E&P CONGO ;
- FIND that neither TOTAL HOLDINGS SAS nor TOTAL SE are serious defendants within the meaning of Article 42(2) of the CPC;
- FIND that the Court does not have jurisdiction on the basis of denial of justice or for the proper administration of justice;
- DECLARE that TOTAL E&P CONGO has not waived the objection of lack of jurisdiction;
- DECLARES ITSELF INCOMPETENT in favor of the courts of the Republic of Congo, and those of Pointe Noire in particular; In
the alternative:
- FIND that the Commercial Court of Nanterre cannot intervene in the tax relations between TOTAL E&P CONGO and the Congolese State with regard to sums that may be owed to the latter in the future;

- DECLARE that it has no jurisdiction to determine TEP Congo's debts to the Republic of Congo and declare COMMISIMPEX's claims in this regard inadmissible.

On the merits:
- DISMISS COMMISIMPEX'S claims against TOTAL E&P CONGO in their entirety.

In any event:
- ORDER COMMISIMPEX to pay the sum of €700,000 to TOTAL E&P CONGO on the basis of Article 700 of the Code of Civil Procedure,
- ORDER COMMISIMPEX to pay the costs, including those incurred by Maître AMELI.

At the collegiate hearing on February 2, 2022, TOTAL HOLDINGS and TOTAL SE filed summary conclusions reiterating their previous claims.

The REPUBLIC OF CONGO, although duly summoned, did not appear and did not submit any conclusions.

At the collegiate hearing on February 2, 2022, the parties indicated that they had not reached an amicable settlement of their dispute and confirmed that the terms of their latest summary conclusions fully represented their claims. The president closed the proceedings and reserved judgment, to be delivered by making it available at the court registry on March 31, 2022    , in accordance with the provisions of Article 450 of the Code of Civil Procedure.

## ARGUMENTS OF THE PARTIES AND GROUNDS FOR THE DECISION

### *ON THE MOTION TO DISMISS FOR LACK OF JURISDICTION*

**Statement of arguments**

**TOTAL E&P CONGO states** that the action is being brought by a Congolese company, COMMISIMPEX, against itself, which is also a Congolese company, on the basis of a pledge allegedly made by the Republic of Congo on its public revenues as security for the price of public works carried out in that country; it is therefore a case that has no connection with France and is internal to Congo; consequently, the Commercial Court of Nanterre does not have jurisdiction.

In its latest conclusions, **COMMISIMPEX responds** that the court has jurisdiction for the following reasons:

1. TOTAL E&amp;P CONGO waived its objection to jurisdiction by bringing the case before the court
   with a claim on the merits; in fact, the objection to jurisdiction must be raised *in limine litis* and before any claim on the merits, and the claim on the merits constitutes a waiver of the objection to jurisdiction; however, TOTAL E&amp;P CONGO served COMMISIMPEX with a summons to disclose on April 15, 2019, and its counsel wrote an official letter dated June 26, 2019, which was, in its own words, "*only the equivalent of conclusions addressed to [*COMMISIMPEX*],"* a copy of which it sent

in court; furthermore, in its letter dated June 26, 2019, TOTAL E&P CONGO addresses the merits of the case without any reservation as to the jurisdiction of the court; under these circumstances, the latter can no longer invoke an objection of lack of jurisdiction.

2. The objection of lack of jurisdiction does not satisfy the requirements of Article 75 of the Code of Civil Procedure; indeed, this article provides that the party raising the objection of lack of jurisdiction must, on pain of inadmissibility, state the grounds for the objection and indicate before which court it requests that the case be brought; in this case, the designation of the Congolese courts does not satisfy the conditions of Article 75 of the Code of Civil Procedure, not because it does not designate the court with special jurisdiction, but because it amounts to an impossible designation: the Congolese courts ordered the liquidation of COMMISIMPEX, appointed three trustees to represent it, and noted the offsetting of alleged reciprocal claims by an order dated December 18, 2014; however, the French courts found that the decisions rendered in Congo were contrary to public policy and refused to make them enforceable on French territory; the president of the Paris District Court, to whom the Republic of Congo had submitted a request for recognition of the various judgments handed down in the context of the judicial liquidation of COMMISIMPEX, concluded in an order dated December 16, 2015, that they were contrary to public policy and unenforceable on French territory; This order was upheld on appeal and the appeal lodged by the Republic of Congo was dismissed by the Court of Cassation. COMMISIMPEX is therefore no longer authorized by the Congolese courts to assert its claims against Congo before the Congolese courts. Under these circumstances, the designation of the Congolese courts by TOTAL E&P CONGO is ineffective and amounts to a failure to designate a court.

3. The jurisdiction of the court is extended pursuant to Article 42, paragraph 2, of the Code of Civil Procedure; the Commercial Court has jurisdiction because the conditions of that article are met and the jurisdiction of the Court with regard to TOTAL HOLDINGS and TOTAL SE—both of which are real and serious debtors—must be extended to TOTAL E&P CONGO; firstly, the claims made on the merits against TOTAL E&P CONGO (foreign defendant) and TOTAL HOLDINGS and TOTAL SE (anchor defendants) are related and arise from the implementation of the Guarantee granted by the Republic of Congo to COMMISIMPEX; Furthermore, the genuine and serious nature of the claims does not mean that the claims made must be successful before the trial judge: the judge who verifies the genuine and serious nature of the claim against the anchor defendant does not have to assess the merits of the action against the defendants. in this case, the claims made by COMMISIMPEX against TOTAL HOLDINGS and TOTAL SE are genuine and serious for the following reasons:
   - ELF AQUITAINE (now TOTAL HOLDINGS) is not only named in the Guarantee, but is also a party to the instrument giving rise to the claim secured by the Republic of Congo, namely the Establishment Agreement; The Guarantee was validly served on TOTAL HOLDINGS (ELF AQUITAINE) by bailiff on October 12, 2011, and October 10, 2016. ELF AQUITAINE is a signatory to amendments nos. 1 to 13 to the Establishment Agreement, under which the "beneficiaries" remain TOTAL E&P CONGO and its French parent company, ELF AQUITAINE. These amendments take note of the evolution of the contractual relations between the Republic of Congo and the oil group and adjust the methods for calculating the corporate income tax and mining royalties owed to the Congolese State; amendment No. 1 states in Article 3, entitled "Beneficiary of the agreement": "*The provisions of the agreement shall be automatically applicable to ELF-ERAP, to the company ELF-Congo [...]*"; thus ELF AQUITAINE, which succeeds ELF-ERAP, is indisputably the beneficiary of the Establishment Agreement; under amendment No. 4, ELF AQUITAINE (now TOTAL

HOLDINGS) replaced ELF-ERAP in the rights and obligations provided for in the Establishment Agreement and its previous amendments; Finally, TOTAL HOLDINGS is a party to amendment No. 9 to the Establishment Agreement, which reorganizes the legal and tax regime applicable to the exploitation of the Emmeraude, Likouala, Yanga-Senji, Tchibouella, and Loango fields; the operating revenues from these fields are expressly allocated as security for COMMISIMPEX's claim; Article 8 of Appendix 9 even provides for the payment of royalties in cash; thus, TOTAL HOLDINGS is a party to the instrument giving rise to the claim secured by the Republic of Congo (the Establishment Agreement and its Amendments) and is designated in the Guarantee as the debtor of the secured claim; the Guarantee and the Establishment Agreement and its amendments form the basis of COMMISIMPEX's claim against TOTAL HOLDINGS, with the result that TOTAL HOLDINGS is a real and serious co-defendant.

- With regard to TOTAL SE, amendment no. 14 of January 7, 2004 to the Establishment Agreement specifies that "Establishment Agreement" refers to "*the agreement of October 17, 1968 signed between the Republic of CONGO and the Petroleum Research and Activities Company (to which Elf Aquitaine and then TOTAL SE are the successors) [...]*"; in other words, TOTAL SE's commitment results from the takeover of ELF AQUITAINE's commitments under the Establishment Agreement and its Amendments; since 2004, TOTAL SE has been a party to the Establishment Agreement, the instrument giving rise to the claim secured by the Republic of Congo in accordance with the terms of the Guarantee. TOTAL SE therefore has *a "personal interest in the proceedings"* and must be considered a real and serious defendant.

4. Furthermore, a decision of lack of jurisdiction would result in a denial of justice and a breach of the principle of proper administration of justice; in its pleadings, TOTAL E&P CONGO asks the court to declare itself incompetent "*in favor of the courts of the Republic of Congo*"; However, the designation is ineffective because COMMISIMPEX is no longer able to act in Congo; as a result, the jurisdiction of the French courts is based on the risk of a denial of justice; as indicated above, COMMISIMPEX is, due to its liquidation and the compensation that took place in Congo, considered to be in good standing locally, but deemed unenforceable        in France, legally unable to bring proceedings before the Congolese courts (since Congolese law prohibits it from taking legal action in Congo) and has therefore, quite rightly, turned to the French courts before which it can validly pursue the recovery of its claim. Furthermore, the connection between this dispute and France is clear; two of the three co-defendants ( TOTAL HOLDINGS and TOTAL SE) involved in the dispute are companies registered in France; although TOTAL E&P CONGO is registered in Congo, it is clear that its effective management is located in France, since its main executives all declare that they carry out their activities in France; Furthermore, TOTAL E&P CONGO's ordinary general meetings are held in France. In the Guarantee itself, the Republic of Congo expressly provided for a connection with France, since the Republic of Congo elected domicile at *the "Embassy of Congo in Paris"* and appointed its ambassador in Paris as its representative before the courts. Finally, the initial dispute between COMMISIMPEX and the Republic of Congo also has links with France, in particular with the choice of arbitration in Paris and the applicable French law. COMMISIMPEX adds that the proper administration of justice requires that the Commercial Court of Nanterre rule on all claims.

Decision signed electronically in accordance with Article 456 of the CPC

by COMMISIMPEX against the companies of the TOTAL Group; indeed, the factual context is strictly identical for each of the actions brought against TOTAL E&P CONGO, TOTAL HOLDINGS, and TOTAL SE; The actions brought against each of the co-defendant companies are all based on the same contractual provisions (the Guarantee, the Establishment Agreement and its successive amendments); COMMISIMPEX is making a single claim against its co-defendants: that the defendants be ordered to pay the same amount jointly and severally. The Nanterre Commercial Court has jurisdiction over TOTAL HOLDINGS, as TOTAL SE holds 85% of the capital of its subsidiary TOTAL E&amp;P CONGO; there would therefore be a risk of fragmentation of the litigation and conflicting decisions if the claim against Total E&amp;P CONGO were to be heard by a court other than the Commercial Court of Nanterre.

**TOTAL E&P CONGO responds that:**

1. The objection to jurisdiction is admissible:
   The designation is ineffective because COMMISIMPEX, which is in judicial liquidation and represented by its trustee, is therefore no longer "*authorized by the Congolese courts to assert its claims against Congo before the Congolese courts*," which would render the objection "*ineffective*" and therefore amount to "*a failure to designate*"; However, the obligation to designate is only that of designating the competent court according to the normal rules of jurisdiction and, in the event of denial of justice, it is solely up to the plaintiff to choose the substitute court, since there may be several and the plaintiff raising the objection cannot do so in his place.

2. The Court's jurisdiction with respect to TOTAL E&P CONGO cannot be based on the involvement of TOTAL HOLDINGS:
   - Firstly, ratione temporis, Article 42(2) only allows the plaintiff to bring a defendant before the court of the place where his co-defendant resides if the proceedings are single from the outset and jurisdiction for obvious reasons is assessed on the date the proceedings are brought; However, the summons against Elf Aquitaine was filed alone on October 28, 2016; thus, when the proceedings were initiated, there was only one defendant. COMMISIMPEX cannot therefore claim *that* "*it had sued TEP Congo at the same time as a French company against which it had a direct and personal claim, namely Elf Aquitaine*"; nor can it write that "*the proceedings have been single since their commencement*" since the commencement coincides with the filing of the summons served on Elf Aquitaine.
   - Secondly, ratione materiae, COMMISIMPEX invokes relatedness in support of jurisdiction; this argument is ineffective since, pursuant to Article 357 of the Code of Civil Procedure, relatedness only applies between proceedings that fall within the jurisdiction of the same court; the debate on jurisdiction takes precedence, as does the argument based on the proper administration of justice.
   - Thirdly, ratione personae, it is not possible to seek the liability of ELF AQUITAINE, as co-guarantor alongside TOTAL E&P CONGO under the Establishment Agreement of October 17, 1968, between the Republic of Congo and ERAP. To establish the court's jurisdiction, COMMISIMPEX argues that the royalties owed to the State are payable on the basis of the Establishment Agreement of October 17, 1968, concluded between the Republic and ERAP, the predecessor of TOTAL SE and TOTAL HOLDINGS, which

would therefore be liable for payment; however, royalties are not based on this Agreement but on the Congolese Hydrocarbons Code, which governs them in Title VIII and, with regard to proportional mining royalties, in Articles 158 et seq.; Furthermore, as demonstrated by the conclusions filed on February 17, 2021 by TOTAL SE and TOTAL HOLDINGS, it follows from the Establishment Agreement that it does not create any obligation to pay, any guarantee obligation, or any joint and several liability obligation. furthermore, since January 7, 2004, the date of the conclusion of amendment No. 14 to the Establishment Agreement, ELF AQUITAINE is no longer even a party to it; The repeal by Article 37 of the Republic of Congo's Amended Finance Act for 2020, confirmed by Article 36 of the Finance Act for 2021, of the 1968 Establishment Agreement and its amendments, as well as all other establishment agreements entered into by the Republic of Congo, confirms the implausibility of COMMISIMPEX's argument: if the Establishment Agreement constituted the parent companies as co-debtors or guarantors of TOTAL E&P CONGO, the Republic of Congo would not have repealed it; the repeal shows that the establishment agreement had no other purpose than to protect ERAP and AGIP against fiscal instability and not to create obligations towards them; ELF AQUITAINE has not owed any money to the Republic of Congo since the creation of its Congolese subsidiary in 1969, and *even less so* since 2004; Moreover, COMMISIMPEX never contested the negative responses of the third party seized during the seizures it carried out against TOTAL HOLDINGS, including on January 19, 2021, and July 15, 2021, which were always unsuccessful. The implication of TOTAL HOLDINGS, formerly ELF AQUITAINE, is therefore artificial.

3. The Court's jurisdiction with regard to TOTAL E&P CONGO cannot be based on the involvement of TOTAL SE:

   - The late involvement of TOTAL SE cannot, ratione temporis, authorize the application of Article 42(2) CPC: indeed, the summonses served on TOTAL SE in 2018 were issued more than one year after the summons served on the plaintiff in October 2016, and therefore cannot establish jurisdiction over the latter.
   - TOTAL SE is not*, ratione personae*, a serious defendant: indeed, this company has never had any activity in the Republic of Congo; it took control of ELF AQUITAINE in 2000 at a time when TOTAL E&P CONGO had long since taken over all oil activities in Congo; Although TOTAL SE has been a party to the Establishment Agreement since Amendment No. 14 of January 7, 2004, there is no payment obligation stipulated therein as demonstrated by the conclusions filed by TOTAL SE and TOTAL HOLDINGS; it follows from Article 10 of the Establishment Agreement and Title III of Amendment No. 1 that their purpose is to guarantee a stable tax, legal, and financial regime for the Republic's co-contractor who chooses to invest in Congolese territory so that this investment is attractive and more secure for them; To ensure this stability, the Agreement and its amendments set the rates of taxes, duties, and royalties, but the obligation to pay them is only specified in the subsequent concession or production sharing agreements with TEP Congo. Thus, the Establishment Agreement does not create any obligation on the part of ERAP, then ELF AQUITAINE, and finally TOTAL SE, but only determines the applicable economic and tax regime.

4. The jurisdiction of the Court cannot be based on denial of justice:

- COMMISIMPEX infers the denial of justice to which it would be exposed in Congo in its procedural dealings with TOTAL E&P CO NGO from the fact that the judicial liquidation proceedings between it and the Republic of Congo were found to be fraudulent by the judge who was asked to enforce the second arbitral award; However, it is a denial of justice in proceedings against TOTAL E&P CONGO that it must demonstrate; yet jurisdiction for denial of justice is only conceivable if the claimant has attempted to obtain satisfaction by the appropriate means without having to bring a defendant who does not fall within its jurisdiction before an incompetent court; However, COMMISIMPEX did not attempt to bring its action against TOTAL E&P CONGO before the Congolese courts, ask the liquidation bodies to bring it before the Congolese courts, or even attempt to have an *ad hoc* representative appointed to represent its interests vis-à-vis the liquidators, who were presumably in default, or to bring proceedings against them; COMMISIMPEX merely states that it refuses to take action before the Congolese courts because, in its view, they will inevitably rule against it; however, it can only invoke denial of justice after having established it, i.e., after having attempted to obtain justice. There must be a clear denial of justice, not just a fear of denial of justice, in order to bring a case before an incompetent court.
- The palliative jurisdiction of the court of necessity is a remedy that must remain exceptional, lest it violate the principle of equality of States, which underpins all public international law. In this case, Congolese sovereignty would be undermined by a jurisdiction based on a decision deeming the proceedings followed by its courts and legal representatives to be fraudulent across the board, which would constitute an abuse of power under domestic law.
- Furthermore, even assuming that there is indeed a risk of denial of justice, French courts do not automatically have jurisdiction: the dispute must still have a sufficient connection with France. The arguments put forward by COMMISIMPEX regarding TOTAL E&amp;P CONGO's links with France are unfounded: the company's management is based in Congo, where it employs more than 1,000 people, and the fact that some of its executives work in France is not sufficient to create a connection with France; moreover, the Versailles Court of Appeal already found in 2003 that the company's headquarters are indisputably in Congo; Finally, the link resulting from the fact that the Republic of Congo has elected domicile at its embassy in Paris and has entrusted its representation to its ambassador in Paris is too tenuous and artificial to create a connection.
- Finally, if only a denial of justice were to be expected from the Congolese courts, by the request it is submitting to the Court, COMMISIMPEX is not asking for it to be avoided, but for the court to transfer the risk to the party making the request. COMMISIMPEX's sole objective is to replace its sovereign debtor with a third party that is easy to enforce against, on which it intends to impose payment of its claim; however, the remedy for the denial suffered by one party cannot be the obligation of the other party to defend itself before an incompetent court.

5. TOTAL E&P CONGO explained at the collegiate hearing that the arbitral award of January 21, 2013, would be the subject of a request for review, which is undisputed.

**TOTAL SE and TOTAL HOLDINGS stated that:**

- "*The late involvement of TOTAL SE in February 2018 compromises the plurality of defendants, giving it leverage over TOTAL E&P CONGO. Hence its insistence since its conclusions of November 6, 2018, on demonstrating that ELF AQUITAINE, now TOTAL SA, remains a party to the Agreement.*"
- However, rationae materiae, neither TOTAL SE nor TOTAL HOLDINGS are debtors to the Republic of Congo or to COMMISIMPEX.
- TOTAL SE must be cleared of any liability, since it did not absorb ELF AQUITAINE and the "guarantee" makes no mention of TOTAL SE; the latter cannot be held liable since the "Guarantee" does not give COMMISIMPEX any rights over any claims that the Republic of Congo may have against it; ELF AQUITAINE, now TOTAL SA, cannot be held liable because its ties with the Republic of Congo were severed before the "Guarantee" was notified; Furthermore, the Establishment Agreement did not create any obligation to pay or guarantee; in fact, Article 4 of Addendum No. 1 to this agreement ("beneficiary's commitments") lists, by combining the commitments of ERAP and the subsidiary to be created, only:
  - ERAP's obligation to allow the Republic to participate in the capital of the ad hoc subsidiary, the subsidiary's obligation to employ Congolese personnel, to give preference to Congolese suppliers, and to sell petroleum products primarily to Congolese industry.
  - This list does not include the payment of royalties, since this obligation can only arise from the exploitation of the deposits and therefore from the exploitation permits.

- TOTAL E&P CONGO alone has been extracting all of the TOTAL group's Congolese production for 50 years because the Republic of Congo has required, for obvious control purposes, that exploitation be carried out by a local co-contractor as such, which must have its headquarters in the country.


**COMMISIMPEX retorts that**:

- The conditions set out in Article 42, paragraph 2, of the Code of Civil Procedure are met, since the summons issued to TOTAL E&P CONGO and ELF AQUITAINE targets both companies simultaneously and has been registered by the court under the same reference number.
- Although the Establishment Agreement of October 17, 1968, was repealed in 2020, it created obligations for its beneficiaries while it was in force.


**The court thus justified its decision as follows:**

*ON ITS ADMISSIBILITY:*

Article 74 of the Code of Civil Procedure stipulates that "*exceptions must be raised before any defense on the merits or plea of inadmissibility... a request for disclosure of documents does not constitute grounds for inadmissibility of exceptions.*"

Decision signed electronically in accordance with Article 456 of the CPC

Article 75 of the same code provides that "*if it is claimed that the court hearing the case at first instance or on appeal lacks jurisdiction, the party raising this objection must, on pain of inadmissibility, state the grounds for it and, in all cases, indicate before which court it requests that the case be brought.*"

The summons to disclose documents dated April 15, 2019, and the letter dated June 26, 2019, alleged by COMMISIMPEX as defenses on the merits, do not constitute grounds for inadmissibility of the objection under the second paragraph of Article 74 of the Code of Civil Procedure.

TOTAL E&P CONGO asks the court to declare itself incompetent in favor of the courts of the Republic of Congo, those of Pointe Noire in particular, and bases its claim on several grounds.

COMMISIMPEX argues that this designation does not satisfy the conditions of Article 75 of the Code of Civil Procedure, not because it does not designate the court with special jurisdiction, but because it amounts to an impossible designation.

However, at this stage of the proceedings, which concerns the admissibility and not the merits of the objection raised, the obligation incumbent on the party raising the objection is merely to designate the court with jurisdiction in accordance with the normal rules of jurisdiction.

Thus, it is established that the objection of lack of jurisdiction was raised before any defense on the merits or plea of inadmissibility, is substantiated, and designates the court that, according to TOTALENERGIES E&P CONGO, would have jurisdiction; it is therefore admissible.

*ON ITS MERITS:*

Article 42 of the Code of Civil Procedure provides that "*unless otherwise provided, the court with territorial jurisdiction is that of the place where the defendant resides.*
*If there are several defendants, the plaintiff may, at his or her discretion, bring the action before the court of the place where one of them resides.*
*If the defendant has no known domicile or residence, the plaintiff may bring the case before the court of the place where he resides or that of his choice if he resides abroad.*"

By writs of summons dated October 10 and October 7, 2016, delivered in person, COMMISIMPEX simultaneously summoned ELF AQUITAINE, now TOTAL HOLDINGS, and TOTAL ENERGIES E&amp;P CONGO to appear before this court.

By writs of summons dated February 16, 2018, COMMISIMPEX served one in person and the other in accordance with the provisions of Article 684 of the Code of Civil Procedure, summoning TOTAL SA, now TOTAL, and the Republic of Congo to appear before this court.

As a result of these summonses, the plaintiff is bringing the Republic of Congo, a company incorporated under Congolese law, TOTAL E&P CONGO, and two companies registered with the Nanterre Commercial Court, TOTAL HOLDINGS and TOTAL, before the court.

Article 42(2) referred to above only allows the plaintiff to bring a defendant before the court of the place where its co-defendant resides if the proceedings are single from the moment they are brought; jurisdiction is assessed on the date the proceedings are brought.

Decision signed electronically in accordance with Article 456 of the CPC

The writs of summons served on October 10 and 7, 2016 simultaneously summon ELF AQUITAINE, now TOTAL HOLDINGS, and TOTAL ENERGIES E&amp;P CONGO for request their joint conviction; although these summonses were issued on different dates, they were registered under the same number, namely 2016 F 02380; TOTAL E&P CONGO cannot therefore argue that this proceeding was not a single proceeding from the moment it was initiated.

However, while the summonses served on ELF AQUITAINE, now TOTAL HOLDINGS, and TOTAL ENERGIES E&amp;P CONGO constitute a single proceeding with respect to these two companies, the summonses served on TOTAL SA, now TOTAL SE, and the REPUBLIC OF CONGO constitute another proceeding, which was the subject of a decision to join it with the above-mentioned proceeding, dated March 6, 2018.

However, the decision to join the proceedings, which adds new defendants to the original proceedings, cannot have the effect of retroactively modifying the rules of jurisdiction of the court seised.

Furthermore, the extension of jurisdiction resulting from Article 42, second paragraph, of the Code of Civil Procedure applicable in international matters does not allow a defendant residing abroad to be brought before a French court when the claim made against him and a co-defendant domiciled in France is not genuine and serious in relation to the latter, even if it is related to another claim brought against the same defendants.

In this case, COMMISIMPEX must be able to seriously claim a personal and direct action against the co-defendants domiciled in France, TOTAL HOLDINGS and TOTAL SE, in order to be allowed to bring proceedings before the Commercial Court of Nanterre against the Congolese company, TOTAL ENERGIES E&amp;P CONGO.

At this stage of the proceedings, the genuine and serious nature of the claims does not mean that the claims made against the anchor defendants must be recognized on their merits; it is merely for the court to verify the genuine and serious nature of the claim against the anchor defendants without assessing the merits of the action against them.

However, it is incumbent upon the party claiming that the defendants it has summoned confer jurisdiction on the court to provide sufficient evidence to enable the court to assess the seriousness of the defendants summoned.

COMMISIMPEX justifies that TOTAL HOLDINGS and TOTAL are serious debtors on several grounds:

1. First, it argues that the claims against the three defendants are related since "*the factual context is identical*," that the claims are all based on the same acts, namely the Guarantee dated December 22, 1986, and the Settlement Agreement dated October 17, 1968, and that they are joint and several claims against the defendants.

However, the court cannot assess the alleged relatedness without first ruling on its jurisdiction.

2. COMMISIMPEX then states that it has undisputed claims against the REPUBLIC OF CONGO; these claims are established by two arbitration awards rendered by the International Court of Arbitration, one dated December 13, 2000, and the other

January 21, 2013; the latter orders the Republic of Congo to pay it, under the Protocol of August 23, 2003, the sum of €222,749,598.82 plus interest capitalized at the rate of 10% per annum; a ruling by the Paris Court of Appeal dated October 14, 2014, dismisses the appeal for annulment of this award, and a ruling by the Court of Cassation dated May 25, 2016, dismisses the Republic of Congo's appeal for annulment; these decisions, which have become final, therefore establish that COMMISIMPEX has a claim against the Republic of Congo.

3. COMMISIMPEX maintains that it can enforce this claim against TOTAL HOLDINGS and TOTAL SE on the basis of the debts of any kind that these two companies owe to the Republic of Congo; to this end, it has provided the court with a Guarantee dated December 22, 1986, signed by the CCA and the CONGO Minister of Finance; Article I of this guarantee reads as follows: "*This Guarantee is enforceable at the request of COMMISIMPEX and shall constitute a permanent, irrevocable, and unconditional payment order to [...] ELF and ELF CONGO for the sums due under the above-mentioned contracts, amendments, and works, including principal and interest, costs, incidental expenses, and compensation for any loss due to delay. In this case, this guarantee shall be enforceable against [...] ELF and ELF CONGO or any guarantor, and COMMISIMPEX may enforce it as of right against all assets, shares, interests or other rights, in particular the agreements and royalties mentioned in Articles 2 and 3, belonging to the PRC with [...] ELF and ELF CONGO and any guarantor, without recourse or prior authorization. The signature of the R.P.C. on this document constitutes unreserved acceptance and definitive consent to the above-mentioned enforcement by COMMISIMPEX against [...] ELF and ELF CONGO [...]*"; COMMISIMPEX recalls that this Guarantee was notified to TOTAL HOLDINGS; the court observes that this guarantee mentions ELF, which became TOTAL HOLDINGS, and ELF CONGO, which became TOTAL E&amp;P CONGO, but no other companies.

4. However, in order to validly bring TOTAL HOLDINGS, formerly ELF AQUITAINE, named in the Guarantee, it must be demonstrated that the latter is a serious debtor, i.e., that it is indebted to the Republic of Congo. To this end, COMMISIMPEX states that ELF AQUITAINE, now TOTAL HOLDINGS, is a party to the "Establishment Agreement" signed by ERAP and the Republic of Congo on October 17, 1968, approved by the Prime Minister of CONGO on November 29, 1968, and published in the Official Journal of the Republic of Congo. it is established that ELF AQUITAINE, now TOTAL HOLDINGS, succeeded to the rights of ERAP; moreover, ELF AQUITAINE is a signatory to numerous amendments to this Establishment Agreement, under the terms of which the "beneficiaries" are TOTAL E&P CONGO and its French parent company, ELF AQUITAINE; Addendum No. 14 of January 7, 2004, to the Agreement specifies that "Establishment Agreement" means "*the agreement of October 17, 1968, signed between the Republic of CONGO and Entreprise de Recherche et Activités Pétrolières (whose rights were transferred to Elf Aquitaine and then to TOTAL SE)*"; the two French defendants, TOTAL HOLDINGS and TOTAL SE, are named in Article 1 of this Amendment No. 14; thus, it is established that TOTAL HOLDINGS and TOTAL SE are parties to the Establishment Agreement.

5. The Establishment Agreement and its Addenda were repealed by Article 36 of the Republic of Congo's Finance Act for 2021; however, it may have had effects during its period of validity with regard to the parties to the present proceedings.

Decision signed electronically in accordance with Article 456 of the CPC

**6.** The Agreement and its Amendments have been communicated to the court; these texts contain several provisions**:**

    a.  ERAP undertakes:

        i.  to create a subsidiary under Congolese law, which will become TOTAL E&P CONGO;

        ii.  to hire staff in Congo;

        iii.  to sell oil in Congo;

    b.  The Republic of Congo undertakes:

        i.  to provide a general guarantee of stability in the tax and legal regimes for the duration of the Agreement;

        ii.  certain tax arrangements;

        iii.  adjustments to petroleum royalties;

        iv.  the foreign exchange regime.

The annexes to this Agreement specify the tax bases and rates in force and the accounting regime for ERAP activities; the Amendments modify the rates and bases of the ERAP tax regime; Article 8.1 of Annex 9 stipulates that *"as long as there is a debt owed by the Republic of Congo in respect of taxes due by an entity forming part of the contractor, this proportional mining royalty shall be paid in cash by that entity, which shall thereby market the corresponding quantities of liquid hydrocarbons. At the end of the domiciliation of such a debt and its interest, the proportional mining royalty may be paid in kind at the request of the Republic of Congo."* This text mentions a debt owed by the Republic of Congo that would be "*domiciled on taxation*" but does not mention that this debt would be paid to a third party other than the Republic of Congo.

7. An examination of these texts shows that they organize the fiscal, administrative, and accounting relations between TOTAL HOLDINGS and TOTAL SE on the one hand, and the Republic of Congo on the other, but do not in themselves generate any debt payable by ERAP and do not include any guarantee or joint liability commitment on the part of these two companies.

Thus, it has not been demonstrated that TOTAL HOLDINGS and TOTAL SE have any debts payable to the Republic of Congo.

Consequently, and in view of the evidence submitted, COMMISIMPEX has not demonstrated that TOTAL HOLDINGS and TOTAL SE are being sued as serious debtors for the obligations it alleges.

8. The court further notes that TOTAL SE was summoned on February 16, 2018, while the other two defendants were summoned on October 7 and 10, 2016; as noted above, the decision to join the cases cannot have the effect of retroactively changing the rules of jurisdiction; Consequently, the summons served on TOTAL SE cannot, on its own, justify the court's jurisdiction.

9. COMMISIMPEX claims that it risks being denied justice if the court declines jurisdiction, but it has not demonstrated that it has exhausted all legal remedies both in Congo and before the International Centre for Settlement of Investment Disputes (ICSID). It should be noted that the judicial liquidation of COMMISIMPEX pronounced in Congo does not cause the legal personality of

the company, and the latter has not demonstrated that it has appealed against the liquidation decision; thus, the alleged denial of justice has not been sufficiently demonstrated.

The court further observes that the possible jurisdiction of a French court to rule on a dispute between foreign legal entities presupposes a sufficient connection with France; in this regard, it is not disputed that TOTAL E&amp;P CONGO has no activity in France and has no interest in France as a result of its activity; the fact that TOTAL E&P CONGO's directors are domiciled in France, that its capital is partly owned by TOTAL SE, and that some of its meetings have been held in France does not confer on this company the status of a party subject to French courts.

Finally, the interests of the proper administration of justice require a finding of connection which, as indicated above, cannot be decided by the court if it has not first ruled on its jurisdiction.

Thus, the court's jurisdiction cannot be based on the alleged denial of justice.

It follows from the findings and decisions mentioned above that the court's jurisdiction to rule on a dispute between COMMISIMPEX and TOTAL E&amp;P CONGO and the REPUBLIC OF CONGO has not been established.

Consequently, the court will declare itself incompetent and, as the dispute now only involves foreign companies and the Republic of Congo, will refer the parties to the appropriate court.

### *ON THE APPLICATION OF ARTICLE 700 OF THE CPC AND COSTS*

Whereas, in order to have their rights recognized, TOTAL E&P CONGO, TOTAL HOLDINGS, and TOTAL SE had to incur costs not included in the costs of the proceedings, which it would be unfair to leave them to bear, the court, taking into account the evidence in its possession, will order COMMISIMPEX to pay each of them the sum of €100,000 pursuant to Article 700 of the Code of Civil Procedure, dismissing the remainder of the claim and ordering COMMISIMPEX, as the unsuccessful party, to pay all costs.

## ON THESE GROUNDS

The court, after deliberation, ruling publicly by contradictory judgment in the first instance:

- Declares that it lacks jurisdiction and refers the parties to a higher court.
- Orders SDE COMMISIONS IMPORT EXPORT (COMMISIMPEX) to pay SAS TOTAL HOLDINGS, SE TOTAL, and SDE TOTAL E&amp;P CONGO the sum €100,000 each, pursuant to Article 700 of the CPC.

Decision signed electronically in accordance with Article 456 of the CPC

- Orders SDE COMMISIONS IMPORT EXPORT (COMMISIMPEX) to pay the costs.

Liquidates the costs of the Registry at €179.04, including VAT €29.84.

Deliberated by Messrs. Jean-Jacques DELAPORTE, president of the collegiate hearing, Antoine ROUSSELIN, and Laurent PITET.

This judgment is available at the Registry of this Court, the parties having been notified verbally during the proceedings in accordance with the conditions set out in the second paragraph of Article 450 of the Code of Civil Procedure.

The original judgment is signed electronically by the President of the deliberation and the Clerk.